## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____ )

CHARLES M. KUPPERMAN                          )
9075 Sorreno Ct.                              )
Naples, FL 34119                              )
                                              )
            Plaintiff,                        )
                                              )
      v.                                      )          Civil Action No. 19-3224
                                              )
UNITED STATES HOUSE OF                        )
   REPRESENTATIVES                            )
Ford House Office Building Room 217           )
Washington, D.C.  20515                       )
                                              )
            Defendant,                        )
                                              )
THE HONORABLE DONALD J. TRUMP,                )
in his official capacity as President of the  )
   United States                              )
1600 Pennsylvania Avenue, NW                  )
Washington, D.C. 20500                        )
            Defendant.                         )
                                              )
THE HONORABLE NANCY PELOSI,                   )
in her official capacity as Speaker of the    )
   House of Representatives                    )
1236 Longworth House Office Building          )
Washington, D.C.  20515                       )
                                              )
            Defendant,                        )
                                              )
THE HONORABLE ADAM B. SCHIFF,                 )
in his official capacity as Chairman of the   )
House Permanent Select Committee              )
   on Intelligence                            )
HVC304 Capitol                                )
Washington, D.C.  20515                       )
                                              )
            Defendant,                        )
                                              )

THE HONORABLE ELIOT L. ENGEL,          )
in his official capacity as Chairman of the   )
   House Committee on Foreign Affairs      )
2170 Rayburn House Office Building        )
Washington, D.C.  20515                )
                                         )
                Defendant,          )
                                           )
THE HONORABLE CAROLYN B. MALONEY,   )
in her official capacity as Acting Chair of the  )
   House Committee on Oversight and Reform   )
2157 Rayburn House Office Building        )
Washington, D.C.  20515                )
                                         )
                Defendant,          )
_____)

## COMPLAINT

Pursuant to 28 U.S.C. §§ 2201 and 2202, Plaintiff Charles M. Kupperman, the former

Deputy National Security Advisor and Acting National Security Advisor to President Donald J.

Trump, files this action in the nature of interpleader against Defendants: the United States House

of Representatives; Representative Nancy Pelosi, Speaker of the House of Representatives;

Representative Adam B. Schiff, Chairman of the House Permanent Select Committee on

Intelligence; Representative Eliot L. Engel, Chairman of the House Committee on Foreign

Affairs; Representative Carolyn B. Maloney, Acting Chair of the House Committee on Oversight

and Reform (collectively, the "House Defendants"); and Donald J. Trump, President of the

United States.  Plaintiff is faced with irreconcilable commands by the Legislative and Executive

Branches of the Government and, accordingly, seeks a declaratory judgment from this Court as

to whether he is lawfully obliged to comply with a subpoena issued by the House Defendants

demanding his testimony "[p]ursuant to the House of Representatives' impeachment inquiry," or

he is lawfully obliged to abide by the assertion of immunity from congressional process made by

the President in connection with the testimony sought from Plaintiff.  Plaintiff hereby alleges as follows:

## INTRODUCTION AND SUMMARY OF THE ACTION

1.      Plaintiff served as the Deputy National Security Advisor and Assistant to the President from January 9, 2019, to September 20, 2019, and as the Acting National Security Advisor from September 10, 2019, to September 20, 2019.  As part of the House's impeachment inquiry, the House Defendants have issued a subpoena requiring Plaintiff to appear and testify about his official duties in connection with the United States' relations with Ukraine.  The President, however, acting through the White House Counsel, has asserted that Plaintiff, as a close personal advisor to the President, is immune from Congressional process, and has instructed Plaintiff not to appear and testify in response to the House's subpoena.  Plaintiff obviously cannot satisfy the competing demands of both the Legislative and Executive Branches, and he is aware of no controlling judicial authority definitively establishing which Branch's command should prevail.

