# Cooper & Kirk

Lawyers
A Professional Limited Liability Company

Charles J. Cooper
(202) 220-9660
ccooper@cooperkirk.com

1523 New Hampshire Avenue, N.W.
Washington, D.C.  20036

(202) 220-9600
Fax (202) 220-9601

November 8, 2019

**BY ELECTRONIC MAIL**
Douglas N. Letter, Esq.
General Counsel
United States House of Representatives
219 Cannon House Office Building
Washington, D.C.  20515

Dear Mr. Letter:

      I write as counsel to Dr. Charles Kupperman and to Ambassador John Bolton, in response (1) to the letter of November 5 from Chairman Schiff, Chairman Engel, and Acting Chair Maloney (the "House Chairs") withdrawing the subpoena issued to Dr. Kupperman and (2) to recent published reports announcing that the House Chairs do not intend to issue a subpoena to Ambassador Bolton.  As the District of Columbia rules of professional ethics prohibit lawyers from communicating directly with represented parties, we are directing our response to you.  We write to make three points.

      First, the House Chairs suggest in their November 5 letter that the validity of the President's assertion of absolute testimonial immunity and his instruction that Dr. Kupperman not appear to testify pursuant to the House's subpoena will be resolved in *Committee on the Judiciary v. McGahn*, No. 19-cv-2379 (D.D.C.).  The House Chairs say that Dr. Kupperman, and presumably Ambassador Bolton, should therefore be "guided by the decision in *McGahn*." The House Chairs are mistaken.

      In the *McGahn* case, the House Judiciary Committee acknowledged in its brief to the district court that the Supreme Court has "stated that for a Presidential adviser to share in the President's immunity, he 'first must show that the responsibilities of his office embraced a function so sensitive as to require a total shield from liability,' and 'then must demonstrate that he was discharging the protected function when performing the act for which' he is being questioned." Pls.' Reply Brief, *Committee on the Judiciary v. McGahn*, No. 19-cv-2379 (D.D.C.), Doc. 37 at 47 (Oct. 16, 2019) ("Brief") (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 803 (1982)).  The Judiciary Committee further acknowledged the Supreme Court's language suggesting that

Douglas N. Letter, Esq.
November 8, 2019
Page 2

the President's absolute testimonial immunity "could apply to an exceedingly narrow category of 'aides entrusted with discretionary authority in such sensitive areas as national security or foreign policy' when necessary 'to protect the unhesitating performance of functions vital to the national interest.'" Brief at 46 (quoting *Harlow*, 457 U.S. at 812). The Committee's brief then emphasized to the district court that the information it sought from Mr. McGahn "did not involve the sensitive topics of national security or foreign affairs." *Committee on the Judiciary, U.S. House of Reps. v. Miers*, 558 F. Supp. 2d 53, 105 (D.D.C. 2008). *See* Brief at 46 ("[T]he Committee does not seek to question McGahn on such topics, and he was not performing sensitive national security or foreign affairs functions" during the events subject to the Committee's inquiry.).[1] The Judiciary Committee thus acknowledged that the assertion of absolute testimonial immunity at issue in *McGahn* might well have been valid if the Committee has sought information concerning national security and foreign affairs.

Here, unlike *McGahn*, information concerning national security and foreign affairs is at the heart of the the Committees' impeachment inquiry, and it is difficult to imagine *any* question that the Committees' might put to Dr. Kupperman that would not implicate these sensitive areas. After all, Dr. Kupperman was the Deputy National Security Advisor to the President throughout the period to your inquiry. The same is true, of course, of Ambassador Bolton, who was the National Security Advisor to the President, and who was personally involved in many of the events, meetings, and conversations about which you have already received testimony, as well as many relevant meetings and conversations that have not yet been discussed in the testimonies thus far.

Second, the House Chairs assert that "current and former White House officials who worked alongside" Dr. Kupperman have chosen to appear and testify "despite White House efforts to prevent or limit their testimony." Letter from House Chairs at 2 (Nov. 5, 2019). As you know, the President has not asserted absolute testimonial immunity with respect to *any* of the witnesses who have testified thus far, nor instructed them not to appear pursuant to that immunity, because none of these witnesses, unlike Dr. Kupperman (and, of course, Ambassador Bolton), were within the scope of the immunity, for they did not provide direct advice to the President on a regular or frequent basis.

Third, we are dismayed that the Committees have chosen not to join us in seeking resolution from the Judicial Branch of this momentous Constitutional question as expeditiously as possible. It is important both to Dr. Kupperman and to Ambassador Bolton to get a definitive judgment from the Judicial Branch determining their Constitutional duty in the

---

[1] We note as well that Judge Bates' decision in *Miers*, 558 F.Supp.2d 53 at 55 (D.D.C. 2008) (Bates, J.), expressly recognized that Presidential assertions of absolute or qualified testimonial immunity may apply if the testimony sought implicates national security or foreign affairs.

Douglas N. Letter, Esq.
November 8, 2019
Page 3

face of conflicting demands of the Legislative and Executive Branches.  As I emphasized in my previous responses to letters from the House Chairs, Dr. Kupperman stands ready, as does Ambassador Bolton, to testify if the Judiciary resolves the conflict in favor of the Legislative Branch's position respecting such testimony.  The House Chairs are mistaken to say Dr. Kupperman's lawsuit is intended "to delay or otherwise obstruct the Committees' vital investigatory work." *Id*. Nor has the lawsuit been coordinated in any way with the White House, any more than it has been coordinated with the House of Representatives.  If the House chooses not to pursue through subpoena the testimony of Dr. Kupperman and Ambassador Bolton, let the record be clear:  that is the House's decision.

                                                              Sincerely,

                                                              Charles J. Cooper