# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHARLES M. KUPPERMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| JOHN MICHAEL MULVANEY, ) | |
| ) | |
| Proposed Intervenor-Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:19-cv-03224-RJL |
| ) | |
| UNITED STATES HOUSE OF ) | |
| REPRESENTATIVES, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| THE HONORABLE DONALD J. TRUMP, ) | |
| in his official capacity as President of the ) | |
| United States, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| THE HONORABLE NANCY PELOSI, ) | |
| in her official capacity as Speaker of the ) | |
| United States House of Representatives, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| THE HOUSE PERMANENT SELECT ) | |
| COMMITTEE ON INTELLIGENCE, ) | |
| ) | |
| Proposed Defendant, ) | |
| ) | |
| THE HONORABLE ADAM B. SCHIFF, ) | |
| in his official capacity as Chairman of the ) | |
| House Permanent Select Committee ) | |
| on Intelligence, ) | |
| ) | |
| Defendant, ) | |
| ) | |

THE HOUSE COMMITTEE ON FOREIGN )
AFFAIRS, )
 )
          Proposed Defendant, )
 )
THE HONORABLE ELIOT L. ENGEL, )
in his official capacity as Chairman of the )
House Committee on Foreign Affairs, )
 )
          Defendant, )
 )
THE HOUSE COMMITTEE ON OVERSIGHT )
AND REFORM, )
 )
          Proposed Defendant, )
 )
THE HONORABLE CAROLYN B. MALONEY, )
in her official capacity as Acting Chair of the )
House Committee on Oversight and Reform, )
 )
          Defendant. )
_____ )

## MOTION TO INTERVENE

John Michael Mulvaney, through undersigned counsel, respectfully moves under Federal

Rule of Civil Procedure 24 to intervene as a plaintiff in this matter against (1) the following

current Defendants: the United States House of Representatives; Representative Nancy Pelosi,

Speaker of the House of Representatives; Representative Adam B. Schiff, Chairman of the

House Permanent Select Committee on Intelligence; Representative Eliot L. Engel, Chairman of

the House Committee on Foreign Affairs; and Representative Carolyn B. Maloney, Acting Chair

of the House Committee on Oversight and Reform; and (2) three entities not currently defendants

in this matter: the House Permanent Select Committee on Intelligence; the House Committee on

Foreign Affairs; and the House Committee on Oversight and Reform (collectively with the

current Defendants, the "House Defendants").

Mr. Mulvaney, like Plaintiff Charles Kupperman, has been issued a subpoena by the House Permanent Select Committee on Intelligence to give testimony on matters concerning his official duties "as part of the House of Representatives' impeachment inquiry." *See* Exhibit 1 (email transmitting subpoena and subpoena) at 1.  Also like Mr. Kupperman, Mr. Mulvaney was directed by the President not to comply with the subpoena, after the President obtained an opinion from the Department of Justice's Office of Legal Counsel ("OLC") concluding that close personal advisors of the President, like Mr. Mulvaney, are immune from congressional process—a position OLC consistently has maintained, across Democratic and Republican administrations alike, for almost 50 years.  *See* Exhibit 2 (Letter of Pat Cipollone to William Pittard and attached OLC opinion).

Despite his unquestioned status as a close and senior advisor to the President, and the longstanding bipartisan position of that branch regarding the compelled congressional testimony of such advisors, the House Defendants threaten to hold Mr. Mulvaney in contempt or otherwise take adverse action against him for obeying the directive of the head of his branch.  The question whether the President's authority must give way in the face of a congressional subpoena—the determination Mr. Kupperman has asked this Court to make—is central to the question whether the House may take adverse action against Mr. Mulvaney, as threatened.  For that reason, Mr. Mulvaney seeks to intervene here.

## BACKGROUND

Mr. Mulvaney is the Acting White House Chief of Staff and the Director of the Office of Management and Budget.  On Thursday, November 7, 2019, at 6:36 p.m., the House Defendants emailed him a subpoena commanding him to testify, fewer than 15 hours later, about his official duties in connection with the United States' relations with Ukraine.  Exhibit 1 at 1 (requiring

testimony at 9:00 a.m. on Friday, November 8, 2019).  On the morning of November 8, before the time designated for Mr. Mulvaney's testimony, the White House Counsel transmitted a letter to undersigned counsel asserting the "constitutional immunity of current and former senior advisors to the President" and instructing Mr. Mulvaney not to testify in response to the subpoena, "in order to protect the prerogatives of the Office of the President today and in the future."  Exhibit 2 at 2.

The President's direction was backed by a legal opinion issued by OLC, which the White House Counsel attached to his letter.  As described more fully in the attached proposed complaint, the OLC opinion explained that, under both Democratic and Republican administrations, OLC consistently has concluded that close personal advisors of presidents are immune from compelled congressional testimony.  Exhibit 2 at 3-4.  It further concluded that Mr. Mulvaney, as the Acting White House Chief of Staff, qualified as just such an adviser.  *Id.*

In their email attaching their subpoena, however, the House Defendants threatened to take action against Mr. Mulvaney if he failed to comply with the demands of that subpoena— *even if* his refusal came "at the direction or behest of the President," the head of Mr. Mulvaney's branch of government.  *See* Exhibit 1 at 1.  The House's email specifically threatened to initiate "a contempt proceeding" against him, or to draw some unspecified "adverse inference against" him, if he refused to comply with the subpoena.  The House Defendants, in other words, have threatened—and currently do threaten—to take action against a member of a co-equal branch of government for acceding to an order of the head of his branch where that order is one consistently deemed lawful by Democratic and Republican administrations alike.

# ARGUMENT

## I.   MR. MULVANEY IS ENTITLED TO INTERVENE AS OF RIGHT.

Federal Rule of Civil Procedure 24 states that a party may intervene in an existing matter as of right when he or she "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a)(2).  The D.C. Circuit, "[p]arsing the language of the rule," has held "that qualification for intervention as of right depends on the following four factors":

> (1) the timelines of the motion; (2) whether the applicant claims an interest relating to the property or transaction which is the subject of the action; (3) whether the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4) whether the applicant's interest is adequately represented by existing parties.

*Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003) (citations and quotation marks omitted).  Mr. Mulvaney satisfies all four factors.

<u>First</u>, Mr. Mulvaney's motion to intervene is timely.  Mr. Mulvaney received the subpoena in question yesterday at 6:36 p.m. and was commanded to appear this morning at 9:00 a.m.  Exhibit 1 at 1.  He files this motion on the same day that he was commanded to appear.

<u>Second</u>, Mr. Mulvaney claims an obvious interest in the "relevant 'transaction'" here: the House Defendants' decision, in their ongoing impeachment inquiry, to issue subpoenas to close personal advisors of the President.  *Fund for Animals, Inc.*, 322 F.3d at 735 (identifying "the relevant 'transaction'" supporting intervention as of right as the "decision to permit the importation" of certain animals).  Mr. Mulvaney and Mr. Kupperman both were issued

deposition subpoenas as part of the same impeachment inquiry, and both were threatened with adverse action if they chose to obey Presidential direction rather than comply.  *See* Exhibit 1 at 1 (Mulvaney); ECF No. 1-1 at 2 (Kupperman).

<u>Third</u>, the disposition of this action clearly "may as a practical matter impair or impede" Mr. Mulvaney's ability to perform the duties of his job without fear of adverse action by the House Defendants.  A ruling that Mr. Kupperman was obligated to comply with the subpoena directed to him, despite the President's instruction, could subject Mr. Mulvaney to adverse action by the House, precisely as the House Defendants already have threatened.

