Exhibit 3

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHARLES M. KUPPERMAN<br>9075 Sorreno Ct.<br>Naples, FL 34119 | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| JOHN MICHAEL MULVANEY | ) |
| ██████████ | ) |
| | ) |
| Intervenor-Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:19-cv-03224-RJL |
| | ) |
| UNITED STATES HOUSE OF<br>REPRESENTATIVES<br>The Capitol<br>Washington, DC 20515 | ) |
| | ) |
| Defendant, | ) |
| | ) |
| THE HONORABLE DONALD J. TRUMP,<br>in his official capacity as President of the<br>United States<br>1600 Pennsylvania Avenue, NW<br>Washington, DC 20500 | ) |
| | ) |
| Defendant, | ) |
| | ) |
| THE HONORABLE NANCY PELOSI,<br>in her official capacity as Speaker of the<br>United States House of Representatives<br>1236 Longworth House Office Building<br>Washington, DC 20515 | ) |
| | ) |
| Defendant, | ) |
| | ) |

THE HOUSE PERMANENT SELECT                    )
COMMITTEE ON INTELLIGENCE                     )
HVC304 Capitol                                )
Washington, DC 20515                          )
                                              )
        Defendant,                            )
                                              )
THE HONORABLE ADAM B. SCHIFF,                 )
in his official capacity as Chairman of the   )
House Permanent Select Committee              )
on Intelligence                               )
HVC304 Capitol                                )
Washington, DC 20515                          )
                                              )
        Defendant,                            )
                                              )
THE HOUSE COMMITTEE ON FOREIGN                )
AFFAIRS                                       )
2170 Rayburn House Office Building            )
Washington, DC 20515                          )
                                              )
        Defendant,                            )
                                              )
THE HONORABLE ELIOT L. ENGEL,                 )
in his official capacity as Chairman of the   )
House Committee on Foreign Affairs            )
2170 Rayburn House Office Building            )
Washington, DC 20515                          )
                                              )
        Defendant,                            )
                                              )
THE HOUSE COMMITTEE ON OVERSIGHT              )
AND REFORM                                    )
2157 Rayburn House Office Building            )
Washington, DC 20515                          )
                                              )
        Defendant,                            )
                                              )
THE HONORABLE CAROLYN B. MALONEY,             )
in her official capacity as Acting Chair of the )
House Committee on Oversight and Reform       )
2157 Rayburn House Office Building            )
Washington, DC 20515                          )
                                              )
        Defendant.                            )
_____   )

## COMPLAINT

Pursuant to 28 U.S.C. §§ 2201 and 2202, Intervenor-Plaintiff John Michael Mulvaney, the Director of the Office of Management and Budget and the Acting White House Chief of Staff, files this complaint in this existing interpleader action against Defendants: the United States House of Representatives; Representative Nancy Pelosi, Speaker of the U.S. House of Representatives; the House Permanent Select Committee on Intelligence; Representative Adam B. Schiff, Chairman of the House Permanent Select Committee on Intelligence; the House Committee on Foreign Affairs; Representative Eliot L. Engel, Chairman of the House Committee on Foreign Affairs; the House Committee on Oversight and Reform; and Representative Carolyn B. Maloney, Acting Chair of the House Committee on Oversight and Reform (collectively, the "House Defendants"). Intervenor-Plaintiff is faced with irreconcilable commands by the Legislative and Executive Branches of the Government and, accordingly, seeks a declaratory judgment from this Court as to whether he is lawfully obliged to comply with a subpoena issued by the House Defendants demanding his testimony "as part of the House of Representatives' impeachment inquiry," or he is lawfully obliged to abide by an order from the President not to appear for that deposition, on the basis of an assertion of immunity from congressional process. Intervenor-Plaintiff hereby alleges as follows:

### INTRODUCTION AND SUMMARY OF THE ACTION

1.    Since February 16, 2017, Intervenor-Plaintiff has served as the Director of the Office of Management and Budget. Since January 2, 2019, Intervenor-Plaintiff also has served as the Acting White House Chief of Staff. In both capacities, Intervenor-Plaintiff serves as a member of President Trump's Cabinet.

