**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| CHARLES M. KUPPERMAN, | ) ) ) | |
| *Plaintiff,* | ) ) | |
| v. | ) ) | Civil Action No. 19-3224 (RJL) |
| UNITED STATES HOUSE OF REPRESENTATIVES, *et al.*, | ) ) ) ) | |
| *Defendants*. | ) ) ) | |

**PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION TO INTERVENE**

Plaintiff Charles M. Kupperman respectfully opposes the motion to intervene submitted by Acting Chief of Staff John Michael Mulvaney. We respectfully submit that the Court should deny the motion. The Court should instead order the clerk to file Mulvaney's proposed complaint under a separate case number, and designate it as a "related case" under Local Civil Rule 40.5(a)(3), such that the cases may be litigated separately, but in tandem before this Court.

**INTRODUCTION AND SUMMARY OF ARGUMENT**

There are four key distinctions between Plaintiff's case and the complaint that Mulvaney proposes to file that preclude intervention as of right pursuant to FED. R. CIV. P. 24(a), and that also counsel strongly against the exercise of the Court's discretion to permit intervention under FED. R. CIV. P. 24(b). First, Plaintiff is and will remain neutral on the question whether the Executive Branch or the Legislative Branch should prevail on the merits of the unsettled Constitutional dispute at issue in this case. In contrast, Mulvaney has made it clear that he supports the Executive, and he accordingly seeks declaratory relief *against only* the House Defendants. *See*

Mot. to Intervene, Doc. 26 at 2, 6-7 (Nov. 11, 2019) ("Doc. 26"); Compl. Ex. 3, Doc. 26-3 at ¶¶ 5, 44, p. 14 (Nov. 8, 2019) ("Doc. 26-3"). It necessarily follows that Mulvaney's interests are adequately protected by an existing party; President Trump, represented by the Department of Justice, will vigorously champion Mulvaney's interest in the President's assertion of absolute immunity overriding Mulvaney's obligation to appear and testify in response to the House subpoena.

Second, Mulvaney has publicly discussed the events at issue in the House's impeachment inquiry, including appearing to admit that there was a quid pro quo relationship between the President's decision to withhold appropriated financial assistance from Ukraine and a Ukrainian investigation into what happened to a Democratic server in 2016 (an admission he subsequently sought to disavow). Plaintiff, in contrast, has never publicly disclosed information relating to any of his official duties, including the matters under investigation by the House. Accordingly, there is a serious question as to whether Mulvaney waived the absolute testimonial immunity claimed by the President such that a judgment in Plaintiff's case upholding the claim of immunity will not necessarily apply to Mulvaney.

Third, because Mulvaney is a *current* advisor to the President whereas Kupperman is a *former* advisor, a judgment in Plaintiff's case that the subpoena must be enforced will not necessarily apply to Mulvaney, given that one important justification offered by the Office of Legal Counsel ("OLC") for its longstanding assertion of absolute testimonial immunity for close Presidential advisors against Congressional process is that "preparing for such examinations would force them to divert time and attention from their duties to the President at the whim of congressional committees." Memorandum for the Counsel to the President from Steven A. Engel,

Assistant Attorney General, Office of Legal Counsel, *Re: Testimonial Immunity Before Congress of Former Counsel to the President*, 43 Op. O.L.C., slip op. at *5 (May 20, 2019) ("Engel Mem.").

<u>Fourth</u>, *all* of Plaintiff's official duties *exclusively* concerned advising the President on highly sensitive matters of national security and foreign affairs, and if any close personal advisor to the President qualifies for testimonial immunity, it surely must be the President's National Security Advisor and his deputy. In contrast, the bulk of Mulvaney's duties "d[o] not involve the sensitive topics of national security or foreign affairs." *Comm. on the Judiciary v. Miers*, 558 F. Supp. 2d 53, 105 (D.D.C. 2008).