2.      Absent a definitive judgment from the Judicial Branch "say[ing] what the law is," *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803), Plaintiff will effectively be forced to adjudicate the Constitutional dispute himself, and if he judges wrongly, he will inflict grave Constitutional injury on either the House or the President.  On the one hand, an erroneous judgment to abide by the President's assertion of testimonial immunity would unlawfully impede the House from carrying out one of its most important core Constitutional responsibilities, "the sole Power of Impeachment."  U.S. CONST., art. I, § 2, cl. 5.  And it would subject Plaintiff to potential criminal liability for contempt of Congress.  *See* 2 U.S.C. § 192.  On the other hand, an erroneous judgment to appear and testify in obedience to the House Defendants' subpoena would

unlawfully impair the President in the exercise of his core national security responsibilities, *see generally* U.S. CONST., art. II, §§ 2–3, by revealing confidential communications from "those who advise and assist [him] in the performance of [his] manifold duties; the importance of this confidentiality is too plain to require further discussion." *United States v. Nixon*, 418 U.S. 683, 705 (1974). And it would constitute a violation, albeit in good faith, of the oath Plaintiff took to uphold the Constitution of the United States. Under our system of Government, it does not fall to a private citizen, but rather falls to the Judicial Department, "to construe and delineate claims arising under express powers" granted to the Legislative and Executive Branches, and to resolve conflicting claims by those two Branches "with respect to powers alleged to derive from enumerated powers" conferred on them by the Constitution. *Id*. at 704.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331. This case arises under Articles I and II of the Constitution of the United States, and implicates Article I, Section 2, Clause 5, which provides that the House of Representatives shall have "the sole Power of Impeachment," and Article II, Section 1, Clause 1, which vests the "executive Power … in a President of the United States of America."

4.      This Court has authority to issue a declaratory judgment and order other relief that is just and proper pursuant to 28 U.S.C. §§ 2201 and 2202.

5.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(e)(1) & (b)(2). All of the Defendants perform their official duties in this judicial district and a substantial part of the events or omissions giving rise to this action occurred in this judicial district.

## PARTIES

6.      Plaintiff Charles M. Kupperman is a citizen of Florida.

7.      Defendant United States House of Representatives is established by Article I, Section 1 of the Constitution of the United States, and it is vested with "the sole Power of Impeachment."  U.S. CONST., art. I, § 2, cl. 5.

8.      Defendant Nancy Pelosi is the Speaker of the House of Representatives.  She is sued in her official capacity.

9.      Defendant Adam B. Schiff is the Chairman of the House Permanent Select Committee on Intelligence.  He is sued in his official capacity.

10.      Defendant Eliot L. Engel is the Chairman of the House Committee on Foreign Affairs.  He is sued in his official capacity.

11.      Defendant Carolyn B. Maloney is the Acting Chair of the House Committee on Oversight and Reform.  She is sued in her official capacity.

12.      Defendant Donald J. Trump is the President of the United States.  He is sued in his official capacity.

## FACTUAL ALLEGATIONS

13.      Plaintiff served as the Deputy National Security Advisor and Assistant to the President from January 9, 2019, to September 20, 2019, and as the Acting National Security Advisor from September 10, 2019, to September 20, 2019.  In that capacity, Plaintiff served as a close personal advisor to President Trump.  Among Plaintiff's many duties as Deputy National Security Advisor and Acting National Security Advisor was advising the President with respect to national security policy toward Ukraine and coordinating national security policy among the relevant Executive Branch agencies, including but not limited to the Department of State, the Department of Defense, and the Office of Management and Budget.

14.     On October 25, 2019, Defendant Schiff, through Committee counsel, transmitted to Plaintiff's counsel an electronic message, "[p]ursuant to the House of Representatives' impeachment inquiry, … transmitting a subpoena that compels [Plaintiff] to appear" for a deposition at 9:30 a.m. on October 28, 2019.  Although the subpoena was signed by Defendant Schiff on Monday, October 21, 2019, Committee counsel did not serve the subpoena on Plaintiff's counsel until 4:14 p.m. on Friday, October 25, 2019.  A copy of the electronic message and the subpoena is attached hereto as Exhibit A.