<u>Fourth</u> and finally, Mr. Mulvaney's interest is not adequately represented by Mr. Kupperman.  Unlike Mr. Kupperman, Mr. Mulvaney is a *current* member of the Executive Branch, and thus remains a subordinate of the President subject to his present direction. Additionally, Mr. Mulvaney is both a closer and a more senior adviser to the President than was Mr. Kupperman.  In his capacity as Acting White House Chief of Staff, and in his capacity as Director of the Office of Management and Budget, Mr. Mulvaney occupies Cabinet-level positions in the Executive Branch.  And, as the Acting White House Chief of Staff, Mr. Mulvaney is among the most regular advisors of the President.  In short, there are reasons unique to Mr. Mulvaney's position that might form the basis of a judicial ruling against the House Defendants' threatened actions, reasons that Mr. Kupperman necessarily cannot advance.

## II. ALTERNATIVELY, MR. MULVANEY SHOULD BE GRANTED PERMISSION TO INTERVENE.

Federal Rule of Civil Procedure 24 also allows a court to "permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(b).  Permissive intervention under Rule 24(b) "'is an inherently discretionary enterprise' that affords the Court 'wide latitude.'"  *Sault Ste. Marie Tribe of*

*Chippewa Indians v. Bernhardt*, 331 F.R.D. 5, 9 (D.D.C. 2019) (quoting *E.E.O.C. v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998)).

Mr. Mulvaney respectfully requests that the Court exercise its discretion to allow him to intervene here.  Mr. Mulvaney asserts the same "claim" as Mr. Kupperman, and he "shares with the main action" not just one, but several "common question[s] of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  Both men have been subpoenaed in connection with the same impeachment inquiry.  Both have received the same type of subpoena, for deposition testimony.  Both are subpoenaed in connection with work at the White House, and specifically as close personal advisers to the President there.  Both received Presidential direction to act as they did, which direction was supported by OLC opinions describing a longstanding bipartisan position on the issue.  And both are now faced with an assertion from an equally powerful branch that they must ignore that longstanding bipartisan position or suffer consequences.  These "issues," furthermore, are of a "time-sensitive nature," as this Court recognized in setting its first status conference in this matter.  *See* Minute Order (Oct. 28, 2019).  Allowing Mr. Mulvaney to intervene in an action that already is underway, and proceeding on an appropriately aggressive briefing schedule, affords him the greatest chance to obtain timely resolution of these issues.

## III. ALLOWING MR. MULVANEY TO JOIN THE HOUSE COMMITTEES AS DEFENDANTS WILL NOT UNDULY PREJUDICE THE EXISTING PARTIES OR DELAY RESOLUTION OF THEIR CLAIMS.

In addition to intervening against the current House Defendants, Mr. Mulvaney seeks to join the three House committees conducting the impeachment inquiry, whose chairs already are Defendants here.  He moves to do so now, rather than separately at a later time after the Court has granted him leave to intervene (should it so grant), because of the speed at which this matter is rightly progressing.  Allowing him to join those three committees now, at the time that he

intervenes against the current House Defendants, will do nothing to prejudice the existing parties

or delay adjudication of the claim at issue.  The chair or acting chair of each committee already

appears as a defendant, and it is the committees' actions in issuing the subpoenas that is the focus

of the claims of Mr. Kupperman and Mr. Mulvaney.  The committees will be represented by the

same attorneys who are representing their chairs and the other House Defendants.

Mr. Mulvaney, furthermore, does not expect to ask the Court to extend the currently-imposed

briefing schedule.  He therefore respectfully requests, should this motion be granted, permission

to join as Defendants the House Permanent Select Committee on Intelligence, the House

Committee on Foreign Affairs, and the House Committee on Oversight and Reform.

## CONCLUSION

The issues implicated by this motion are significant for the country generally and for

Mr. Mulvaney personally.  They go to the heart of our representative government and its promise

to secure individual liberty by dividing the awesome power of government amongst itself.

Mr. Mulvaney, like Mr. Kupperman, finds himself caught in that division, trapped between the

commands of two of its co-equal branches—with one of those branches threatening him with

contempt.  He turns to this Court for aid and respectfully requests that his motion be granted.

His proposed Complaint, *see* Exhibit 3, and a proposed order, are attached.


Respectfully submitted,


DATED:  November 8, 2019                    */s/ William Pittard*
                                            William Pittard (DC Bar No. 482949)
                                            Christopher C. Muha (DC Bar No. 987116)
                                            KAISERDILLON PLLC
                                            1099 14th Street NW – 8th Floor West
                                            Washington, DC 20005
                                            T: (202) 640-2850

F: (202) 280-1034
wpittard@kaiserdillon.com
cmuha@kaiserdillon.com

*Attorneys for John Michael Mulvaney*

# Exhibit 1

**From:** Noble, Daniel ████████████████████
**Sent:** Thursday, November 7, 2019 6:36 PM
**To:** Mulvaney, Mick M. EOP/WHO ████████████████
**Cc:** Bergreen, Timothy < ████████████████████ ; Bitar, Maher ████████████████ ; Goldman, Daniel ████████ Mitchell, Nicolas ████████████ ; Wirkkala, Rheanne ████████ Rapallo, Dave ████████████ ; Grooms, Susanne Sachsman ████████ ; Kenny, Peter ████████ ; Carey, Laura ████████ Bair, James ████████████ ; Purpura, Michael M. EOP/WHO

**Subject:** Subpoena - House Impeachment Inquiry

Mr. Mulvaney,

Please see the attached subpoena commanding you to appear for a deposition as part of the House of Representatives' impeachment inquiry at the previously noticed date, time, and location: **November 8, at 9:00 a.m. in HVC-304, The Capitol**.

This subpoena is being issued by the Permanent Select Committee on Intelligence under the Rules of the House of Representatives in exercise of its oversight and legislative jurisdiction and after consultation with the Committee on Foreign Affairs and the Committee on Oversight and Reform.  The deposition transcript shall be collected as part of the House's impeachment inquiry and shared among the Committees, as well as with the Committee on the Judiciary as appropriate.  Your failure or refusal to comply with the subpoena, including at the direction or behest of the President, shall constitute further evidence of obstruction of the House's impeachment inquiry and may be used as an adverse inference against you and the President.  Moreover, your failure to appear shall constitute evidence that may be used against you in a contempt proceeding.

Attached for your reference are the House deposition regulations and HPSCI's Rules of Procedure.

Please confirm receipt.

Sincerely,


Daniel S. Noble
Senior Investigative Counsel (Majority)
House Permanent Select Committee on Intelligence
The Capitol (HVC-304)
Desk: ████████
Cell: ████████
Secure: ████████

# SUBPOENA

## BY AUTHORITY OF THE HOUSE OF REPRESENTATIVES OF THE CONGRESS OF THE UNITED STATES OF AMERICA

*To*   THE HONORABLE JOHN MICHAEL ("MICK") MULVANEY

You are hereby commanded to be and appear before the

Permanent Select Committee on Intelligence

of the House of Representatives of the United States at the place, date, and time specified below.