2.     On Thursday, November 7, 2019, at 6:36 p.m., as part of the House's impeachment inquiry, the House Defendants emailed a subpoena to Intervenor-Plaintiff commanding him to appear and testify about his official duties in connection with the United States' relations with Ukraine. That subpoena commanded appearance for a deposition to commence fewer than 15 hours later, at 9:00 a.m. on Friday, November 8, 2019. Before 9:00 a.m. that morning, the President, acting through the White House Counsel, asserted that Intervenor-Plaintiff, as a close personal advisor to the President, is immune from congressional process, and he expressly instructed Intervenor-Plaintiff not to appear and testify in response to the House's subpoena.

3.     The President's direction was backed by a legal opinion issued by the Department of Justice's Office of Legal Counsel ("OLC"). The OLC opinion explained that, under both Democratic and Republican administrations, OLC consistently has concluded that close personal advisors of presidents are immune from compelled congressional testimony.

4.     The email attaching the House's subpoena to Intervenor-Plaintiff, however, threatened to initiate "a contempt proceeding" against him, or to draw an unspecified "adverse inference against" him, if he refused to comply with the subpoena—*even if* his refusal came "at the direction or behest of the President," the head of Intervenor-Plaintiff's branch of Government. *See* Ex. A at 1. The House Defendants, in other words, have threatened—and currently do threaten—to take legal action against a member of a co-equal branch of government for acceding to an order of the head of his branch where that order is one consistently deemed lawful by Democratic and Republican administrations alike.

5.     Intervenor-Plaintiff therefore seeks a declaratory judgment pronouncing that the House Defendants (1) may not take adverse action against him, as a member of the Executive

Branch, for noncompliance with the issued congressional subpoena where that noncompliance is at the direction of the President (and that direction is consistent with the Executive Branch's longstanding and indisputably bipartisan position on immunity from congressional process), and furthermore (2) may not take action against him for any non-compliance that predates any such judicial ruling.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331. This case arises under Articles I and II of the Constitution of the United States, and implicates Article I, Section 2, Clause 5, which provides that the House of Representatives shall have "the sole Power of Impeachment," and Article II, Section 1, Clause 1, which vests the "executive Power … in a President of the United States of America."

7.      This Court has authority to issue a declaratory judgment and order other relief that is just and proper pursuant to 28 U.S.C. §§ 2201 and 2202.

8.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(e)(1) & (b)(2). Each of the Defendants performs his, her, or its official duties in this judicial district, and a substantial part of the events or omissions giving rise to this action occurred in this judicial district.

## PARTIES

9.      Intervenor-Plaintiff John Michael Mulvaney is a citizen of South Carolina.

10.      Defendant United States House of Representatives is established by Article I, Section 1 of the Constitution of the United States, and it is vested with "the sole Power of Impeachment." U.S. CONST., art. I, § 2, cl. 5.

11.      Defendant Nancy Pelosi is the Speaker of the House of Representatives. She is sued in her official capacity.

12.     Defendant House Permanent Select Committee on Intelligence is a committee of Defendant United States House of Representatives.

13.     Defendant Adam B. Schiff is the Chairman of the House Permanent Select Committee on Intelligence. He is sued in his official capacity.

14.     Defendant House Committee on Foreign Affairs is a committee of Defendant United States House of Representatives.

15.     Defendant Eliot L. Engel is the Chairman of the House Committee on Foreign Affairs. He is sued in his official capacity.

16.     Defendant House Committee on Oversight and Reform is a committee of Defendant United States House of Representatives.

17.     Defendant Carolyn B. Maloney is the Acting Chair of the House Committee on Oversight and Reform. She is sued in her official capacity.

18.     Defendant Donald J. Trump is the President of the United States. He is sued in his official capacity.

## FACTUAL ALLEGATIONS

19.     Intervenor-Plaintiff has served as the Director of the Office of Management and Budget since February 16, 2017. Since January 2, 2019, Intervenor-Plaintiff also has served as the Acting White House Chief of Staff. In both capacities, Intervenor-Plaintiff serves as a member of President Trump's Cabinet and as a close personal advisor to President Trump. Among Intervenor-Plaintiff's many duties as Acting White House Chief of Staff and Director of the Office of Management and Budget is advising the President with respect to national security policy, as well as coordinating the implementation of national security policy among the relevant

Executive Branch agencies, including but not limited to the Department of State, the Department of Defense, and the Office of Management and Budget.