Permitting Mulvaney to intervene could thus prejudice Plaintiff's strong interest in an expeditious resolution of the merits of the momentous Constitutional issue presented here in accordance with the aggressive schedule the Court has adopted for reaching final judgment as quickly as possible. Both the issue concerning Mulvaney's potential waiver of any absolute testimonial immunity that the President may have and the question concerning the extent to which Mulvaney's official duties concern matters of national security and foreign affairs threaten to give rise to discovery or other extraneous proceedings that could frustrate the Court's efforts to expeditiously decide this question of great national importance. To be sure, there is significant overlap between Plaintiff's case and the complaint Mulvaney seeks to bring, and the efficient administration of justice demands that the overlapping legal issues be resolved as quickly and as consistently as possible. The procedural device that permits the Court to vindicate these concerns by deciding the overlapping questions together, while at the same time avoiding any prejudice to Plaintiff given that the issues in the two cases diverge, is not intervention under Rule 24 but rather this Court's related-case rule that keeps the two cases separate while allowing the Court to consider in tandem any and all overlapping issues.

ARGUMENT

I.  **MULVANEY DOES NOT SATISFY ALL THE REQUIREMENTS FOR INTERVENTION AS OF RIGHT UNDER RULE 24(a)(2).**

Federal Rule of Civil Procedure 24 provides that, on a timely motion, a nonparty is entitled to intervene in an ongoing action only if he "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." FED. R. CIV. P. 24(a)(2); *see In re Brewer*, 863 F.3d 861, 872 (D.C. Cir. 2017).  Mulvaney cannot satisfy this test.

**A.  Mulvaney's interest in having this Court uphold the President's invocation of immunity is adequately represented by an existing party:  President Trump.**

Mulvaney has failed to demonstrate that his interest in upholding the President's invocation of testimonial immunity on his behalf is not adequately represented by the existing parties. Mulvaney maintains that Plaintiff Kupperman will not adequately represent his interest, and given that Plaintiff is and will remain neutral on the merits of the constitutional issue, Plaintiff will not represent Mulvaney's interest at all. *See* Doc. 26 at 6.  But Rule 24(a)(2) precludes intervention if "existing *parties* adequately represent [his] interest," (emphasis added), and President Trump, represented by the Department of Justice, will fully represent Mulvaney's interest in sustaining the President's invocation of testimonial immunity.

Mulvaney's papers make very clear that he has aligned himself fully and completely with the President on the merits of the constitutional dispute before the Court.  In the very first sentence of the Proposed Complaint, Mulvaney states that he "files this complaint … against" the House Defendants; conspicuously missing from Mulvaney's list of Defendants is the President.  Doc. 26-3 at 3.  Moreover, Mulvaney's prayer for relief seeks no relief whatever against the President, even

as he asks the Court to declare "that the House Defendants may not take adverse action against [him] based on his decision to follow the President's directive to assert [presidential] immunity at a time when the Judicial Branch had not definitively resolved the question." *Id*. at 14.  And Mulvaney's counsel has publicly affirmed that "Mr. Mulvaney intends to follow any lawful order of the president and has no reason to think that the order at issue is unlawful — other than the fact the House has threatened him with charges of contempt and obstruction for following it."  Tom Hamburger, Carol D. Leonnig, & Josh Dawsey, *Mulvaney's move to join impeachment testimony lawsuit rankles Bolton allies*, WASH POST (Nov. 10, 2019) (quoting William Pittard), available at https://wapo.st/2NCBWDq.  Indeed, Mulvaney's counsel confirmed publicly that "his action is aimed at the House, not the president." *Id*.