15.     Committee counsel's electronic message explained that the "subpoena is being issued by the Permanent Select Committee on Intelligence under the Rules of the House of Representatives in exercise of its oversight and legislative jurisdiction and after consultation with the Committee on Foreign Affairs and the Committee on Oversight and Reform."  Exhibit A at 1.

16.     The electronic message described the subject and scope of the investigation as follows: "The testimony shall be part of the House's impeachment inquiry and shared among the Committees, as well as with the Committee on the Judiciary as appropriate."  *Id.*

17.     Because the subpoena seeks testimony concerning Plaintiff's service as senior confidential adviser to the President, Plaintiff's counsel provided the White House Counsel with a copy of the subpoena, and requested that the White House Counsel notify him of the President's position on the subpoena.

18.     On October 25, 2019, the White House Counsel transmitted a letter to counsel for Plaintiff, asserting the "constitutional immunity of current and former senior advisors to the President" and instructing Plaintiff not to appear and testify in response to the subpoena.  A copy of the letter is attached hereto as Exhibit B.  The White House Counsel stated that the Office of Legal Counsel of the Department of Justice had "advised [him] that [Plaintiff] is absolutely

immune from compelled congressional testimony with respect to matters related to his service as a senior adviser to the President." Exhibit B at 1. The White House Counsel enclosed the opinion of the Office of Legal Counsel, and it is included in Exhibit B hereto.

19.      The White House Counsel informed Plaintiff's counsel that "in order to protect the prerogatives of the Office of the President today and in the future, and in response to your request, the President directs Mr. Kupperman not to appear at the Committee's scheduled hearing on Monday, October 28, 2019." Exhibit B at 2.

## LEGAL FRAMEWORK

20.      Plaintiff is uncertain whether the subpoena issued to Plaintiff by the House Defendants validly obligates Plaintiff to appear for two separate reasons:  (1) the President's assertion of immunity against congressional process may override the House subpoena; and (2) the House subpoena may not have been validly issued under House Rules.  Plaintiff is not aware of any Supreme Court decision definitively answering either of these questions.

### A.      Plaintiff Seeks a Declaratory Judgment on Whether He Is Immune from Congressional Process.

21.      For nearly a half century, the Office of Legal Counsel of the Department of Justice ("OLC") has consistently opined that " 'the President and his immediate advisers are absolutely immune from testimonial compulsion by a Congressional committee' on matters related to their official duties." Memorandum for the Counsel to the President from Steven A. Engel, Assistant Attorney General, Office of Legal Counsel, *Re: Testimonial Immunity Before Congress of Former Counsel to the President*, 43 Op. O.L.C., slip op. at *1 (May 20, 2019) ("Engel Opinion") (quoting Memorandum for All Heads of Offices, Divisions, Bureaus and Boards of the Department of Justice, from John M. Harmon, Acting Assistant Attorney General, Office of Legal Counsel, *Re: Executive Privilege* at 5 (May 23, 1977)).  OLC has reaffirmed this

position more than a dozen times over the course of the last nine administrations of both political

parties. *See Engel Opinion* at 3, n.1 (citing OLC opinions from the administrations of every

President since President Nixon).

22.     The Executive Branch has, with few exceptions, refused to permit close White

House advisors to the President to testify before Congress since the 1940s when the Executive

Office of the President was created.  *See id*. at 7.  OLC first articulated the legal basis for

testimonial immunity of close Presidential advisors in 1971 in a Memorandum authored by then-

Assistant Attorney General William H. Rehnquist.  *See* Memorandum for John D. Ehrlichman,

Assistant to the President for Domestic Affairs, from William H. Rehnquist, Assistant Attorney

General, Office of Legal Counsel, *Re: Power of Congressional Committee to Compel*

*Appearance or Testimony of "White House Staff"* (Feb. 5, 1971).  Assistant Attorney General

Rehnquist defined the scope of the immunity as follows:

> The President and his immediate advisers — that is, those who customarily meet
> with the President on a regular or frequent basis — should be deemed absolutely
> immune from testimonial compulsion by a congressional committee.  They not
> only may not be examined with respect to their official duties, but they may not
> even be compelled to appear before a congressional committee.