☐ **to produce the things identified on the attached schedule** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

Place of production: _____

Date: _____   Time: _____

☑ **to testify at a deposition** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

Place of testimony: PERMANENT SELECT COMMITTEE ON INTELLIGENCE, HVC-304, U.S. CAPITOL

Date: NOVEMBER 8, 2019   Time: 9:00AM

☐ **to testify at a hearing** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

Place of testimony: _____

Date: _____   Time: _____

*To* The U.S. Marshals Service, or any authorized Member or congressional staff

_____ to serve and make return.

Witness my hand and the seal of the House of Representatives of the United States, at the city of Washington, D.C. this 4ᵀᴴ day of NOVEMBER, 20 19.

_____
*Chairman or Authorized Member*

Attest:

*Clerk*

# PROOF OF SERVICE

Subpoena for

_THE HONORABLE JOHN MICHAEL ("MICK") MULVANEY_

Address _____

_____

before the  Permanent Select Committee on Intelligence

_____

_U.S. House of Representatives_
_116th Congress_

---

Served by (print name)  Maher Bitar

Title  General Counsel

Manner of service  Electronic Mail

_____

Date  _11/7/2019_

Signature of Server  _____

Address  Permanent Select Committee on Intelligence, HVC-304, U.S. Capitol

Exhibit 2

**THE WHITE HOUSE**

WASHINGTON

November 8, 2019

Mr. William Pittard
KaiserDillon PLLC
1099 14th Street, N.W.
Washington, D.C. 20005

Dear Mr. Pittard:

I write in response to your request regarding the subpoena issued to your client, Mick Mulvaney, by the Permanent Select Committee on Intelligence of the United States House of Representatives (the "Committee") on November 7, 2019. The subpoena directs Mr. Mulvaney to appear to testify at a deposition at 9:00 a.m. on November 8, 2019.

The Department of Justice (the "Department") has advised me that Mr. Mulvaney is absolutely immune from compelled congressional testimony with respect to matters related to his service as a senior adviser to the President. *See* Letter to Pat A. Cipollone, Counsel to the President, from Steven A. Engel, Assistant Attorney General, Office of Legal Counsel (Nov. 7, 2019). The Department has long taken the position—across administrations of both political parties—that "the President and his immediate advisers are absolutely immune from testimonial compulsion by a Congressional committee." *Immunity of the Former Counsel to the President from Compelled Congressional Testimony*, 31 Op. O.L.C. 191, 191 (2007) (quoting *Assertion of Executive Privilege with Respect to Clemency Decision*, 23 Op. O.L.C. 1, 4 (1999) (opinion of Attorney General Janet Reno)); *Immunity of the Counsel to the President from Compelled Congressional Testimony*, 20 Op. O.L.C. 308, 308 (1996). That immunity arises from the President's position as head of the Executive Branch and from Mr. Mulvaney's position as a senior adviser to the President, specifically Assistant to the President and Acting White House Chief of Staff.

As the Department's letter states, Mr. Mulvaney qualifies as a senior presidential adviser entitled to immunity. The Department's opinions on this topic have consistently recognized that this immunity extends to immediate advisers "'who customarily meet with the President on a regular or frequent basis,' and upon whom the President relies directly for candid and sound advice." *Immunity of the Assistant to the President and Director of the Office of Political Strategy and Outreach from Congressional Subpoena*, 38 Op. O.L.C. __, at *2 (June 15, 2014) (quoting Memorandum from William H. Rehnquist, Assistant Attorney General, Office of Legal Counsel, *Re: Power of Congressional Committee to Compel Appearance or Testimony of "White House Staff"* at 7 (Feb. 5, 1971)). Accordingly, Mr. Mulvaney cannot be compelled to appear before the Committee because "[s]ubjecting a senior presidential advisor to the congressional subpoena power would be akin to requiring the President himself to appear before Congress on matters

Mr. William Pittard, Esq.
Page 2

relating to the performance of his constitutionally assigned executive functions." *Assertion of Executive Privilege with Respect to Clemency Decision*, 23 Op. O.L.C. at 5. The constitutional immunity of current and former senior advisers to the President exists to protect the institution of the Presidency and, as stated by former Attorney General Reno, "may not be overborne by competing congressional interests." *Id.*

Accordingly, in order to protect the prerogatives of the Office of President today and in the future, and in response to your request, the President directs Mr. Mulvaney not to appear at the Committee's scheduled deposition on November 8, 2019. This long-standing principle is firmly rooted in the Constitution's separation of powers and protects the core functions of the Presidency, and this office is adhering to this well-established precedent in order to allow future Presidents to effectively execute the responsibilities of the Office of President. I also attach the letter opinion provided by the Department regarding Mr. Mulvaney's immunity.

Thank you for your attention to this matter. Please do not hesitate to contact me or Mike Purpura if you have any questions.

Sincerely,

Pat A. Cipollone
*Counsel to the President*



**U.S. Department of Justice**

Office of Legal Counsel

---

Office of the Assistant Attorney General                *Washington, D.C. 20530*

November 7, 2019

Pat A. Cipollone
Counsel to the President
The White House
Washington, DC 20500

Dear Mr. Cipollone:

On November 7, 2019, the Permanent Select Committee on Intelligence of the House of Representatives issued a subpoena seeking to compel Mick Mulvaney, Assistant to the President and Acting White House Chief of Staff, to testify at a deposition on Friday, November 8. The Committee subpoenaed Mr. Mulvaney as part of its impeachment inquiry into the conduct of the President. *See* H.R. Res. 660, 116th Cong. (2019). You have asked whether the Committee may compel him to testify. We conclude that Mr. Mulvaney is absolutely immune from compelled congressional testimony in his capacity as a senior adviser to the President.

The Executive Branch has taken the position for decades that "Congress may not constitutionally compel the President's senior advisers to testify about their official duties." *Testimonial Immunity Before Congress of the Former Counsel to the President*, 43 Op. O.L.C. __, at *1 (May 20, 2019). The immunity applies to those "immediate advisers . . . who customarily meet with the President on a regular or frequent basis." Memorandum for John D. Ehrlichman, Assistant to the President for Domestic Affairs, from William H. Rehnquist, Assistant Attorney General, Office of Legal Counsel, *Re: Power of Congressional Committee to Compel Appearance or Testimony of "White House Staff"* at 7 (Feb. 5, 1971) ("Rehnquist Memorandum"). We recently advised you that this immunity applies in an impeachment inquiry just as in a legislative oversight inquiry. *See* Letter for Pat A. Cipollone, Counsel to the President, from Steven A. Engel, Assistant Attorney General, Office of Legal Counsel at 2 (Nov. 3, 2019). "Even when impeachment proceedings are underway," we explained, "the President must remain able to continue to discharge the duties of his office. The testimonial immunity of the President's senior advisers remains an important limitation to protect the independence and autonomy of the President himself." *Id.*

This immunity applies in connection with the Committee's subpoena for Mr. Mulvaney's testimony. The Committee intends to question Mr. Mulvaney about matters related to his official duties at the White House—specifically the President's conduct of foreign relations with Ukraine. *See* Letter for Mick Mulvaney from Adam B. Schiff, Chairman, House Permanent Select Committee on Intelligence, et al. (Nov. 5, 2019). And Mr. Mulvaney, as Acting Chief of Staff, is a "top presidential adviser[]," *In re Sealed Case*, 121 F.3d 729, 757 (D.C. Cir. 1997), who works closely with the President in supervising the staff within the Executive Office of the President and managing the advice the President receives. *See* David B. Cohen & Charles E. Walcott, White House Transition Project, Report 2017-21, *The Office of Chief of Staff* 15–26

(2017).  Mr. Mulvaney meets with and advises the President on a daily basis about the most sensitive issues confronting the government.  Thus, he readily qualifies as an "immediate adviser[]" who may not be compelled to testify before Congress.  Rehnquist Memorandum at 7.