20.     On November 7, 2019, Defendant Schiff, through Committee counsel, sent to Intervenor-Plaintiff an electronic message, "as part of to the House of Representatives' impeachment inquiry, … transmitting a subpoena that compels [Intervenor-Plaintiff] to appear" for a deposition at 9:00 a.m. on November 8, 2019. Although the subpoena apparently was signed by Defendant Schiff on Monday, November 4, 2019, Committee counsel did not send the subpoena to Intervenor-Plaintiff—or alert him to its existence—until 6:36 p.m. on Thursday, November 7, 2019. Exhibit A at 1.

21.     Committee counsel's electronic message explained that the "subpoena is being issued by the Permanent Select Committee on Intelligence under the Rules of the House of Representatives in exercise of its oversight and legislative jurisdiction and after consultation with the Committee on Foreign Affairs and the Committee on Oversight and Reform." *Id.*

22.     The electronic message described the subject and scope of the investigation as follows: "The deposition transcript shall be collected as part of the House's impeachment inquiry and shared among the Committees, as well as with the Committee on the Judiciary as appropriate." *Id.*

23.     Because the subpoena seeks testimony concerning Intervenor-Plaintiff's service as a senior confidential advisor to the President, Intervenor-Plaintiff provided the White House Counsel with a copy of the subpoena, and requested that the White House Counsel notify him of the President's position on the subpoena.

24.     On November 8, 2019, the White House Counsel transmitted a letter to counsel for Intervenor-Plaintiff, asserting the "constitutional immunity of current and former senior

advisers to the President" and instructing Intervenor-Plaintiff not to appear and testify in response to the subpoena. Exhibit B at 2. The White House Counsel stated that the Office of Legal Counsel of the Department of Justice had "advised [him] that [Intervenor-Plaintiff] is absolutely immune from compelled congressional testimony with respect to matters related to his service as a senior adviser to the President." *Id*. at 1. The White House Counsel enclosed the opinion of the Office of Legal Counsel, and it is included as part of Exhibit B hereto.

25.     The White House Counsel further informed Intervenor-Plaintiff's counsel that, "in order to protect the prerogatives of the Office of the President today and in the future, and in response to your request, the President directs Mr. Mulvaney not to appear at the Committee's scheduled deposition on Friday, November 8, 2019." *Id.* at 2.

26.     Intervenor-Plaintiff is not aware of any Supreme Court decision establishing that the congressional subpoena controls here, as the House Defendants have insisted.

27.     Indeed, for nearly a half century, OLC consistently has opined that "'the President and his immediate advisers are absolutely immune from testimonial compulsion by a Congressional committee' on matters related to their official duties." Memorandum for the Counsel to the President from Steven A. Engel, Assistant Attorney General, Office of Legal Counsel, *Re: Testimonial Immunity Before Congress of Former Counsel to the President*, 43 Op. O.L.C., slip op. at *1 (May 20, 2019) ("Engel Opinion") (quoting Memorandum for All Heads of Offices, Divisions, Bureaus and Boards of the Department of Justice, from John M. Harmon, Acting Assistant Attorney General, Office of Legal Counsel, *Re: Executive Privilege* at 5 (May 23, 1977)). OLC has reaffirmed this position more than a dozen times over the course of the last nine administrations of both political parties. *See* Engel Opinion at 3 n.1 (citing OLC opinions from the administrations of every President since President Nixon).

28.     The Executive Branch apparently has refused, with few exceptions, to permit close White House advisors to the President to testify before Congress since the 1940s, when the Executive Office of the President was created. *See id.* at 7. OLC articulated the legal basis for testimonial immunity of close Presidential advisors in 1971 in a Memorandum authored by then-Assistant Attorney General William H. Rehnquist. *See* Memorandum for John D. Ehrlichman, Assistant to the President for Domestic Affairs, from William H. Rehnquist, Assistant Attorney General, Office of Legal Counsel, *Re: Power of Congressional Committee to Compel Appearance or Testimony of "White House Staff"* (Feb. 5, 1971). Assistant Attorney General Rehnquist defined the scope of the immunity as follows:

> The President and his immediate advisers — that is, those who customarily meet with the President on a regular or frequent basis — should be deemed absolutely immune from testimonial compulsion by a congressional committee. They not only may not be examined with respect to their official duties, but they may not even be compelled to appear before a congressional committee.