Mulvaney has offered this Court no reason to believe that the President's defense on the merits of testimonial immunity for his advisors, pressed by the extraordinarily able lawyers in the Department of Justice, will be "ineffectual," "incompetent," or anything short of comprehensive. *See Jones v. Prince George's County*, 348 F.3d 1014, 1019 (D.C. Cir. 2003).  Nor has he identified any legal "argument that he suspects will not also be pressed by" the President. *See Building & Const. Trades Dep't, AFL-CIO v. Reich*, 40 F.3d 1275, 1282 (D.C. Cir. 1994); *see also Dimond v. District of Columbia*, 792 F.2d 179, 193 (D.C. Cir. 1986) (intimating that there is adequate representation when a governmental entity will "make the same legal arguments" that a proposed intervenor would make).  In the end, Mulvaney has not even attempted to demonstrate that the President will not fully and adequately defend his interest in having this Court affirm the validity of the President's own assertion of absolute testimonial immunity.  He is therefore not entitled to intervene as of right under Rule 24(a)(2).

### B. This Court's disposition of Plaintiff's action will neither impair nor impede Mulvaney's ability to protect his interests.

Mulvaney's motion to intervene as of right independently fails for a second reason: he cannot show that he is "so situated that disposing" of Plaintiff's action "may as a practical matter impair or impede" his legal interests. FED. R. CIV. P. 24(a)(2). Looking to the "practical consequences" of denying intervention, *see Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) (citation omitted), it is clear that the outcome of Plaintiff's suit will have little real-world impact on Mulvaney because he will not be bound by any ruling entered in this case, and in any event, there are critical distinctions between the two claims that may leave Mulvaney's claim unresolved no matter how the Court decides Plaintiff's case.

Any judgment in Plaintiff's case upholding the President's claim of immunity may not apply to Mulvaney for two reasons. First, as noted above, Mulvaney has publicly discussed information relating to the matters at the heart of the House's impeachment inquiry, thus giving rise to a serious question whether Mulvaney waived any immunity that may have otherwise applied to his compelled testimony. This issue may entail discovery into whether Mulvaney's disclosures were authorized by the President. Because Plaintiff, in contrast, has never publicly disclosed information relating to his official duties, a ruling that he is absolutely immune would not necessarily resolve Mulvaney's claim.

Second, quite apart from the question whether *all* close advisors to the President are absolutely immune from congressional testimony, OLC has long taken the position that "the President has the constitutional authority to assert an absolute executive privilege to protect information the production or disclosure of which he determines could adversely affect the Nation's security." Memorandum for C. Boyden Gray, Counsel to the President, from J. Michael Luttig, Principal Deputy Assistant Attorney General, Office of Legal Counsel (Dec. 21, 1989), at

6

1; *see also United States v. Nixon*, 418 U.S. 683, 710 (1974); *Miers*, 558 F. Supp. 2d at 105. Because *all* of Plaintiff's duties *exclusively* involve matters of national security and foreign affairs, a ruling upholding testimonial immunity as to him may not necessarily apply to an official like Mulvaney, whose official duties are largely unrelated to these highly sensitive areas. In any event, the omnibus nature of Mulvaney's official duties could give rise to extraneous proceedings addressing whether any of the testimony sought by the House involves information relating to his myriad duties outside the realm of national security and foreign affairs.

Conversely, a ruling upholding the House's subpoena issued to Plaintiff would not necessarily impair Mulvaney's interests. A central justification underlying absolute testimonial immunity against Congressional process for close Presidential advisors is that "preparing for such examinations would force them to divert time and attention from their duties to the President at the whim of congressional committees." Engel Mem., slip op. at *5. As a current advisor to the President, Mulvaney may invoke this argument, while it does not apply to Plaintiff, a former official. Moreover, the House has withdrawn the subpoena to Plaintiff and argued that Plaintiff's action is moot as a result; Mulvaney's subpoena remains outstanding.[1]

## II. THE COURT SHOULD NOT EXERCISE ITS DISCRETION UNDER RULE 24(b) TO PERMIT MULVANEY TO INTERVENE.

Rule 24(b) grants this Court discretion to "permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b)(1)(B). But "[i]n exercising its discretion, the court must consider whether the intervention

---

[1] We will oppose the House's suggestion of mootness because it "is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (citation omitted).