*Id*. at 7.

23.     Both in his capacity as Deputy National Security Advisor and Assistant to the

President, and in his capacity as Acting National Security Advisor, Plaintiff met with, and

advised, President Trump directly on a frequent and regular basis.

24.     The Rehnquist Memorandum has been repeatedly, and without exception,

reaffirmed in opinions by heads of OLC from both political parties.  *See, e.g.*, Letter to Phillip E.

Areeda, Counsel to the President, from Antonin Scalia, Assistant Attorney General, Office of

Legal Counsel (Sept. 25, 1974) (enclosing a Memorandum); Letter Opinion for the Counsel for

the President from Christopher H. Schroeder, Acting Assistant Attorney General, Office of Legal Counsel, *Re: Immunity of the Counsel to the President from Compelled Congressional Testimony,* 20 Op. O.L.C. 308 (1996); Memorandum Opinion for the Counsel to the President from Karl R. Thompson, Acting Assistant Attorney General, Office of Legal Counsel, *Re: Immunity of the Assistant to the President and Director of the Office of Political Strategy and Outreach from Congressional Subpoena*, 38 Op. O.L.C., slip op *1 (July 15, 2014) ("Thompson Memorandum").

25.     OLC's rationale for this immunity begins with the premise that "[t]he President is a separate branch of government.  He may not compel congressmen to appear before him.  As a matter of separation of powers, Congress may not compel him to appear before it."  Engel Opinion at 4 (quoting Memorandum for Edward C. Schmults, Deputy Attorney General, from Theodore B. Olson, Assistant Attorney General, Office of Legal Counsel at 2 (July 29, 1982)). OLC has reasoned that the testimonial immunity enjoyed by the President himself necessarily must extend to his close confidential advisors whose only function is to advise and assist the President in carrying out his duties:  "For the President's absolute immunity to be fully meaningful, and for these separation of powers principles to be adequately protected, the President's immediate advisers must likewise have absolute immunity from congressional compulsion to testify about matters that occur during the course of discharging their official duties." Thompson Memorandum, 38 Op. O.L.C., slip op. at *2.  Absent testimonial immunity against Congressional process, according to OLC, the President's "strong interests in confidentiality, as well as the President's ability to obtain sound and candid advice" would be impaired.  Engel Opinion, 43 Op. O.L.C., slip op. at *5.

26.     On the other hand, the only judicial decision to address the question has

concluded that the President's close advisors do *not* enjoy absolute immunity from

Congressional process.  In *Committee on the Judiciary v. Miers*, 558 F. Supp. 2d 53 (D.D.C.

2008), the House Committee on the Judiciary brought suit against Counsel to the President

Harriet Miers and White House Chief of Staff Joshua Bolten to enforce its subpoenas for

testimony and documents relating to the termination of nine United States Attorneys.  District

Judge Bates explained that Supreme Court authority on this question "powerfully suggests that

such advisors do not enjoy absolute immunity." *Id.* at 99.  The district court pointed out, *see id*.

at 100–03, that in *Harlow v. Fitzgerald*, the Supreme Court held that senior presidential advisors

do not enjoy absolute immunity from civil suits based on official acts even though the Court had

previously held that the President himself is absolutely immune from civil suits based on official

acts. *See* 457 U.S. 800 (1982); *see also, Nixon v. Fitzgerald*, 457 U.S. 731, 749 (1982).  The

court emphasized the narrow scope of its decision, holding "only that Ms. Miers (and other

senior presidential advisors) do not have absolute immunity from compelled congressional

process in the context of this particular subpoena dispute." *Miers*, 558 F. Supp. 2d at 105–06.