This conclusion also follows from this Office's prior recognition that certain *Deputy* White House Chiefs of Staff were immune from compelled congressional testimony.  *See* Letter for Pat A. Cipollone, Counsel to the President, from Steven A. Engel, Assistant Attorney General, Office of Legal Counsel (Sept. 16, 2019) (former Deputy Chief of Staff for Policy Implementation Rick Dearborn); Letter for Fred F. Fielding, Counsel to the President, from Steven G. Bradbury, Principal Deputy Assistant Attorney General, Office of Legal Counsel (Aug. 1, 2007) (Deputy White House Chief of Staff Karl Rove).  In addition, as we have noted with respect to other recently issued subpoenas, testimonial immunity is particularly justified because the Committee seeks Mr. Mulvaney's testimony about the President's conduct of relations with a foreign government.  *See, e.g.*, Letter for Pat A. Cipollone, Counsel to the President, from Steven A. Engel, Assistant Attorney General, Office of Legal Counsel at 2–3 (Oct. 25, 2019); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 812 n.19 (1982) ("[A] derivative claim to Presidential immunity would be strongest in such 'central' Presidential domains as foreign policy and national security, in which the President could not discharge his singularly vital mandate without delegating functions nearly as sensitive as his own.").

Please let us know if we may be of further assistance.

Steven A. Engel
Assistant Attorney General

Exhibit 3

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CHARLES M. KUPPERMAN )
9075 Sorreno Ct. )
Naples, FL 34119 )
)
         Plaintiff, )
)
JOHN MICHAEL MULVANEY )
████████████ )
)
    Intervenor-Plaintiff, )
)
   v. )      Civil Action No. 1:19-cv-03224-RJL
)
UNITED STATES HOUSE OF )
REPRESENTATIVES )
The Capitol )
Washington, DC 20515 )
)
       Defendant, )
)
THE HONORABLE DONALD J. TRUMP, )
in his official capacity as President of the )
United States )
1600 Pennsylvania Avenue, NW )
Washington, DC 20500 )
)
       Defendant, )
)
THE HONORABLE NANCY PELOSI, )
in her official capacity as Speaker of the )
United States House of Representatives )
1236 Longworth House Office Building )
Washington, DC 20515 )
)
       Defendant, )
)

THE HOUSE PERMANENT SELECT          )
COMMITTEE ON INTELLIGENCE            )
HVC304 Capitol                                      )
Washington, DC 20515                          )
                                                              )
        Defendant,                          )
                                                              )
THE HONORABLE ADAM B. SCHIFF,       )
in his official capacity as Chairman of the     )
House Permanent Select Committee            )
on Intelligence                                       )
HVC304 Capitol                                      )
Washington, DC 20515                          )
                                                              )
        Defendant,                          )
                                                              )
THE HOUSE COMMITTEE ON FOREIGN   )
AFFAIRS                                               )
2170 Rayburn House Office Building             )
Washington, DC 20515                          )
                                                              )
        Defendant,                          )
                                                              )
THE HONORABLE ELIOT L. ENGEL,       )
in his official capacity as Chairman of the     )
House Committee on Foreign Affairs           )
2170 Rayburn House Office Building             )
Washington, DC 20515                          )
                                                              )
        Defendant,                          )
                                                              )
THE HOUSE COMMITTEE ON OVERSIGHT )
AND REFORM                                        )
2157 Rayburn House Office Building             )
Washington, DC 20515                          )
                                                              )
        Defendant,                          )
                                                              )
THE HONORABLE CAROLYN B. MALONEY, )
in her official capacity as Acting Chair of the )
House Committee on Oversight and Reform     )
2157 Rayburn House Office Building             )
Washington, DC 20515                          )
                                                              )
        Defendant.                          )
_____)

## **COMPLAINT**

Pursuant to 28 U.S.C. §§ 2201 and 2202, Intervenor-Plaintiff John Michael Mulvaney, the Director of the Office of Management and Budget and the Acting White House Chief of Staff, files this complaint in this existing interpleader action against Defendants: the United States House of Representatives; Representative Nancy Pelosi, Speaker of the U.S. House of Representatives; the House Permanent Select Committee on Intelligence; Representative Adam B. Schiff, Chairman of the House Permanent Select Committee on Intelligence; the House Committee on Foreign Affairs; Representative Eliot L. Engel, Chairman of the House Committee on Foreign Affairs; the House Committee on Oversight and Reform; and Representative Carolyn B. Maloney, Acting Chair of the House Committee on Oversight and Reform (collectively, the "House Defendants"). Intervenor-Plaintiff is faced with irreconcilable commands by the Legislative and Executive Branches of the Government and, accordingly, seeks a declaratory judgment from this Court as to whether he is lawfully obliged to comply with a subpoena issued by the House Defendants demanding his testimony "as part of the House of Representatives' impeachment inquiry," or he is lawfully obliged to abide by an order from the President not to appear for that deposition, on the basis of an assertion of immunity from congressional process. Intervenor-Plaintiff hereby alleges as follows:

### **INTRODUCTION AND SUMMARY OF THE ACTION**

1.       Since February 16, 2017, Intervenor-Plaintiff has served as the Director of the Office of Management and Budget. Since January 2, 2019, Intervenor-Plaintiff also has served as the Acting White House Chief of Staff. In both capacities, Intervenor-Plaintiff serves as a member of President Trump's Cabinet.

2.　　　On Thursday, November 7, 2019, at 6:36 p.m., as part of the House's

impeachment inquiry, the House Defendants emailed a subpoena to Intervenor-Plaintiff

commanding him to appear and testify about his official duties in connection with the United

States' relations with Ukraine. That subpoena commanded appearance for a deposition to

commence fewer than 15 hours later, at 9:00 a.m. on Friday, November 8, 2019. Before 9:00

a.m. that morning, the President, acting through the White House Counsel, asserted that

Intervenor-Plaintiff, as a close personal advisor to the President, is immune from congressional

process, and he expressly instructed Intervenor-Plaintiff not to appear and testify in response to

the House's subpoena.

3.　　　The President's direction was backed by a legal opinion issued by the Department

of Justice's Office of Legal Counsel ("OLC"). The OLC opinion explained that, under both

Democratic and Republican administrations, OLC consistently has concluded that close personal

advisors of presidents are immune from compelled congressional testimony.

4.　　　The email attaching the House's subpoena to Intervenor-Plaintiff, however,

threatened to initiate "a contempt proceeding" against him, or to draw an unspecified "adverse

inference against" him, if he refused to comply with the subpoena—*even if* his refusal came "at

the direction or behest of the President," the head of Intervenor-Plaintiff's branch of

Government. *See* Ex. A at 1. The House Defendants, in other words, have threatened—and

currently do threaten—to take legal action against a member of a co-equal branch of government

for acceding to an order of the head of his branch where that order is one consistently deemed

lawful by Democratic and Republican administrations alike.

5.　　　Intervenor-Plaintiff therefore seeks a declaratory judgment pronouncing that the

House Defendants (1) may not take adverse action against him, as a member of the Executive

Branch, for noncompliance with the issued congressional subpoena where that noncompliance is at the direction of the President (and that direction is consistent with the Executive Branch's longstanding and indisputably bipartisan position on immunity from congressional process), and furthermore (2) may not take action against him for any non-compliance that predates any such judicial ruling.