*Id.* at 7.

29.     Both in his capacity as the Acting White House Chief of Staff and as the Director of the Office of Management and Budget, Intervenor-Plaintiff met with and advised President Trump directly on a frequent and regular basis and implemented President Trump's plans.

30.     The Rehnquist Memorandum repeatedly, and apparently without exception, has been reaffirmed in opinions by heads of OLC from both political parties. *See, e.g.*, Letter to Phillip E. Areeda, Counsel to the President, from Antonin Scalia, Assistant Attorney General, Office of Legal Counsel (Sept. 25, 1974) (enclosing a Memorandum); Letter Opinion for the Counsel for the President from Christopher H. Schroeder, Acting Assistant Attorney General, Office of Legal Counsel, *Re: Immunity of the Counsel to the President from Compelled Congressional Testimony,* 20 Op. O.L.C. 308 (1996); Memorandum Opinion for the Counsel to

the President from Karl R. Thompson, Acting Assistant Attorney General, Office of Legal

Counsel, *Re: Immunity of the Assistant to the President and Director of the Office of Political*

*Strategy and Outreach from Congressional Subpoena*, 38 Op. O.L.C., slip op *1 (July 15, 2014)

("Thompson Memorandum").

      31.     OLC's rationale for this immunity begins with the premise that "[t]he President is

a separate branch of government. He may not compel congressmen to appear before him. As a

matter of separation of powers, Congress may not compel him to appear before it." Engel

Opinion at 4 (quoting Memorandum for Edward C. Schmults, Deputy Attorney General, from

Theodore B. Olson, Assistant Attorney General, Office of Legal Counsel at 2 (July 29, 1982)).

OLC has reasoned that the testimonial immunity enjoyed by the President himself necessarily

must extend to his close confidential advisors whose only function is to advise and assist the

President in carrying out his duties: "For the President's absolute immunity to be fully

meaningful, and for these separation of powers principles to be adequately protected, the

President's immediate advisers likewise must have absolute immunity from congressional

compulsion to testify about matters that occur during the course of discharging their official

duties." Thompson Memorandum, 38 Op. O.L.C., slip op. at *2. Absent testimonial immunity

against Congressional process, according to OLC, the President's "strong interests in

confidentiality, as well as the President's ability to obtain sound and candid advice" would be

impaired. Engel Opinion, 43 Op. O.L.C., slip op. at *5.

      32.     On the other hand, what apparently is the only judicial decision to address the

question has concluded that the President's close advisors do *not* enjoy absolute immunity from

Congressional process. In *Committee on the Judiciary v. Miers*, 558 F. Supp. 2d 53 (D.D.C.

2008), the House Committee on the Judiciary brought suit against Counsel to the President

Harriet Miers and White House Chief of Staff Joshua Bolten to enforce its subpoenas for

testimony and documents relating to the termination of nine United States Attorneys. District

Judge Bates explained that Supreme Court authority on this question "powerfully suggests that

such advisors do not enjoy absolute immunity." *Id.* at 99. The district court pointed out, *see id*. at

100–03, that in *Harlow v. Fitzgerald*, the Supreme Court held that senior presidential advisors do

not enjoy absolute immunity from civil suits based on official acts, even where the Court

previously had held that the President himself is absolutely immune from civil suits based on

official acts. *See* 457 U.S. 800 (1982); *see also Nixon v. Fitzgerald*, 457 U.S. 731, 749 (1982).

The court emphasized the narrow scope of its decision, holding "only that Ms. Miers (and other

senior presidential advisors) do not have absolute immunity from compelled congressional

process in the context of this particular subpoena dispute." *Miers*, 558 F. Supp. 2d at 105–06.

33.     The district court in *Miers* further concluded that the Counsel to the President was

not entitled to absolute or qualified immunity at least in part because the inquiry did not "involve

the sensitive topics of national security or foreign affairs." *Id*. at 105. National security and

foreign affairs are at the heart of the information that the House Defendants seek from

Intervenor-Plaintiff in connection with the House's impeachment inquiry.