7

will unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(3).

The Court should exercise its discretion to deny permissive intervention because Mulvaney's action threatens to "unduly delay or prejudice the adjudication of" Plaintiff's suit. From the outset, the Court recognized that this case "is a matter of great public interest and a matter of great urgency to the country," and for that reason the Court emphasized that its "overarching concern is that we get all this done as soon as possible so we can move forward with a briefing schedule and bring this case to resolution." Transcript of Status Conference at 6 (Oct. 31, 2019). To achieve this objective, the Court has adopted an aggressive briefing schedule to enable the Court to resolve this case "by the end of December or early January." *Id*. at 18. Permitting Mulvaney to intervene threatens to frustrate the Court's efforts and to prejudice Plaintiff's strong interest in prompt resolution of the constitutional dilemma in which he finds himself.

The two features of Mulvaney's claim discussed above – the waiver issue and the generalized nature of Mulvaney's duties – threaten to divert the Court from the swift resolution of the purely legal claims at issue in Plaintiff's suit. To be sure, Mulvaney's proposed Complaint presents some common questions of law with Plaintiff's suit, and we credit the proposition that judicial efficiency demands that these common questions be resolved as quickly and as consistently as possible by considering them in tandem. As we next explain, the Court has a ready procedural device to achieve these objectives without inflicting the prejudice that would flow to Plaintiff if Mulvaney were permitted to intervene in this action.

### III. THE COURT SHOULD DESIGNATE MULVANEY'S SUIT AS A SEPARATE RELATED CASE.

A civil case filed in this district is "deemed related when the earliest is still pending on the merits in the District Court" if, *inter alia*, the cases "(ii) involve common issues of fact, or (iii)

8

grow out of the same event or transaction . . . ." Local Rule 40.5(a)(3).  Because Mulvaney's action shares "common issues of fact" with Plaintiff's action and "grow[s] out of the same event or transaction" giving rise Plaintiff's complaint, the Court may deem his case "related" to Plaintiff's pending suit and decide it separately from, but in tandem with, this case.

The two cases have "highly overlapping issues of fact," *Comm. on the Judiciary v. McGahn*, 391 F. Supp. 3d 116, 121 (D.D.C. 2019), and the same event precipitated both actions. Both arise out of the same congressional impeachment investigation, involve the same type of congressional subpoena, concern high-level personal advisors to the President, and are framed by the same assertion of absolute testimonial immunity for close Presidential advisors.  Both Plaintiff and Mulvaney were instructed by the President not to testify pursuant to the subpoenas, and both have been threatened by the House Defendants with contempt.

Most importantly, by treating the cases as separate but related, the Court may resolve the common issues in tandem while not delaying resolution of Plaintiff's pending case should the waiver and national security/foreign affairs issues described above lead to additional proceedings in Mulvaney's case.  Simply put, the related case rule permits the Court to conduct joint proceedings for as long as that makes sense while ensuring that Plaintiff's strong interest in an expeditious resolution of his purely legal claim is not encumbered by the potential diversions that may arise in Mulvaney's case.

## CONCLUSION

For the foregoing reasons, the Court should deny Mulvaney's motion to intervene and instead designate his complaint as a "related case" under Local Civil Rule 40.5(a)(3). A proposed order is attached.

November 12, 2019

Respectfully submitted,

/s/ Charles J. Cooper
Charles J. Cooper, Bar No. 248070
Michael W. Kirk, Bar No. 424648
Shelby Baird[*]

COOPER & KIRK, PLLC
1523 New Hampshire Avenue, NW
Washington, DC  20036
Telephone: (202) 220-9600
Facsimile: (202) 220-9601
Email: ccooper@cooperkirk.com

*Counsel for Plaintiff Charles M. Kupperman*

[*] D.C. Bar Application Pending; Admitted in Pennsylvania