27.     The district court in *Miers* further concluded that the Counsel to the President was

not entitled to absolute or qualified immunity because the inquiry did not "involve the sensitive

topics of national security or foreign affairs."  *Id*. at 105.  National security and foreign affairs

are at the heart of the information that the House Defendants seek from Plaintiff in connection

with the House's impeachment inquiry.

28.     The district court's decision in *Miers* was stayed pending appeal.  *See Comm. on

the Judiciary of the U.S. House of Representatives v. Miers*, 542 F.3d 909, 910–11 (D.C. Cir.

2008) (per curiam).  The case settled, and the appeal was dismissed before any further action was

taken by the court of appeals. *Comm. on the Judiciary of the U.S. House of Representatives v. Miers*, No. 08-5357, 2009 WL 3568649, at *1 (D.C. Cir. Oct. 14, 2009).  Subsequent OLC decisions from both the Obama Administration and the Trump Administration have "respectfully disagree[d] with the district court's conclusion in *Miers* and adhere[d] to this Office's long-established position that the President's immediate advisers are absolutely immune from compelled congressional testimony."  Engel Opinion, 43 Op. O.L.C., slip op. at *14 (citing Thompson Memorandum, 38 Op. O.L.C., slip op. at *5–9).

29.     In short, there is no definitive judicial authority resolving the question whether Plaintiff is bound to abide by the President's assertion of immunity or to comply with the House Defendants' subpoena issued "[p]ursuant to the House of Representatives' impeachment inquiry."  It is not clear whether OLC's extension of testimonial immunity to a congressional subpoena issued in support of an impeachment inquiry – a judicial proceeding – is consistent with Supreme Court precedent post-dating the Rehnquist Memorandum.  *See, e.g.*, *United States v. Nixon*, 418 U.S. 683 (1974) (President does not have absolute immunity from subpoenas issued by grand juries in criminal judicial proceedings).  On the other hand, it is also not clear whether the decision in *Miers* rejecting a close Presidential advisor's assertion of absolute testimonial immunity would extend to a subpoena issued to a former Deputy National Security Advisor seeking testimony relating to confidential national security communications concerning Ukraine, and in any case, that decision is not binding precedent.

**B.     Plaintiff Seeks a Declaratory Judgment on Whether the Subpoena Issued to Plaintiff Is Authorized under House Rules.**

30.     Supreme Court precedent requires courts to determine "whether the committee was authorized to exact the information which the witness withheld … before … consider[ing] whether Congress had the power to confer upon the committee the authority which it claimed."

- 11 -

*United States v. Rumely*, 345 U.S. 41, 42–43 (1953).  " 'The required authorization from the full

House ... may take the form of a statute, a resolution, or a standing rule of the House.' "  *Trump*

*v. Mazars USA, LLP*, No.19-5142, 2019 WL 5089748, at *22 (D.C. Cir. Oct. 11, 2019), *pet. for*

*reh'g en banc filed* Oct. 24, 2019 (quoting Morton Rosenberg, *When Congress Comes Calling: A*

*Study on the Principles, Practices, and Pragmatics of Legislative Inquiry* 33–34 (2017)); *see*

*also Wilkinson v. United States*, 365 U.S. 399, 407–09 (1961); *Watkins v. United States*, 354 U.S.

178, 201 (1957); *Rumely*, 345 U.S. at 42–43.