## JURISDICTION AND VENUE

6.       This Court has jurisdiction pursuant to 28 U.S.C. § 1331. This case arises under Articles I and II of the Constitution of the United States, and implicates Article I, Section 2, Clause 5, which provides that the House of Representatives shall have "the sole Power of Impeachment," and Article II, Section 1, Clause 1, which vests the "executive Power … in a President of the United States of America."

7.       This Court has authority to issue a declaratory judgment and order other relief that is just and proper pursuant to 28 U.S.C. §§ 2201 and 2202.

8.       Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(e)(1) & (b)(2). Each of the Defendants performs his, her, or its official duties in this judicial district, and a substantial part of the events or omissions giving rise to this action occurred in this judicial district.

## PARTIES

9.       Intervenor-Plaintiff John Michael Mulvaney is a citizen of South Carolina.

10.       Defendant United States House of Representatives is established by Article I, Section 1 of the Constitution of the United States, and it is vested with "the sole Power of Impeachment." U.S. CONST., art. I, § 2, cl. 5.

11.       Defendant Nancy Pelosi is the Speaker of the House of Representatives. She is sued in her official capacity.

12.     Defendant House Permanent Select Committee on Intelligence is a committee of Defendant United States House of Representatives.

13.     Defendant Adam B. Schiff is the Chairman of the House Permanent Select Committee on Intelligence. He is sued in his official capacity.

14.     Defendant House Committee on Foreign Affairs is a committee of Defendant United States House of Representatives.

15.     Defendant Eliot L. Engel is the Chairman of the House Committee on Foreign Affairs. He is sued in his official capacity.

16.     Defendant House Committee on Oversight and Reform is a committee of Defendant United States House of Representatives.

17.     Defendant Carolyn B. Maloney is the Acting Chair of the House Committee on Oversight and Reform. She is sued in her official capacity.

18.     Defendant Donald J. Trump is the President of the United States. He is sued in his official capacity.

## FACTUAL ALLEGATIONS

19.     Intervenor-Plaintiff has served as the Director of the Office of Management and Budget since February 16, 2017. Since January 2, 2019, Intervenor-Plaintiff also has served as the Acting White House Chief of Staff. In both capacities, Intervenor-Plaintiff serves as a member of President Trump's Cabinet and as a close personal advisor to President Trump. Among Intervenor-Plaintiff's many duties as Acting White House Chief of Staff and Director of the Office of Management and Budget is advising the President with respect to national security policy, as well as coordinating the implementation of national security policy among the relevant

Executive Branch agencies, including but not limited to the Department of State, the Department of Defense, and the Office of Management and Budget.

20.     On November 7, 2019, Defendant Schiff, through Committee counsel, sent to Intervenor-Plaintiff an electronic message, "as part of to the House of Representatives' impeachment inquiry, … transmitting a subpoena that compels [Intervenor-Plaintiff] to appear" for a deposition at 9:00 a.m. on November 8, 2019. Although the subpoena apparently was signed by Defendant Schiff on Monday, November 4, 2019, Committee counsel did not send the subpoena to Intervenor-Plaintiff—or alert him to its existence—until 6:36 p.m. on Thursday, November 7, 2019. Exhibit A at 1.

21.     Committee counsel's electronic message explained that the "subpoena is being issued by the Permanent Select Committee on Intelligence under the Rules of the House of Representatives in exercise of its oversight and legislative jurisdiction and after consultation with the Committee on Foreign Affairs and the Committee on Oversight and Reform." *Id.*

22.     The electronic message described the subject and scope of the investigation as follows: "The deposition transcript shall be collected as part of the House's impeachment inquiry and shared among the Committees, as well as with the Committee on the Judiciary as appropriate." *Id.*

23.     Because the subpoena seeks testimony concerning Intervenor-Plaintiff's service as a senior confidential advisor to the President, Intervenor-Plaintiff provided the White House Counsel with a copy of the subpoena, and requested that the White House Counsel notify him of the President's position on the subpoena.

24.     On November 8, 2019, the White House Counsel transmitted a letter to counsel for Intervenor-Plaintiff, asserting the "constitutional immunity of current and former senior

advisers to the President" and instructing Intervenor-Plaintiff not to appear and testify in response to the subpoena. Exhibit B at 2. The White House Counsel stated that the Office of Legal Counsel of the Department of Justice had "advised [him] that [Intervenor-Plaintiff] is absolutely immune from compelled congressional testimony with respect to matters related to his service as a senior adviser to the President." *Id*. at 1. The White House Counsel enclosed the opinion of the Office of Legal Counsel, and it is included as part of Exhibit B hereto.

25.     The White House Counsel further informed Intervenor-Plaintiff's counsel that, "in order to protect the prerogatives of the Office of the President today and in the future, and in response to your request, the President directs Mr. Mulvaney not to appear at the Committee's scheduled deposition on Friday, November 8, 2019." *Id.* at 2.

26.     Intervenor-Plaintiff is not aware of any Supreme Court decision establishing that the congressional subpoena controls here, as the House Defendants have insisted.

27.     Indeed, for nearly a half century, OLC consistently has opined that "'the President and his immediate advisers are absolutely immune from testimonial compulsion by a Congressional committee' on matters related to their official duties." Memorandum for the Counsel to the President from Steven A. Engel, Assistant Attorney General, Office of Legal Counsel, *Re: Testimonial Immunity Before Congress of Former Counsel to the President*, 43 Op. O.L.C., slip op. at *1 (May 20, 2019) ("Engel Opinion") (quoting Memorandum for All Heads of Offices, Divisions, Bureaus and Boards of the Department of Justice, from John M. Harmon, Acting Assistant Attorney General, Office of Legal Counsel, *Re: Executive Privilege* at 5 (May 23, 1977)). OLC has reaffirmed this position more than a dozen times over the course of the last nine administrations of both political parties. *See* Engel Opinion at 3 n.1 (citing OLC opinions from the administrations of every President since President Nixon).

28.     The Executive Branch apparently has refused, with few exceptions, to permit close White House advisors to the President to testify before Congress since the 1940s, when the Executive Office of the President was created. *See id*. at 7. OLC articulated the legal basis for testimonial immunity of close Presidential advisors in 1971 in a Memorandum authored by then-Assistant Attorney General William H. Rehnquist. *See* Memorandum for John D. Ehrlichman, Assistant to the President for Domestic Affairs, from William H. Rehnquist, Assistant Attorney General, Office of Legal Counsel, *Re: Power of Congressional Committee to Compel Appearance or Testimony of "White House Staff"* (Feb. 5, 1971). Assistant Attorney General Rehnquist defined the scope of the immunity as follows:

> The President and his immediate advisers — that is, those who customarily meet with the President on a regular or frequent basis — should be deemed absolutely immune from testimonial compulsion by a congressional committee. They not only may not be examined with respect to their official duties, but they may not even be compelled to appear before a congressional committee.

*Id*. at 7.

29.     Both in his capacity as the Acting White House Chief of Staff and as the Director of the Office of Management and Budget, Intervenor-Plaintiff met with and advised President Trump directly on a frequent and regular basis and implemented President Trump's plans.