34.     The district court's decision in *Miers* was stayed pending appeal. *See Comm*. *on

the Judiciary of the U.S. House of Representatives v. Miers*, 542 F.3d 909, 910–11 (D.C. Cir.

2008) (per curiam). The case settled, and the appeal was dismissed before any further action was

taken by the court of appeals. *Comm. on the Judiciary of the U.S. House of Representatives v.

Miers*, No. 08-5357, 2009 WL 3568649, at *1 (D.C. Cir. Oct. 14, 2009). Subsequent OLC

decisions from both the Obama Administration and the Trump Administration have "respectfully

disagree[d] with the district court's conclusion in *Miers* and adhere[d] to this Office's long-

established position that the President's immediate advisers are absolutely immune from

compelled congressional testimony." Engel Opinion, 43 Op. O.L.C., slip op. at *14 (citing

Thompson Memorandum, 38 Op. O.L.C., slip op. at *5–9).

35.     In short, there apparently is no controlling judicial authority that definitively

undermines the Executive Branch's consistent bipartisan conclusion that close personal advisors

of the President are bound to abide by the President's assertions of immunity, even in the face of

congressional subpoenas for testimony. Especially on matters pertaining to national security and

foreign affairs, close personal advisors of the President, like Intervenor-Plaintiff, generally are

obligated to follow Presidential orders instructing them to accede to longstanding bipartisan legal

positions of the Executive Branch. There exists, to Intervenor-Plaintiff's knowledge, no

controlling authority otherwise, notwithstanding the House Defendants' threats against

Intervenor-Plaintiff.

**CLAIM FOR RELIEF**

**COUNT I**

**Declaratory Judgment**

36.     Intervenor-Plaintiff incorporates by reference and realleges the preceding

paragraphs, as if set forth fully herein.

37.     Intervenor-Plaintiff is bound by his oath of office to abide by the lawful

constitutional commands of both the President and the House of Representatives.

38.     More particularly, Intervenor-Plaintiff has a duty to abide by a lawful

constitutional assertion of immunity by the President and a lawful instruction by the President

that he decline to testify before Congress concerning his official duties as a close advisor to the

President. Intervenor-Plaintiff likewise has a general duty to comply with a lawful, constitutional

subpoena issued to him by a duly-authorized committee of the U.S. House of Representatives.

39.     The House Defendants assert that Intervenor-Plaintiff is lawfully obligated to comply with the subpoena they issued to him, and it is a federal criminal offense to willfully fail "to give testimony or to produce papers" in response to a lawful subpoena issued by "any committee of either House of Congress, … punishable by a fine … and imprisonment in a common jail for not less than one month nor more than twelve months." 2 U.S.C. § 192.

40.     President Trump, the head of Intervenor-Plaintiff's branch of the government, asserts that Intervenor-Plaintiff is lawfully obligated to abide by the President's assertion of immunity from Congressional process and his instruction that Intervenor-Plaintiff not appear and testify in response to the subpoena.

41.     Intervenor-Plaintiff has, at a minimum, reasonable cause to believe that the President's assertion of immunity on behalf of Intervenor-Plaintiff, and order that Intervenor-Plaintiff not attend the relevant deposition, is and are valid and binding on Intervenor-Plaintiff.

42.     The House Defendants threaten to take action against Intervenor-Plaintiff for acceding to a longstanding, bipartisan legal position, as adopted here by the President.

43.     Intervenor-Plaintiff is neither authorized nor able to resolve a Constitutional dispute between the Legislative and Executive Branches of our government; instead, "[i]t is emphatically the province and the duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803).

44.     Accordingly, Intervenor-Plaintiff is "an interested party seeking" a declaration of his "rights and other legal relations" with the House Defendants. *See* 28 U.S.C. § 2201(a). Intervenor-Plaintiff seeks only to be insulated from adverse action by the House Defendants based on his having followed the President's order at a time before the Judicial Branch had definitely resolved the questions at issue.

## PRAYER FOR RELIEF

WHEREFORE, Intervenor-Plaintiff respectfully prays that this Court:

A.     Pursuant to 28 U.S.C. §§ 2201 and 2202, enter declaratory relief as follows:

1.     Declare whether the House Defendants may compel Intervenor-Plaintiff to testify where the President has instructed him, as a close personal advisor, not to do so on grounds of immunity.