      31.    Since 1975, the Rules of the House have granted committees the power to

subpoena witnesses and materials under Rule XI, clause 2(m).  *See* Elizabeth Rybicki and

Michael Greene, *The Impeachment Process in the House of Representatives*, CONGRESSIONAL

RESEARCH SERVICE R45769, at 4 (Updated Oct. 10, 2019), https://bit.ly/2lGH6mI.  Prior to this

rule change, House committees lacked subpoena power absent "resolutions providing blanket

investigatory authorities that were agreed to at the start of a Congress or through authorizing

resolutions for [an] impeachment investigation."  *Id.*  The House has not passed a resolution or

statute authorizing the House Defendants' impeachment inquiry, nor has the House passed a

resolution or statute authorizing the House Defendants to issue subpoenas as part of an

impeachment investigation.  Accordingly, the subpoena issued to Plaintiff is valid only if it is

authorized by Rule XI, clause 2(m).

      32.    Rule XI, clause 2(m)(1) of the House Rules governing the 116th Congress

authorizes Committee Chairs to issue subpoenas "[f]or the purpose of carrying out any of its

functions and duties under this rule and rule X (including any matters referred to it under clause

2 of rule XII)."  But none of the referenced "functions and duties" expressly include

impeachment inquiries.

33.     Rule X, clause 1 describes the "legislative," rather than impeachment, jurisdictions of each standing committee.  None of the "[g]eneral oversight responsibilities" listed in Rule X, clause 2 involve impeachment proceedings.  Rather, this subsection also references only legislative concerns:

> The various standing committees shall have general oversight responsibilities as provided in paragraph (b) in order to assist the House in— (1) its analysis, appraisal, and evaluation of— (A) the application, administration, execution, and effectiveness of Federal laws; and (B) conditions and circumstances that may indicate the necessity or desirability of enacting new or additional legislation; and (2) its formulation, consideration, and enactment of changes in Federal laws, and of such additional legislation as may be necessary or appropriate.

Rule X, clause (2)(a).  And none of the "[s]pecial oversight functions" identified in clause 3 or the "[a]dditional functions of committees" in clause 4 reference impeachment proceedings either.

34.     Likewise, no provision in Rule XI assigns functions or duties regarding impeachment proceedings.  And while Clause 1(b)(1) does provide that "[e]ach committee may conduct at any time such investigations and studies as it considers necessary or appropriate in the exercise of its responsibilities under rule X," Rule X concerns only legislative responsibilities and does not mention impeachment.

35.     Nor does Rule XII, clause 2 assign any impeachment functions or duties.  It sets forth procedures for the Speaker to refer bills, resolutions, and other matters to committees.  *See* Rule XII, clause 2.

36.     The House Defendants appear to acknowledge that they have not been authorized to issue subpoenas in aid of an impeachment inquiry.  Instead, they have stated that the subpoena to Plaintiff was "issued by the Permanent Select Committee on Intelligence under the Rules of the House of Representatives *in exercise of its oversight and legislative jurisdiction* …."  Exhibit A at 1 (emphasis added).

37.     It is unclear whether a House committee has the authority to issue subpoenas to investigate potentially illegal conduct by an impeachable officer outside the scope of a properly authorized impeachment inquiry.  In *Trump v. Mazars USA, LLP*, Judge Rao observed, in dissent, that "[i]nvestigations of impeachable offenses simply are not, and never have been, within Congress's legislative power."  No.19-5142, 2019 WL 5089748 (D.C. Cir. Oct. 11, 2019) at *26 (Rao, J., dissenting).  Judge Rao opined that longstanding principles of separation of powers preclude the Legislative Branch from investigating, prosecuting, and rendering judgment on alleged wrongdoing except when exercising its impeachment powers, which are *judicial* in nature.  *See id*. at *31–32 (Rao, J., dissenting).  And she concluded that historical practice going back to the Founding has consistently drawn a sharp distinction between congressional investigations for legislative purposes and investigations into misconduct by impeachable officials.  *See id*. at *34–41 (Rao, J., dissenting).