30.     The Rehnquist Memorandum repeatedly, and apparently without exception, has been reaffirmed in opinions by heads of OLC from both political parties. *See, e.g.*, Letter to Phillip E. Areeda, Counsel to the President, from Antonin Scalia, Assistant Attorney General, Office of Legal Counsel (Sept. 25, 1974) (enclosing a Memorandum); Letter Opinion for the Counsel for the President from Christopher H. Schroeder, Acting Assistant Attorney General, Office of Legal Counsel, *Re: Immunity of the Counsel to the President from Compelled Congressional Testimony,* 20 Op. O.L.C. 308 (1996); Memorandum Opinion for the Counsel to

the President from Karl R. Thompson, Acting Assistant Attorney General, Office of Legal

Counsel, *Re: Immunity of the Assistant to the President and Director of the Office of Political*

*Strategy and Outreach from Congressional Subpoena*, 38 Op. O.L.C., slip op *1 (July 15, 2014)

("Thompson Memorandum").

31.     OLC's rationale for this immunity begins with the premise that "[t]he President is

a separate branch of government. He may not compel congressmen to appear before him. As a

matter of separation of powers, Congress may not compel him to appear before it." Engel

Opinion at 4 (quoting Memorandum for Edward C. Schmults, Deputy Attorney General, from

Theodore B. Olson, Assistant Attorney General, Office of Legal Counsel at 2 (July 29, 1982)).

OLC has reasoned that the testimonial immunity enjoyed by the President himself necessarily

must extend to his close confidential advisors whose only function is to advise and assist the

President in carrying out his duties: "For the President's absolute immunity to be fully

meaningful, and for these separation of powers principles to be adequately protected, the

President's immediate advisers likewise must have absolute immunity from congressional

compulsion to testify about matters that occur during the course of discharging their official

duties." Thompson Memorandum, 38 Op. O.L.C., slip op. at *2. Absent testimonial immunity

against Congressional process, according to OLC, the President's "strong interests in

confidentiality, as well as the President's ability to obtain sound and candid advice" would be

impaired. Engel Opinion, 43 Op. O.L.C., slip op. at *5.

32.     On the other hand, what apparently is the only judicial decision to address the

question has concluded that the President's close advisors do *not* enjoy absolute immunity from

Congressional process. In *Committee on the Judiciary v. Miers*, 558 F. Supp. 2d 53 (D.D.C.

2008), the House Committee on the Judiciary brought suit against Counsel to the President

Harriet Miers and White House Chief of Staff Joshua Bolten to enforce its subpoenas for testimony and documents relating to the termination of nine United States Attorneys. District Judge Bates explained that Supreme Court authority on this question "powerfully suggests that such advisors do not enjoy absolute immunity." *Id.* at 99. The district court pointed out, *see id*. at 100–03, that in *Harlow v. Fitzgerald*, the Supreme Court held that senior presidential advisors do not enjoy absolute immunity from civil suits based on official acts, even where the Court previously had held that the President himself is absolutely immune from civil suits based on official acts. *See* 457 U.S. 800 (1982); *see also Nixon v. Fitzgerald*, 457 U.S. 731, 749 (1982). The court emphasized the narrow scope of its decision, holding "only that Ms. Miers (and other senior presidential advisors) do not have absolute immunity from compelled congressional process in the context of this particular subpoena dispute." *Miers*, 558 F. Supp. 2d at 105–06.

33.     The district court in *Miers* further concluded that the Counsel to the President was not entitled to absolute or qualified immunity at least in part because the inquiry did not "involve the sensitive topics of national security or foreign affairs." *Id*. at 105. National security and foreign affairs are at the heart of the information that the House Defendants seek from Intervenor-Plaintiff in connection with the House's impeachment inquiry.

34.     The district court's decision in *Miers* was stayed pending appeal. *See Comm. on the Judiciary of the U.S. House of Representatives v. Miers*, 542 F.3d 909, 910–11 (D.C. Cir. 2008) (per curiam). The case settled, and the appeal was dismissed before any further action was taken by the court of appeals. *Comm. on the Judiciary of the U.S. House of Representatives v. Miers*, No. 08-5357, 2009 WL 3568649, at *1 (D.C. Cir. Oct. 14, 2009). Subsequent OLC decisions from both the Obama Administration and the Trump Administration have "respectfully disagree[d] with the district court's conclusion in *Miers* and adhere[d] to this Office's long-

established position that the President's immediate advisers are absolutely immune from compelled congressional testimony." Engel Opinion, 43 Op. O.L.C., slip op. at *14 (citing Thompson Memorandum, 38 Op. O.L.C., slip op. at *5–9).

35.     In short, there apparently is no controlling judicial authority that definitively undermines the Executive Branch's consistent bipartisan conclusion that close personal advisors of the President are bound to abide by the President's assertions of immunity, even in the face of congressional subpoenas for testimony. Especially on matters pertaining to national security and foreign affairs, close personal advisors of the President, like Intervenor-Plaintiff, generally are obligated to follow Presidential orders instructing them to accede to longstanding bipartisan legal positions of the Executive Branch. There exists, to Intervenor-Plaintiff's knowledge, no controlling authority otherwise, notwithstanding the House Defendants' threats against Intervenor-Plaintiff.

**CLAIM FOR RELIEF**

**COUNT I**

**Declaratory Judgment**

36.     Intervenor-Plaintiff incorporates by reference and realleges the preceding paragraphs, as if set forth fully herein.

37.     Intervenor-Plaintiff is bound by his oath of office to abide by the lawful constitutional commands of both the President and the House of Representatives.

38.     More particularly, Intervenor-Plaintiff has a duty to abide by a lawful constitutional assertion of immunity by the President and a lawful instruction by the President that he decline to testify before Congress concerning his official duties as a close advisor to the President. Intervenor-Plaintiff likewise has a general duty to comply with a lawful, constitutional subpoena issued to him by a duly-authorized committee of the U.S. House of Representatives.

39.     The House Defendants assert that Intervenor-Plaintiff is lawfully obligated to comply with the subpoena they issued to him, and it is a federal criminal offense to willfully fail "to give testimony or to produce papers" in response to a lawful subpoena issued by "any committee of either House of Congress, … punishable by a fine … and imprisonment in a common jail for not less than one month nor more than twelve months." 2 U.S.C. § 192.

40.     President Trump, the head of Intervenor-Plaintiff's branch of the government, asserts that Intervenor-Plaintiff is lawfully obligated to abide by the President's assertion of immunity from Congressional process and his instruction that Intervenor-Plaintiff not appear and testify in response to the subpoena.

41.     Intervenor-Plaintiff has, at a minimum, reasonable cause to believe that the President's assertion of immunity on behalf of Intervenor-Plaintiff, and order that Intervenor-Plaintiff not attend the relevant deposition, is and are valid and binding on Intervenor-Plaintiff.

42.     The House Defendants threaten to take action against Intervenor-Plaintiff for acceding to a longstanding, bipartisan legal position, as adopted here by the President.

43.     Intervenor-Plaintiff is neither authorized nor able to resolve a Constitutional dispute between the Legislative and Executive Branches of our government; instead, "[i]t is emphatically the province and the duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803).

44.     Accordingly, Intervenor-Plaintiff is "an interested party seeking" a declaration of his "rights and other legal relations" with the House Defendants. *See* 28 U.S.C. § 2201(a). Intervenor-Plaintiff seeks only to be insulated from adverse action by the House Defendants based on his having followed the President's order at a time before the Judicial Branch had definitely resolved the questions at issue.

**PRAYER FOR RELIEF**

WHEREFORE, Intervenor-Plaintiff respectfully prays that this Court:

A. Pursuant to 28 U.S.C. §§ 2201 and 2202, enter declaratory relief as follows:

 1. Declare whether the House Defendants may compel Intervenor-Plaintiff to testify where the President has instructed him, as a close personal advisor, not to do so on grounds of immunity.