2.     Declare that the House Defendants may not take adverse action against Intervenor-Plaintiff based on his decision to follow the President's directive to assert that immunity at a time when the Judicial Branch had not definitively resolved the question.

B.     Expedite its consideration and resolution of this case in light of the pending impeachment proceedings.

C.     Grant such other and further relief as may be just and proper under the circumstances.


DATED:  November 8, 2019          Respectfully submitted,

*/s/ William Pittard*
William Pittard (DC Bar No. 482949)
Christopher C. Muha (DC Bar No. 987116)
KAISERDILLON PLLC
1099 14th Street NW – 8th Floor West
Washington, DC 20005
T: (202) 640-2850
F: (202) 280-1034
wpittard@kaiserdillon.com
cmuha@kaiserdillon.com

*Attorneys for John Michael Mulvaney*

Exhibit A

**From:** Noble, Daniel ████████████████████
**Sent:** Thursday, November 7, 2019 6:36 PM
**To:** Mulvaney, Mick M. EOP/WHO ████████████
**Cc:** Bergreen, Timothy < ████████████████ ; Bitar, Maher ████████████████ ; Goldman,
Daniel ████████              Mitchell, Nicolas ████████              ; Wirkkala, Rheanne
████████              Rapallo, Dave ████████              ; Grooms, Susanne Sachsman
████████              ; Kenny, Peter ████████              ; Carey, Laura
████████       Bair, James ████████████       ; Purpura, Michael M. EOP/WHO

**Subject:** Subpoena - House Impeachment Inquiry

Mr. Mulvaney,

Please see the attached subpoena commanding you to appear for a deposition as part of the House of Representatives'
impeachment inquiry at the previously noticed date, time, and location:  **November 8, at 9:00 a.m. in HVC-304, The
Capitol**.

This subpoena is being issued by the Permanent Select Committee on Intelligence under the Rules of the House of
Representatives in exercise of its oversight and legislative jurisdiction and after consultation with the Committee on
Foreign Affairs and the Committee on Oversight and Reform.  The deposition transcript shall be collected as part of the
House's impeachment inquiry and shared among the Committees, as well as with the Committee on the Judiciary as
appropriate.  Your failure or refusal to comply with the subpoena, including at the direction or behest of the President,
shall constitute further evidence of obstruction of the House's impeachment inquiry and may be used as an adverse
inference against you and the President.  Moreover, your failure to appear shall constitute evidence that may be used
against you in a contempt proceeding.

Attached for your reference are the House deposition regulations and HPSCI's Rules of Procedure.

Please confirm receipt.

Sincerely,


Daniel S. Noble
Senior Investigative Counsel (Majority)
House Permanent Select Committee on Intelligence
The Capitol (HVC-304)
Desk: ████████
Cell: ████████
Secure: ████████

# SUBPOENA

## BY AUTHORITY OF THE HOUSE OF REPRESENTATIVES OF THE CONGRESS OF THE UNITED STATES OF AMERICA

*To*   THE HONORABLE JOHN MICHAEL ("MICK") MULVANEY

You are hereby commanded to be and appear before the

Permanent Select Committee on Intelligence

of the House of Representatives of the United States at the place, date, and time specified below.

☐ **to produce the things identified on the attached schedule** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

> Place of production: _____
>
> Date: _____        Time: _____

☑ **to testify at a deposition** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

> Place of testimony: PERMANENT SELECT COMMITTEE ON INTELLIGENCE, HVC-304, U.S. CAPITOL
>
> Date: NOVEMBER 8, 2019        Time: 9:00AM

☐ **to testify at a hearing** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

> Place of testimony: _____
>
> Date: _____        Time: _____

*To* The U.S. Marshals Service, or any authorized Member or congressional staff

_____ to serve and make return.

Witness my hand and the seal of the House of Representatives of the United States, at the city of Washington, D.C. this 4TH day of NOVEMBER , 2019 .