38.     Judge Rao advanced these points in dissent. The majority in *Mazars* disagreed with her analysis, holding instead that Rule XI, clause 2(m) authorized the House Oversight Committee to issue a subpoena in furtherance of an investigation into alleged misconduct by the President.  *Id*. at *22–26.  If the majority ruling remains undisturbed (the President has petitioned for review by the en banc Court of Appeals and indicated his intention to seek Supreme Court review if his en banc petition is denied), it would be binding here and would require the conclusion that the subpoena issued to Plaintiff by the House Defendants is authorized by the House Rules.  But Plaintiff raises the issue here to preserve it pending final resolution of the *Mazars* case.

## CLAIM FOR RELIEF

## COUNT I

### Declaratory Judgment

39.     Plaintiff incorporates by reference and realleges the preceding paragraphs, as if set forth fully herein.

40.     Plaintiff is bound by his oath of office to abide by the lawful constitutional commands of both the President and the House of Representatives.

41.     Plaintiff has a duty to abide by a lawful constitutional assertion of immunity by the President and a lawful instruction by the President that he decline to testify before Congress concerning his official duties as a close advisor to the President.

42.     Plaintiff likewise has a duty to comply with a lawful constitutional subpoena issued to him by a duly authorized committee of the House of Representatives.

43.     The House Defendants assert that Plaintiff is lawfully obligated to comply with the subpoena they issued to him, and it is a federal criminal offense to willfully fail "to give testimony or to produce papers" in response to a lawful subpoena issued by "any committee of either House of Congress, … punishable by a fine of not more than $1,000 nor less than $100 and imprisonment in a common jail for not less than one month nor more than twelve months." 2 U.S.C. § 192.

44.     President Trump asserts that Plaintiff is lawfully obligated to abide by the President's assertion of immunity from Congressional process and his instruction that Plaintiff not appear and testify in response to the subpoena.

45.     Plaintiff has reasonable cause to be uncertain whether the subpoena issued to Plaintiff by the House Defendants was duly authorized by the House and is thus valid and binding on Plaintiff.

46.     Plaintiff has reasonable cause to be uncertain whether the President's assertion of immunity on behalf of Plaintiff is valid and binding on Plaintiff.

47.     It is not possible for Plaintiff to satisfy the commands of both the House Defendants on the one hand, and President Trump on the other.

48.     Plaintiff is neither authorized nor able to resolve a Constitutional dispute between the Legislative and Executive Branches of our Government; instead, "[i]t is emphatically the province and the duty of the judicial department to say what the law is." *Marbury*, 5 U.S. at 177.

49.     Accordingly, Plaintiff is "an interested party seeking" a declaration of his "rights and other legal relations" with the House Defendants on the one hand, and the President on the other. *See* 28 U.S.C. § 2201(a).  Plaintiff takes no position on whether the command of the Legislative Branch or the command of the Executive Branch should prevail; he seeks only to carry out whichever constitutional obligation the Judicial Branch determines to be lawful and binding on Plaintiff.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Court:

A.     Pursuant to 28 U.S.C. §§ 2201 and 2202, enter declaratory relief as follows:

1.     Declare whether the subpoena issued by the House Defendants to Plaintiff is authorized by, and valid under, House Rules; and

2.     Declare whether the President's assertion of immunity from Congressional process on behalf of Plaintiff is valid and binding on Plaintiff.

- 16 -

    B.      Expedite its consideration and resolution of this case in light of the pending

impeachment proceedings.

    C.      Grant such other and further relief as may be just and proper under the

circumstances.

October 25, 2019                              Respectfully submitted:


                                             /s/ Charles J. Cooper
                                             Charles J. Cooper, Bar No. 248070
                                             Michael W. Kirk, Bar No. 424648
                                             Shelby Baird[*]

                                             COOPER & KIRK, PLLC
                                             1523 New Hampshire Avenue, NW
                                             Washington, DC  20036
                                             Telephone: (202) 220-9600
                                             Facsimile: (202) 220-9601
                                             Email: ccooper@cooperkirk.com

                                             *Counsel for Plaintiff Charles M. Kupperman*

                                             [*] D.C. Bar Application Pending; Admitted
                                                in Pennsylvania