 2. Declare that the House Defendants may not take adverse action against Intervenor-Plaintiff based on his decision to follow the President's directive to assert that immunity at a time when the Judicial Branch had not definitively resolved the question.

B. Expedite its consideration and resolution of this case in light of the pending impeachment proceedings.

C. Grant such other and further relief as may be just and proper under the circumstances.


DATED:  November 8, 2019    Respectfully submitted,

             */s/ William Pittard*
             William Pittard (DC Bar No. 482949)
             Christopher C. Muha (DC Bar No. 987116)
             KAISERDILLON PLLC
             1099 14th Street NW – 8th Floor West
             Washington, DC 20005
             T: (202) 640-2850
             F: (202) 280-1034
             wpittard@kaiserdillon.com
             cmuha@kaiserdillon.com

             *Attorneys for John Michael Mulvaney*

Exhibit A

███████████████████████████████████████████████████████████

**From:** Noble, Daniel ████████████████████████
**Sent:** Thursday, November 7, 2019 6:36 PM
**To:** Mulvaney, Mick M. EOP/WHO ████████████
**Cc:** Bergreen, Timothy < ███████████████████ ; Bitar, Maher ██████████████████████ ; Goldman, Daniel ████████ Mitchell, Nicolas ████████████ ; Wirkkala, Rheanne ████████████ Rapallo, Dave ████████ ; Grooms, Susanne Sachsman ████████ ; Kenny, Peter ████████ ; Carey, Laura ████████████ Bair, James █████████████████ ; Purpura, Michael M. EOP/WHO

**Subject:** Subpoena - House Impeachment Inquiry

Mr. Mulvaney,

Please see the attached subpoena commanding you to appear for a deposition as part of the House of Representatives' impeachment inquiry at the previously noticed date, time, and location:  **November 8, at 9:00 a.m. in HVC-304, The Capitol**.

This subpoena is being issued by the Permanent Select Committee on Intelligence under the Rules of the House of Representatives in exercise of its oversight and legislative jurisdiction and after consultation with the Committee on Foreign Affairs and the Committee on Oversight and Reform.  The deposition transcript shall be collected as part of the House's impeachment inquiry and shared among the Committees, as well as with the Committee on the Judiciary as appropriate.  Your failure or refusal to comply with the subpoena, including at the direction or behest of the President, shall constitute further evidence of obstruction of the House's impeachment inquiry and may be used as an adverse inference against you and the President.  Moreover, your failure to appear shall constitute evidence that may be used against you in a contempt proceeding.

Attached for your reference are the House deposition regulations and HPSCI's Rules of Procedure.

Please confirm receipt.

Sincerely,


Daniel S. Noble
Senior Investigative Counsel (Majority)
House Permanent Select Committee on Intelligence
The Capitol (HVC-304)
Desk: ████████
Cell: ████████
Secure: ████████

# SUBPOENA

## BY AUTHORITY OF THE HOUSE OF REPRESENTATIVES OF THE CONGRESS OF THE UNITED STATES OF AMERICA

*To*  THE HONORABLE JOHN MICHAEL ("NICK") MULVANEY

You are hereby commanded to be and appear before the

Permanent Select Committee on Intelligence

of the House of Representatives of the United States at the place, date, and time specified below.

☐ **to produce the things identified on the attached schedule** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

> Place of production: _____
>
> Date: _____          Time: _____

☑ **to testify at a deposition** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

> Place of testimony: PERMANENT SELECT COMMITTEE ON INTELLIGENCE, HVC-304, U.S. CAPITOL
>
> Date: NOVEMBER 8, 2019          Time: 9:00 AM

☐ **to testify at a hearing** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

> Place of testimony: _____
>
> Date: _____          Time: _____

*To* The U.S. Marshals Service, or any authorized Member or congressional staff

_____ to serve and make return.

Witness my hand and the seal of the House of Representatives of the United States, at

the city of Washington, D.C. this 4TH day of NOVEMBER , 20 19 .

_____
*Chairman or Authorized Member*

Attest:

*Clerk*

# PROOF OF SERVICE

Subpoena for

THE HONORABLE JOHN MICHAEL ("MICK") MULVANEY

Address _____

_____

before the  Permanent Select Committee on Intelligence

_____

*U.S. House of Representatives*
*116th Congress*

---

Served by (print name)  Maher Bitar

Title  General Counsel

Manner of service  Electronic Mail

Date  11/7/2019

Signature of Server

Address  Permanent Select Committee on Intelligence, HVC-304, U.S. Capitol

Exhibit B

**THE WHITE HOUSE**

WASHINGTON

November 8, 2019

Mr. William Pittard
KaiserDillon PLLC
1099 14th Street, N.W.
Washington, D.C.  20005

Dear Mr. Pittard:

I write in response to your request regarding the subpoena issued to your client, Mick Mulvaney, by the Permanent Select Committee on Intelligence of the United States House of Representatives (the "Committee") on November 7, 2019.  The subpoena directs Mr. Mulvaney to appear to testify at a deposition at 9:00 a.m. on November 8, 2019.

The Department of Justice (the "Department") has advised me that Mr. Mulvaney is absolutely immune from compelled congressional testimony with respect to matters related to his service as a senior adviser to the President.  *See* Letter to Pat A. Cipollone, Counsel to the President, from Steven A. Engel, Assistant Attorney General, Office of Legal Counsel (Nov. 7, 2019).  The Department has long taken the position—across administrations of both political parties—that "the President and his immediate advisers are absolutely immune from testimonial compulsion by a Congressional committee." *Immunity of the Former Counsel to the President from Compelled Congressional Testimony*, 31 Op. O.L.C. 191, 191 (2007) (quoting *Assertion of Executive Privilege with Respect to Clemency Decision*, 23 Op. O.L.C. 1, 4 (1999) (opinion of Attorney General Janet Reno)); *Immunity of the Counsel to the President from Compelled Congressional Testimony*, 20 Op. O.L.C. 308, 308 (1996).  That immunity arises from the President's position as head of the Executive Branch and from Mr. Mulvaney's position as a senior adviser to the President, specifically Assistant to the President and Acting White House Chief of Staff.

As the Department's letter states, Mr. Mulvaney qualifies as a senior presidential adviser entitled to immunity.  The Department's opinions on this topic have consistently recognized that this immunity extends to immediate advisers "'who customarily meet with the President on a regular or frequent basis,' and upon whom the President relies directly for candid and sound advice." *Immunity of the Assistant to the President and Director of the Office of Political Strategy and Outreach from Congressional Subpoena*, 38 Op. O.L.C. __, at *2 (June 15, 2014) (quoting Memorandum from William H. Rehnquist, Assistant Attorney General, Office of Legal Counsel, *Re: Power of Congressional Committee to Compel Appearance or Testimony of "White House Staff"* at 7 (Feb. 5, 1971)).  Accordingly, Mr. Mulvaney cannot be compelled to appear before the Committee because "[s]ubjecting a senior presidential advisor to the congressional subpoena power would be akin to requiring the President himself to appear before Congress on matters

Mr. William Pittard, Esq.
Page 2

relating to the performance of his constitutionally assigned executive functions." *Assertion of Executive Privilege with Respect to Clemency Decision*, 23 Op. O.L.C. at 5.  The constitutional immunity of current and former senior advisers to the President exists to protect the institution of the Presidency and, as stated by former Attorney General Reno, "may not be overborne by competing congressional interests." *Id.*

Accordingly, in order to protect the prerogatives of the Office of President today and in the future, and in response to your request, the President directs Mr. Mulvaney not to appear at the Committee's scheduled deposition on November 8, 2019.  This long-standing principle is firmly rooted in the Constitution's separation of powers and protects the core functions of the Presidency, and this office is adhering to this well-established precedent in order to allow future Presidents to effectively execute the responsibilities of the Office of President.  I also attach the letter opinion provided by the Department regarding Mr. Mulvaney's immunity.