_____
*Chairman or Authorized Member*

Attest: _____
*Clerk*

## PROOF OF SERVICE

Subpoena for

THE  HONORABLE JOHN MICHAEL  ("MICK")  MULVANEY

Address _____

_____

before the  Permanent Select Committee on Intelligence

_____

*U.S. House of Representatives*
*116th Congress*

---

Served by (print name)  Maher Bitar

Title  General Counsel

Manner of service  Electronic Mail

_____

Date  11/7/2019

Signature of Server  _____

Address  Permanent Select Committee on Intelligence, HVC-304, U.S. Capitol

# Exhibit B

**THE WHITE HOUSE**

WASHINGTON

November 8, 2019

Mr. William Pittard
KaiserDillon PLLC
1099 14th Street, N.W.
Washington, D.C. 20005

Dear Mr. Pittard:

I write in response to your request regarding the subpoena issued to your client, Mick Mulvaney, by the Permanent Select Committee on Intelligence of the United States House of Representatives (the "Committee") on November 7, 2019. The subpoena directs Mr. Mulvaney to appear to testify at a deposition at 9:00 a.m. on November 8, 2019.

The Department of Justice (the "Department") has advised me that Mr. Mulvaney is absolutely immune from compelled congressional testimony with respect to matters related to his service as a senior adviser to the President. *See* Letter to Pat A. Cipollone, Counsel to the President, from Steven A. Engel, Assistant Attorney General, Office of Legal Counsel (Nov. 7, 2019). The Department has long taken the position—across administrations of both political parties—that "the President and his immediate advisers are absolutely immune from testimonial compulsion by a Congressional committee." *Immunity of the Former Counsel to the President from Compelled Congressional Testimony*, 31 Op. O.L.C. 191, 191 (2007) (quoting *Assertion of Executive Privilege with Respect to Clemency Decision*, 23 Op. O.L.C. 1, 4 (1999) (opinion of Attorney General Janet Reno)); *Immunity of the Counsel to the President from Compelled Congressional Testimony*, 20 Op. O.L.C. 308, 308 (1996). That immunity arises from the President's position as head of the Executive Branch and from Mr. Mulvaney's position as a senior adviser to the President, specifically Assistant to the President and Acting White House Chief of Staff.

As the Department's letter states, Mr. Mulvaney qualifies as a senior presidential adviser entitled to immunity. The Department's opinions on this topic have consistently recognized that this immunity extends to immediate advisers "'who customarily meet with the President on a regular or frequent basis,' and upon whom the President relies directly for candid and sound advice." *Immunity of the Assistant to the President and Director of the Office of Political Strategy and Outreach from Congressional Subpoena*, 38 Op. O.L.C. __, at *2 (June 15, 2014) (quoting Memorandum from William H. Rehnquist, Assistant Attorney General, Office of Legal Counsel, *Re: Power of Congressional Committee to Compel Appearance or Testimony of "White House Staff"* at 7 (Feb. 5, 1971)). Accordingly, Mr. Mulvaney cannot be compelled to appear before the Committee because "[s]ubjecting a senior presidential advisor to the congressional subpoena power would be akin to requiring the President himself to appear before Congress on matters

Mr. William Pittard, Esq.
Page 2

relating to the performance of his constitutionally assigned executive functions." *Assertion of Executive Privilege with Respect to Clemency Decision*, 23 Op. O.L.C. at 5. The constitutional immunity of current and former senior advisers to the President exists to protect the institution of the Presidency and, as stated by former Attorney General Reno, "may not be overborne by competing congressional interests." *Id.*

Accordingly, in order to protect the prerogatives of the Office of President today and in the future, and in response to your request, the President directs Mr. Mulvaney not to appear at the Committee's scheduled deposition on November 8, 2019. This long-standing principle is firmly rooted in the Constitution's separation of powers and protects the core functions of the Presidency, and this office is adhering to this well-established precedent in order to allow future Presidents to effectively execute the responsibilities of the Office of President. I also attach the letter opinion provided by the Department regarding Mr. Mulvaney's immunity.

Thank you for your attention to this matter. Please do not hesitate to contact me or Mike Purpura if you have any questions.