Thank you for your attention to this matter.  Please do not hesitate to contact me or Mike Purpura if you have any questions.

Sincerely,

Pat A. Cipollone
*Counsel to the President*



**U.S. Department of Justice**

Office of Legal Counsel

---

Office of the Assistant Attorney General                    *Washington, D.C. 20530*

November 7, 2019

Pat A. Cipollone
Counsel to the President
The White House
Washington, DC 20500

Dear Mr. Cipollone:

On November 7, 2019, the Permanent Select Committee on Intelligence of the House of Representatives issued a subpoena seeking to compel Mick Mulvaney, Assistant to the President and Acting White House Chief of Staff, to testify at a deposition on Friday, November 8. The Committee subpoenaed Mr. Mulvaney as part of its impeachment inquiry into the conduct of the President. *See* H.R. Res. 660, 116th Cong. (2019). You have asked whether the Committee may compel him to testify. We conclude that Mr. Mulvaney is absolutely immune from compelled congressional testimony in his capacity as a senior adviser to the President.

The Executive Branch has taken the position for decades that "Congress may not constitutionally compel the President's senior advisers to testify about their official duties." *Testimonial Immunity Before Congress of the Former Counsel to the President*, 43 Op. O.L.C. __, at *1 (May 20, 2019). The immunity applies to those "immediate advisers . . . who customarily meet with the President on a regular or frequent basis." Memorandum for John D. Ehrlichman, Assistant to the President for Domestic Affairs, from William H. Rehnquist, Assistant Attorney General, Office of Legal Counsel, *Re: Power of Congressional Committee to Compel Appearance or Testimony of "White House Staff"* at 7 (Feb. 5, 1971) ("Rehnquist Memorandum"). We recently advised you that this immunity applies in an impeachment inquiry just as in a legislative oversight inquiry. *See* Letter for Pat A. Cipollone, Counsel to the President, from Steven A. Engel, Assistant Attorney General, Office of Legal Counsel at 2 (Nov. 3, 2019). "Even when impeachment proceedings are underway," we explained, "the President must remain able to continue to discharge the duties of his office. The testimonial immunity of the President's senior advisers remains an important limitation to protect the independence and autonomy of the President himself." *Id.*

This immunity applies in connection with the Committee's subpoena for Mr. Mulvaney's testimony. The Committee intends to question Mr. Mulvaney about matters related to his official duties at the White House—specifically the President's conduct of foreign relations with Ukraine. *See* Letter for Mick Mulvaney from Adam B. Schiff, Chairman, House Permanent Select Committee on Intelligence, et al. (Nov. 5, 2019). And Mr. Mulvaney, as Acting Chief of Staff, is a "top presidential adviser[]," *In re Sealed Case*, 121 F.3d 729, 757 (D.C. Cir. 1997), who works closely with the President in supervising the staff within the Executive Office of the President and managing the advice the President receives. *See* David B. Cohen & Charles E. Walcott, White House Transition Project, Report 2017-21, *The Office of Chief of Staff* 15–26

(2017).  Mr. Mulvaney meets with and advises the President on a daily basis about the most sensitive issues confronting the government.  Thus, he readily qualifies as an "immediate adviser[]" who may not be compelled to testify before Congress.  Rehnquist Memorandum at 7.

This conclusion also follows from this Office's prior recognition that certain *Deputy* White House Chiefs of Staff were immune from compelled congressional testimony.  *See* Letter for Pat A. Cipollone, Counsel to the President, from Steven A. Engel, Assistant Attorney General, Office of Legal Counsel (Sept. 16, 2019) (former Deputy Chief of Staff for Policy Implementation Rick Dearborn); Letter for Fred F. Fielding, Counsel to the President, from Steven G. Bradbury, Principal Deputy Assistant Attorney General, Office of Legal Counsel (Aug. 1, 2007) (Deputy White House Chief of Staff Karl Rove).  In addition, as we have noted with respect to other recently issued subpoenas, testimonial immunity is particularly justified because the Committee seeks Mr. Mulvaney's testimony about the President's conduct of relations with a foreign government.  *See, e.g.*, Letter for Pat A. Cipollone, Counsel to the President, from Steven A. Engel, Assistant Attorney General, Office of Legal Counsel at 2–3 (Oct. 25, 2019); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 812 n.19 (1982) ("[A] derivative claim to Presidential immunity would be strongest in such 'central' Presidential domains as foreign policy and national security, in which the President could not discharge his singularly vital mandate without delegating functions nearly as sensitive as his own.").

Please let us know if we may be of further assistance.

Steven A. Engel
Assistant Attorney General

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

CHARLES M. KUPPERMAN,

      Plaintiff,

JOHN MICHAEL MULVANEY,

      Proposed Intervenor-Plaintiff,

    v.

UNITED STATES HOUSE OF
REPRESENTATIVES,

      Defendant,

THE HONORABLE DONALD J. TRUMP**,**
in his official capacity as President of the
United States,

      Defendant,

THE HONORABLE NANCY PELOSI,
in her official capacity as Speaker of the
United States House of Representatives,

      Defendant,

THE HOUSE PERMANENT SELECT
COMMITTEE ON INTELLIGENCE,

      Proposed Defendant,

THE HONORABLE ADAM B. SCHIFF,
in his official capacity as Chairman of the
House Permanent Select Committee
on Intelligence,

      Defendant,

Civil Action No. 1:19-cv-03224-RJL

THE HOUSE COMMITTEE ON FOREIGN       )
AFFAIRS,                             )
                                    )
        Proposed Defendant,          )
                                    )
THE HONORABLE ELIOT L. ENGEL,        )
in his official capacity as Chairman of the   )
House Committee on Foreign Affairs,  )
                                    )
        Defendant,                   )
                                    )
THE HOUSE COMMITTEE ON OVERSIGHT     )
AND REFORM,                          )
                                    )
        Proposed Defendant,          )
                                    )
THE HONORABLE CAROLYN B. MALONEY,    )
in her official capacity as Acting Chair of the   )
House Committee on Oversight and Reform,   )
                                    )
        Defendant.                   )
_____)

## [PROPOSED] ORDER

Upon consideration of John Michael Mulvaney's Motion to Intervene, any opposition

thereto, any reply in support thereof, and for good cause shown, it is, this _____ day of

_____, 2019, hereby

**ORDERED** that Mr. Mulvaney's Motion to Intervene is **GRANTED**.  Mr. Mulvaney is

hereby designated an Intervenor-Plaintiff in this action.  It is furthermore

**ORDERED** that the House Permanent Select Committee on Intelligence, the House

Committee on Foreign Affairs, and the House Committee on Oversight and Reform are joined as

Defendants in this action.  It is furthermore

**ORDERED** that Mr. Mulvaney file Exhibit 3 to his Motion to Intervene as his Complaint

in this action.

_____
Hon. Richard J. Leon
United States District Judge