Sincerely,

Pat A. Cipollone
*Counsel to the President*



**U.S. Department of Justice**

Office of Legal Counsel

---

Office of the Assistant Attorney General                      *Washington, D.C.  20530*

November 7, 2019

Pat A. Cipollone
Counsel to the President
The White House
Washington, DC 20500

Dear Mr. Cipollone:

On November 7, 2019, the Permanent Select Committee on Intelligence of the House of Representatives issued a subpoena seeking to compel Mick Mulvaney, Assistant to the President and Acting White House Chief of Staff, to testify at a deposition on Friday, November 8. The Committee subpoenaed Mr. Mulvaney as part of its impeachment inquiry into the conduct of the President. *See* H.R. Res. 660, 116th Cong. (2019). You have asked whether the Committee may compel him to testify. We conclude that Mr. Mulvaney is absolutely immune from compelled congressional testimony in his capacity as a senior adviser to the President.

The Executive Branch has taken the position for decades that "Congress may not constitutionally compel the President's senior advisers to testify about their official duties." *Testimonial Immunity Before Congress of the Former Counsel to the President*, 43 Op. O.L.C. __, at *1 (May 20, 2019). The immunity applies to those "immediate advisers . . . who customarily meet with the President on a regular or frequent basis." Memorandum for John D. Ehrlichman, Assistant to the President for Domestic Affairs, from William H. Rehnquist, Assistant Attorney General, Office of Legal Counsel, *Re: Power of Congressional Committee to Compel Appearance or Testimony of "White House Staff"* at 7 (Feb. 5, 1971) ("Rehnquist Memorandum"). We recently advised you that this immunity applies in an impeachment inquiry just as in a legislative oversight inquiry. *See* Letter for Pat A. Cipollone, Counsel to the President, from Steven A. Engel, Assistant Attorney General, Office of Legal Counsel at 2 (Nov. 3, 2019). "Even when impeachment proceedings are underway," we explained, "the President must remain able to continue to discharge the duties of his office. The testimonial immunity of the President's senior advisers remains an important limitation to protect the independence and autonomy of the President himself." *Id.*

This immunity applies in connection with the Committee's subpoena for Mr. Mulvaney's testimony. The Committee intends to question Mr. Mulvaney about matters related to his official duties at the White House—specifically the President's conduct of foreign relations with Ukraine. *See* Letter for Mick Mulvaney from Adam B. Schiff, Chairman, House Permanent Select Committee on Intelligence, et al. (Nov. 5, 2019). And Mr. Mulvaney, as Acting Chief of Staff, is a "top presidential adviser[]," *In re Sealed Case*, 121 F.3d 729, 757 (D.C. Cir. 1997), who works closely with the President in supervising the staff within the Executive Office of the President and managing the advice the President receives. *See* David B. Cohen & Charles E. Walcott, White House Transition Project, Report 2017-21, *The Office of Chief of Staff* 15–26

(2017).  Mr. Mulvaney meets with and advises the President on a daily basis about the most sensitive issues confronting the government.  Thus, he readily qualifies as an "immediate adviser[]" who may not be compelled to testify before Congress.  Rehnquist Memorandum at 7.

This conclusion also follows from this Office's prior recognition that certain *Deputy* White House Chiefs of Staff were immune from compelled congressional testimony.  *See* Letter for Pat A. Cipollone, Counsel to the President, from Steven A. Engel, Assistant Attorney General, Office of Legal Counsel (Sept. 16, 2019) (former Deputy Chief of Staff for Policy Implementation Rick Dearborn); Letter for Fred F. Fielding, Counsel to the President, from Steven G. Bradbury, Principal Deputy Assistant Attorney General, Office of Legal Counsel (Aug. 1, 2007) (Deputy White House Chief of Staff Karl Rove).  In addition, as we have noted with respect to other recently issued subpoenas, testimonial immunity is particularly justified because the Committee seeks Mr. Mulvaney's testimony about the President's conduct of relations with a foreign government.  *See, e.g.*, Letter for Pat A. Cipollone, Counsel to the President, from Steven A. Engel, Assistant Attorney General, Office of Legal Counsel at 2–3 (Oct. 25, 2019); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 812 n.19 (1982) ("[A] derivative claim to Presidential immunity would be strongest in such 'central' Presidential domains as foreign policy and national security, in which the President could not discharge his singularly vital mandate without delegating functions nearly as sensitive as his own.").

Please let us know if we may be of further assistance.

Steven A. Engel
Assistant Attorney General