**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

CHARLES M. KUPPERMAN,

       *Plaintiff*,

    v.

UNITED STATES HOUSE OF
    REPRESENTATIVES, *et al.*,

       *Defendants*.

---

No. 19-cv-3224 (RJL)

**<u>HOUSE DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 1

I.      This Case Is Moot ...................................................................................................... 1

II.     This Court Lacks Jurisdiction over the House Defendants Because Their Sovereign
        Immunity Has Not Been Waived .............................................................................. 9

III.    This Court Lacks Jurisdiction Under the Speech or Debate Clause ................................ 12

       A.      The Speech or Debate Clause Bars Suit Against the House Defendants .............. 12

       B.      Kupperman Cannot Circumvent the Speech or Debate Clause by Adding the
              Sergeant-at-Arms as a Defendant ........................................................................ 15

IV.    Any Claim Against the Sergeant-at-Arms Must Be Dismissed ....................................... 17

V.     If the Court Were to Reach the Merits, It Should Conclude That Kupperman Is Not
        Absolutely Immune from Congressional Process ............................................................. 20

CONCLUSION .................................................................................................................... 25

# TABLE OF AUTHORITIES

## CASES

*Am. Petroleum Inst. v. EPA*,
 683 F.3d 382 (D.C. Cir. 2012) ................................................................................8

*Aetna Life Ins. Co. v. Haworth*,
 300 U.S. 227 (1937) .............................................................................................25

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ........................................................................................11, 20

*Ashcroft v. Mattis*,
 431 U.S. 171 (1977) .............................................................................................25

*Barker v. Conroy*,
 921 F.3d 1118 (D.C. Cir. 2019) ............................................................................3

*Carter v. Carson*,
 241 F. Supp. 3d 191 (D.D.C. 2017) ................................................................16, 18

*Cheney v. U.S. Dist. Court for the District of Columbia*,
 542 U.S. 367 (2004) .............................................................................................23

* *Cierco v. Lew*,
 190 F. Supp. 3d 16 (D.D.C. 2016) ......................................................................2, 7

*Clapper v. Amnesty Int'l USA*,
 568 U.S. 398 (2013) .............................................................................................19

*Clinton v. Jones*,
 520 U.S. 681 (1997) ........................................................................................21, 23

* *Comm. on the Judiciary v. McGahn*,
 — F. Supp. 3d —, 2019 WL 6312011 (Nov. 25, 2019) .................................. *passim*

* *Comm. on the Judiciary v. Miers*,
 558 F. Supp. 2d 53 (D.D.C. 2008) ................................................................. *passim*

*Conf. of State Bank Supervisors v. Office of Comptroller of Currency*,
 313 F. Supp. 3d 285 (D.D.C. 2018) ....................................................................8, 9

*Conservation Force, Inc. v. Jewell*,
 733 F.3d 1200 (D.C. Cir. 2013) ............................................................................2

*Conyers v. Reagan*,
 765 F.2d 1124 (D.C. Cir. 1985) ...........................................................................1, 2

*Dellums v. Powell*,
  561 F.2d 242 (D.C. Cir. 1977) .................................................................................21

*Delta Air Lines, Inc. v. Exp.-Imp. Bank of United States*,
  85 F. Supp. 3d 250 (D.D.C. 2015) ..............................................................................9

*Devia v. Nuclear Regulatory Comm'n*,
  492 F.3d 421 (D.C. Cir. 2007) .................................................................................20

*Doe v. McMillan*,
  412 U.S. 306 (1973) ...........................................................................................15, 16

*Dombrowski v. Eastland*,
  387 U.S. 82 (1967) .............................................................................................15, 16

*Dugan v. Rank*,
  372 U.S. 609 (1963) ...............................................................................................11

*Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*,
  878 F.3d 371 (D.C. Cir. 2017) .................................................................................19

*Fraternal Order of Police, D.C. v. Rubin*,
  134 F. Supp. 2d 39 (D.D.C. 2001) ...........................................................................2, 7

* *Gordon v. Lynch*,
  817 F.3d 804 (D.C. Cir. 2016) ...............................................................................4, 5

* *Gravel v. United States*,
  408 U.S. 606 (1972) .............................................................................12, 15, 16, 21

*Hardaway v. D.C. Hous. Auth.*
  843 F.3d 973 (D.C. Cir. 2016) .................................................................................4

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982) .....................................................................................21, 22, 23

*Hudson Savings Bank v. Austin*,
  479 F.3d 102 (1st Cir. 2007) ...................................................................................10

*In re Request for Access to Grand Jury Materials Grand Jury No. 81-1, Miami*,
  833 F.2d 1438 (11th Cir. 1987) ...............................................................................12

*Kifafi v. Hilton Hotels Ret. Plan*,
  701 F.3d 718 (D.C. Cir. 2012) .................................................................................4

*Kilbourn v. Thompson*,
  103 U.S. 168 (1880) ...........................................................................................15, 16

*Ky. ex rel. United Pac. Ins. Co. v. Laurel Cty.*,
  805 F.2d 628 (6th Cir. 1987) .......................................................................10

*La. Envtl. Action Network v. Browner*,
  87 F.3d 1379 (D.C. Cir. 1996) .......................................................................9

*Lane v. Pena*,
  518 U.S. 187 (1996) .......................................................................................11

*Larsen v. U.S. Navy*,
  525 F.3d 1 (D.C. Cir. 2008) ...........................................................................6

*Larson v. Domestic & Foreign Commerce Corp.*,
  337 U.S. 682 (1949) ......................................................................................11

*Los Angeles Cty. v. Davis*,
  440 U.S. 625 (1979) ........................................................................................4

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ..................................................................................17, 18

*Middlebrooks v. Godwin Corp.*,
  722 F. Supp. 2d 82 (D.D.C. 2010) ...............................................................18

*N.Y. Trust Co. v. Eisner*,
  256 U.S. 345 (1921) .......................................................................................23

*Nat'l Ass'n of Regulatory Util. Comm'rs v. U.S. Dep't of Energy*,
  851 F.2d 1424 (D.C. Cir. 1988) ......................................................................9

* *Nat'l Black Police Ass'n v. District of Columbia*,
  108 F.3d 346 (D.C. Cir. 1997) ....................................................................3, 6

*Nixon v. Adm'r of Gen. Servs.*,
  433 U.S. 425 (1977) ..................................................................................21, 23

* *Nixon v. Sirica*,
  487 F.2d 700 (D.C. Cir. 1973) ............................................................ *passim*

*Payne Enters. Inc. v. United States*,
  837 F.2d 486 (D.C. Cir. 1988) ........................................................................4

*People for the Ethical Treatment of Animals v. U.S. Dep't of Agric. & Animal &
  Plant Health Inspection Serv.*,
  918 F.3d 151 (D.C. Cir. 2019) ........................................................................4

*Planned Parenthood of Wisc., Inc. v. Azar*,
  — F.3d —, No. 18-5218, 2019 WL 6121445 (D.C. Cir. Nov. 19, 2019).................7

* *Porteous v. Baron*,
    729 F. Supp. 2d 158 (D.D.C. 2010) .........................................................................13

*Powell v. McCormack*,
    395 U.S. 486 (1969)..............................................................................12, 15, 16

*Preiser v. Newkirk*,
    422 U.S. 395 (1975)............................................................................................2

*Rangel v. Boehner*,
    785 F.3d 19 (D.C. Cir. 2015) ........................................................................12, 14

*Republic of Philippines v. Pimentel*,
    553 U.S. 851 (2008)..........................................................................................10

*Rutledge v. Town of Chatham*,
    No. 4:10-cv-35, 2010 WL 3835662 (W.D. Va. Sept. 30, 2010)............................18

* *Senate Perm. Subcomm. on Investigations v. Ferrer*,
    856 F.3d 1080 (D.C. Cir. 2017) ...................................................................2, 6, 14

*Senate Select Comm. on Presidential Campaign Activities v. Nixon*,
    498 F.2d 725 (D.C. Cir. 1974) (en banc) ...................................................21, 23, 24

*Texas v. United States*,
    523 U.S. 296 (1998).........................................................................................20

* *United States v. American Telephone & Telegraph Co.*,
    567 F.2d 121 (D.C. Cir. 1977) .....................................................................13, 14

*United States v. Burr*,
    25 F. Cas. 187 (C.C.D. Va. 1807) .....................................................................21

*United States v. Dry Dock Sav. Inst.*,
    149 F.2d 917 (2d Cir. 1945)..............................................................................10

*United States v. Johnson*,
    383 U.S. 169 (1966)..........................................................................................12

*United States v. Nixon*,
    418 U.S. 683 (1974)....................................................................................21, 23

*United States v. W.T. Grant Co.*,
    345 U.S. 629 (1953).............................................................................................4

## CONSTITUTIONAL PROVISIONS

U.S. Const. Art. I, § 2...............................................................................12, 24

U.S. Const., Art. I, § 6 ..............................................................................................................22

**STATUTES**

2 U.S.C. § 192..........................................................................................................................19

2 U.S.C. § 194......................................................................................................................7, 19

**RULES**

Fed. R. Civ. P. 12.........................................................................................................17, 19, 20

Fed. R. Civ. P. 21....................................................................................................................17

Fed. R. Civ. P. 22......................................................................................................................9

**OTHER AUTHORITIES**

7 C. Wright, A. Miller, & M. Kane, Fed. Practice and Procedure § 1721 (2d ed. 1986) ..............10

## INTRODUCTION

This case has suffered from fatal jurisdictional defects from the start, and those defects have only increased since then.  Most notably, the House Permanent Select Committee on Intelligence (HPSCI) has withdrawn the subpoena to Plaintiff Charles M. Kupperman that triggered this lawsuit, and the House Defendants have unequivocally committed to this Court that they will neither reissue the subpoena to Kupperman nor take any action against him for having failed to comply with the subpoena while it was in force.  Kupperman filed this lawsuit solely to avoid facing "competing demands of both the Legislative and Executive Branches," Compl. ¶ 1 (Oct. 25, 2019), ECF No. 1, but he no longer faces any such demands.  This case is clearly moot.

Mootness aside, Kupperman's claims are also barred by sovereign immunity and the Speech or Debate Clause.  Kupperman's eleventh-hour effort to circumvent the House Defendants' immunity by adding the Sergeant-at-Arms as a defendant is improper and unavailing.  Adding the Sergeant-at-Arms would not turn a moot case into a live controversy or save Kupperman's claims from dismissal on immunity grounds, given that Kupperman's complaint contains no allegations about the Sergeant-at-Arms, and that any such allegations would be hopelessly speculative in any event.

## ARGUMENT

### I.      This Case Is Moot

**1.**  "In determining whether a request for declaratory relief has become moot, the question is whether the facts alleged … show that there is a substantial controversy, between parties having adverse legal interests, of *sufficient immediacy and reality to warrant the issuance of a declaratory judgment*."  *Conyers v. Reagan*, 765 F.2d 1124, 1128 (D.C. Cir. 1985)

(alterations omitted) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 402 (1975)).  Here, there is no longer any "immediacy" or "reality" to the controversy underlying Kupperman's request for declaratory relief.  *Id.*  Kupperman sought a declaratory judgment because he purportedly was "faced with irreconcilable commands by the Legislative and Executive Branches."  Compl. at 2.  But he no longer faces any command from the Legislative Branch.  HPSCI has withdrawn its subpoena to Kupperman, and the House Defendants have confirmed that they will not issue a new one.  Because "[t]he challenged conduct has stopped, and is not likely to reoccur," "declaratory relief is not appropriate."  *Fraternal Order of Police, D.C. v. Rubin*, 134 F. Supp. 2d 39, 43 (D.D.C. 2001); *see also Senate Perm. Subcomm. on Investigations v. Ferrer*, 856 F.3d 1080, 1083-86 (D.C. Cir. 2017) (case was moot where Senate subcommittee "no longer [sought] to enforce any part of the subpoena" at issue).

For the same reasons, this case is moot because there is no further relief for Kupperman to obtain.  *See Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013) ("a case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome," including when "the court can provide no effective remedy because a party has … all the relief it … sought" (alterations and quotation marks omitted)); *Cierco v. Lew*, 190 F. Supp. 3d 16, 25-26 (D.D.C. 2016) ("[N]o live controversy remains" where the plaintiff has "the relief [he] sought.").  Here, the *sole* relief Kupperman sought in his complaint was to eliminate the "competing demands of both the Legislative and Executive Branches."  Compl. ¶ 1; *see also id.* ¶ 47.  Kupperman insisted that he had no preference as to which Branch's position won out, and that he merely sought to avoid having to "adjudicate the Constitutional dispute himself."  *Id.* ¶¶ 2, 49.  While Kupperman continues to assert in his latest filing that, "if the Court … dismiss[es] the case without reaching the merits, [he] will be forced

to himself decide this grave constitutional question,"[1] that is just not so.  Kupperman need not

"decide" whether to comply with a subpoena that has been withdrawn and will not be reissued.

He no longer faces any "competing demands" from Congress and the President.  *Id.* ¶ 1.

Because Kupperman now has all that he sought, his case is moot.

**2.**  This case does not fall within the "voluntary cessation" exception to mootness, as

Kupperman wrongly contends.  If "[t]here is no reasonable expectation" that the challenged

conduct will recur, and the voluntary act has "completely or irrevocably eradicated" the

conduct's alleged effects, the voluntary cessation exception does not apply.  *Nat'l Black Police

Ass'n v. District of Columbia*, 108 F.3d 346, 349 (D.C. Cir. 1997) (quotation marks omitted).

That is the case here.

As the House Defendants have repeatedly reaffirmed, they will not reissue the subpoena

to Kupperman.  Kupperman derides these assurances as "carefully worded representations" that

are "clearly contingent" on other events.  Kupperman Opp'n at 5, 7.  He is wrong.  To be

perfectly clear yet again, the House Defendants will not reissue the subpoena to Kupperman,

period.[2]  There are no contingencies or caveats to this representation.  The subpoena will not

reissue today, tomorrow, or ever.  Kupperman's efforts to find uncertainty where there is none

are confounding—and unavailing, as Article III prevents this Court from issuing the "advisory

---

[1] Consolidated Mem. of Law in Opp'n to Defs.' Mot. to Dismiss (Kupperman Opp'n) at 1 (Nov. 27, 2019), ECF No. 45.

[2] *See* House Defs.' Mot. to Dismiss (House Defs.' Mot.) at 1 (Nov. 14, 2019), ECF No. 41 ("The subpoena that gave rise to this lawsuit has been withdrawn, and it will not be reissued."); Mem. of Law Responding to President Trump's Mot. to Dismiss or, in the Alt., for Summ. J. (House Defs.' Opp'n) at 4 (Nov. 27, 2019), ECF No. 47 ("[T]the House Defendants have withdrawn the subpoena and will not reissue it."); *see also Barker v. Conroy*, 921 F.3d 1118, 1124 (D.C. Cir. 2019) (accepting representation of House General Counsel on behalf of the House of Representatives).

opinion[] on abstract propositions of law" that Kupperman desires.  *Los Angeles Cty. v. Davis*, 440 U.S. 625, 633 (1979) (quotation marks omitted).

The House Defendants' commitments to this Court must be afforded a "presumption of regularity."  *People for the Ethical Treatment of Animals v. U.S. Dep't of Agric. & Animal & Plant Health Inspection Serv.* (*PETA*), 918 F.3d 151, 157 (D.C. Cir. 2019).  Kupperman cites several cases where courts declined to find mootness based on a party's assurances, Kupperman Opp'n at 6, but those cases are readily distinguishable.  Two of the cases involved representations by private parties rather than officials of the federal government, *see United States v. W.T. Grant Co.*, 345 U.S. 629 (1953); *Kifafi v. Hilton Hotels Ret. Plan*, 701 F.3d 718 (D.C. Cir. 2012), and a third involved a local housing authority, *see Hardaway v. D.C. Hous. Auth.*, 843 F.3d 973 (D.C. Cir. 2016).  In the only case involving representations by a federal official, the government offered only a "weak assurance" from an Air Force major who "[did] not pretend to speak for her superiors."  *Payne Enters. Inc. v. United States*, 837 F.2d 486, 492 (D.C. Cir. 1988).

Here, by contrast, the Speaker of the House of Representatives and the chairs of the relevant House committees have provided unambiguous assurances to this Court through counsel that the House will not reissue the subpoena to Kupperman.  The D.C. Circuit has dismissed claims based on far less unequivocal assurances, from far less senior officials.  *See, e.g.*, *PETA*, 918 F.3d at 158 (dismissing claim based on representation that agency "intends to continue posting annual reports going forward"); *Gordon v. Lynch*, 817 F.3d 804, 807 (D.C. Cir. 2016) (dismissing case where, at oral argument, government counsel described "any federal prosecution or enforcement action as 'inconceivable'").

In an effort to call into question the House Defendants' intentions, Kupperman points to the initial November 5, 2019 letter from HPSCI, the House Committee on Foreign Affairs, and the House Committee on Oversight and Reform withdrawing the subpoena.  *See* House Defs.' Notice of Mootness, Ex. A (Nov. 5 Letter) (Nov. 6, 2019), ECF No. 22-1.  Kupperman stiches together various sentence fragments purportedly to show that the House Defendants secretly intend to subpoena him again, their representations to the contrary notwithstanding.  *See* Kupperman Opp'n at 4-5.  But the relevant portions of the November 5 letter do not mean what Kupperman claims.  The House Defendants merely indicated that Kupperman could still testify *voluntarily*, "[l]ike the many dedicated public servants who have appeared before the Committees despite White House efforts to prevent or limit their testimony."  Nov. 5 Letter at 2. Neither the November 5 letter nor any other filing from the House Defendants has indicated that Kupperman may be subpoenaed again.  He will not be.

Even if the November 5 letter left some ambiguity (which it did not), the House Defendants' repeated representations to this Court since then remove any doubt.  The D.C. Circuit's decision in *Gordon* controls here.  There, the head of the relevant federal agency initially submitted a declaration stating that, "based on all evidence currently known to the Bureau, it has no intention to seek or recommend enforcement action against Gordon."  817 F.3d at 806.  Gordon argued that this statement was too equivocal to moot the case.  *See id.*  The D.C. Circuit held that, "whatever the effect of [this] earlier representation," subsequent statements by "government counsel … at oral argument" were sufficiently unequivocal to moot the case.  *Id.* at 807.  Here, even more so than in *Gordon*, the House Defendants, through their counsel, have been crystal clear—to Kupperman and to this Court—that they will not reissue the subpoena.

Kupperman cannot avoid a finding of mootness by simply speculating that the House
Defendants do not mean what they say.  Where, as here, a government body has rescinded a
challenged action, "there must be evidence indicating that the challenged [action] likely will be
reenacted."  *Larsen v. U.S. Navy*, 525 F.3d 1, 4 (D.C. Cir. 2008) (quoting *Nat'l Black Police
Ass'n*, 108 F.3d at 349).  Kupperman can point to no evidence that the House Defendants will
reissue a subpoena to him.  There is none.  Kupperman's bare speculation is both erroneous as a
matter of fact and insufficient as a matter of law.  *See Ferrer*, 856 F.3d at 1088 (generic
statements by subcommittee members regarding continued interest in topic "hardly establish a
'reasonable expectation' that the Subcommittee, having completed its work and issued its final
report, will … again issue a subpoena to Ferrer").

As for the second prong of the voluntary cessation inquiry, the House Defendants'
withdrawal of the subpoena has "completely [and] irrevocably eradicated" its alleged harmful
effects.  *Nat'l Black Police Ass'n*, 108 F.3d at 349 (quotation marks omitted).  Kupperman no
longer faces a purported "irreconcilable" conflict in which he cannot "satisfy the competing
demands of both the Legislative and Executive Branches."  Compl. at 2-3.  The House
Defendants have also committed that they will not take any action against Kupperman for his
failure to comply with the subpoena while it was in effect.  The House Defendants will not
initiate contempt proceedings against him or refer his case for prosecution.  *See* House Defs.'
Opp'n at 3.  They will not exercise inherent authority to arrest him, impose monetary fines on
him, or take any other adverse action against him.  *Id*.  Because Kupperman will experience no
"residual effect" from the subpoena that has been withdrawn, *Nat'l Black Police Ass'n*, 108 F.3d
at 350, the second prong of the voluntary cessation doctrine is also satisfied.

**3.**  These additional commitments by the House Defendants conclusively refute Kupperman's new theory—raised for the first time in his November 27 brief—that this case is not moot because "the House Defendants have given no assurance that they will not punish him for his decision not to immediately comply with the prior subpoena."  Kupperman Opp'n at 9. The House Defendants offered precisely such assurances in their own November 27 brief.  *See* House Defs.' Opp'n at 3.[3]  As already described, the House Defendants will not exercise their "inherent contempt authority," Kupperman Opp'n at 9, or otherwise seek to punish Kupperman. This Court should accept House Defendants' assurances that they will not take such actions, especially given the lack of any evidence to the contrary.

Further, Kupperman's new theory can be independently rejected because a purported fear that the House will exercise its inherent contempt power over a withdrawn subpoena is not the harm alleged in the complaint.  Plaintiffs may not "avoid mootness" by attempting "to recast their suit" from what was alleged in their complaint.  *Planned Parenthood of Wisc., Inc. v. Azar*, — F.3d —, No. 18-5218, 2019 WL 6121445, at *2 (D.C. Cir. Nov. 19, 2019); *accord Fraternal Order of Police*, 134 F. Supp. 2d at 42.  The sole harm alleged in the complaint is Kupperman's purported dilemma of facing competing commands from the Executive and Legislative Branches.  Kupperman's new theory of harm is just one of the numerous ways in which he has tried to "mov[e] the goalpost in an effort to avoid mootness." *Cierco*, 190 F. Supp. 3d at 26.

---

[3] *See also* House Defs.' Response to Pres. Trump's Statement of Material Facts Not in Dispute at 6-7 (Nov. 27, 2017), ECF No. 47-1 ("Undisputed that HPSCI withdrew the subpoena to Kupperman on November 5, 2019, and that House Defendants will not reissue it; and, accordingly, that House Defendants will not initiate contempt proceedings against Kupperman or refer him for prosecution under 2 U.S.C. § 194 concerning the now-withdrawn subpoena; will not exercise the House's power of inherent contempt against Kupperman—via arrest by the Sergeant-at-Arms, via the imposition of monetary fines, or via any other mechanism— concerning the now-withdrawn subpoena; and will not bring a civil suit against Kupperman to enforce the now-withdrawn subpoena." (underline omitted)).

**4.**  Kupperman accuses the House Defendants of attempting to "manipulate the judicial process" by seeking "to ensure that the merits of this interbranch dispute is settled in *McGahn* rather than by this Court."  Kupperman Opp'n at 8.  This accusation is off target.  *McGahn* was filed by a different House committee on August 7, 2019, more than two-and-a-half months before Kupperman filed this case.  *See* Compl., *Comm. on the Judiciary v. McGahn*, No. 19-cv-2379 (D.D.C. Aug. 7, 2019), ECF No. 1.  It was Kupperman who chose to file a new lawsuit—hauling the House Defendants into court against their will—and it is Kupperman who continues to press his case despite the withdrawal of the subpoena, and despite the fact that the *McGahn* court has now issued its ruling.  What's more, both the Legislative and Executive Branches agree that the "merits of this interbranch dispute," Kupperman Opp'n at 8, should not be resolved in this case, refuting Kupperman's claim.

**5.**  Even if this Court were to determine that this case is not moot, it still should dismiss Kupperman's claim as unripe.  *See* House Defs.' Mot. at 8.  The Article III component of ripeness "requires a petitioner to allege … an injury-in-fact that is imminent or certainly impending."  *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 386 (D.C. Cir. 2012) (quotation marks omitted).  Kupperman cannot satisfy this requirement, as he cannot demonstrate that another subpoena is imminently or certainly forthcoming.  For all the reasons already stated, it is not.

The prudential component of ripeness likewise counsels in favor of dismissal.  "In assessing the prudential ripeness of a case," courts consider "the fitness of the issues for judicial decision and the extent to which withholding a decision will cause hardship to the parties."  *Id.* at 387.  Kupperman argues that this case is necessarily fit for judicial resolution because it involves a "purely legal" question.  Kupperman Opp'n at 10.  But courts in this Circuit repeatedly have held that "even purely legal issues may be unfit for review."  *Conf. of State Bank Supervisors v.*

*Office of Comptroller of Currency*, 313 F. Supp. 3d 285, 301 (D.D.C. 2018) (quotation marks

omitted); *accord Nat'l Ass'n of Regulatory Util. Comm'rs v. U.S. Dep't of Energy*, 851 F.2d

1424, 1428-29 (D.C. Cir. 1988); *Delta Air Lines, Inc. v. Exp.-Imp. Bank of United States*, 85 F.

Supp. 3d 250, 270-71 (D.D.C. 2015).  Given the substantial constitutional interests at stake here,

this Court would "benefit from letting the question arise in some more concrete and final form."

*Nat'l Ass'n*, 851 F.2d at 1429 (quotation marks omitted).

With respect to the second prudential ripeness factor, where there is an "institutional

interest in deferral," a court should proceed to the merits only if "postponing review [would]

impose a hardship on the complaining party that is immediate, direct, and significant." *Id.*

(quotation marks omitted).  Tellingly, Kupperman offers no argument that dismissing this case

would impose *any* hardship on him, let alone a hardship so immediate, direct, and significant that

it outweighs the institutional interests in declining adjudication.  *See* Kupperman Opp'n at 11.

And any "future injury" Kupperman might speculate about is "not a present hardship."  *La.*

*Envtl. Action Network v. Browner*, 87 F.3d 1379, 1385 (D.C. Cir. 1996) (quotation marks

omitted).  Kupperman would suffer no hardship at all if this case is dismissed, given that the

House Defendants have withdrawn their subpoena to him and will not reissue it.  This case

should end here.

## II.    This Court Lacks Jurisdiction over the House Defendants Because Their Sovereign Immunity Has Not Been Waived

Kupperman does not dispute that sovereign immunity extends to the House and to

individual Members acting in their official capacity.  House Defs.' Mot. at 8-9.  Nor does he

identify any applicable statute waiving that immunity here.  He seeks to overcome the sovereign

immunity bar primarily by drawing on cases involving interpleader under Federal Rule of Civil

Procedure 22.  But Kupperman elsewhere concedes that his suit "is *not* a strict interpleader

action," Kupperman Opp'n at 52 (emphasis added), making those cases irrelevant.[4]  Even if this

were a proper interpleader action, Kupperman errs in suggesting that sovereign immunity is

inapplicable in interpleader actions.  "The United States may not be required to interplead when

it has not waived its sovereign immunity."  *Ky. ex rel. United Pac. Ins. Co. v. Laurel Cty.*, 805

F.2d 628, 636 (6th Cir. 1987) (quoting 7 C. Wright, A. Miller, & M. Kane, Fed. Practice and

Procedure § 1721, at 654 (2d ed. 1986)); *see also United States v. Dry Dock Sav. Inst.*, 149 F.2d

917, 919 (2d Cir. 1945); *cf. Republic of Philippines v. Pimentel*, 553 U.S. 851, 861 (2008)

(noting that foreign sovereign could assert immunity in interpleader action).

     Kupperman's reliance on *Hudson Savings Bank v. Austin*, 479 F.3d 102 (1st Cir. 2007), a

case about Eleventh Amendment state sovereign immunity, is unavailing.  For one, unlike

*Hudson Savings*, this case is not an interpleader action.  In addition, *Hudson Savings* arose in an

entirely different procedural posture.  There, a private party brought an interpleader action in

state court, and the federal government itself removed the case to federal court, effectively to

assert claims against a state.  Thus, "it was the federal government, not a private party, that was

invoking federal jurisdiction," and Eleventh Amendment sovereign immunity "does not extend

to suits brought against a state by the federal government."  *Id.* at 105-06.  In other words, it was

the federal government's removal that defeated the state's sovereign immunity, not the mere fact

that it was an interpleader action.  Here, it is a private party—Kupperman—who invoked federal

jurisdiction, and neither sovereign has sought to press any claim against the other in federal

court.  Rather, both the House Defendants and the President have asserted sovereign immunity

and sought dismissal of the case.

---

[4] *See also* Def. Pres. Donald J. Trump's Mot. to Dismiss or, in the Alt., for Summ. J. at
42 (explaining why this case does not meet the requirements for interpleader) (Nov. 14, 2019),
ECF No. 40.

Kupperman's reliance on the *Larson-Dugan* exception to sovereign immunity is equally unavailing.  That exception applies only when a plaintiff alleges that an official action is "not within the officer's statutory powers or, if within those powers, only if the powers, or their exercise in the particular case, are constitutionally void." *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 701-02 (1949); *see also Dugan v. Rank*, 372 U.S. 609, 621-22 (1963).  Here, Kupperman does not allege that the House Defendants violated the Constitution by merely issuing the subpoena, before the President instructed Kupperman not to comply with it.[5]  Kupperman points to no case finding sovereign immunity inapplicable where the relevant government officials themselves are not alleged to have taken any unlawful action.

Even if the complaint could be interpreted as alleging that the subpoena itself might have been unconstitutional, Kupperman cites no case interpreting the *Larson-Dugan* exception to apply where the plaintiff alleges that government action *may* have been unlawful, but the plaintiff is not sure.  Kupperman deliberately "takes no position" on whether complying with the House subpoena would violate the Constitution.  Compl. ¶ 49.  He does not explain how this Court could find sovereign immunity inapplicable in such circumstances consistent with the well-settled principle that limitations on sovereign immunity are narrowly construed, *see, e.g.*, *Lane v. Pena*, 518 U.S. 187, 192 (1996) (collecting cases), or given the basic pleading requirements in federal court, *see, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (plausibility standard requires plaintiff to allege "more than a sheer possibility" of unlawful conduct).

---

[5] Kupperman initially alleged that HPSCI's subpoena was not valid under House Rules, but he subsequently withdrew that claim, *see* House Defs.' Mot. at 3-4, and has not attempted to reassert it.

**III.      This Court Lacks Jurisdiction Under the Speech or Debate Clause**

There is no real dispute that the House Defendants enjoy absolute immunity from this suit under the Speech or Debate Clause.  In an effort to avoid this fatal flaw in his case, Kupperman has now sought to join the Sergeant-at-Arms on the theory that, "even if the House Defendants are immune from suit, the Speech or Debate Clause does not here apply to the Sergeant-at-Arms."  *See* Pl.'s Mot. to Add the Hon. Paul D. Irving as Co-Defendant at 1-2 (Nov. 27, 2017), ECF No. 43.  The Court should reject Kupperman's futile bid to circumvent the House Defendants' Speech or Debate immunity.

**A.      The Speech or Debate Clause Bars Suit Against the House Defendants**

Kupperman does not dispute that he seeks judicial review of HPSCI's issuance of the now-withdrawn subpoena for his deposition testimony—an action taken as part of the House's impeachment inquiry.  Kupperman also does not dispute that the Constitution confers on the House the "sole Power of Impeachment," U.S. Const. Art. I, § 2, or that he seeks to challenge a legislative act directly relating to a "matter[] which the Constitution places within the jurisdiction of either House."  *Gravel v. United States*, 408 U.S. 606, 625 (1972); *see In re Request for Access to Grand Jury Materials Grand Jury No. 81-1, Miami*, 833 F.2d 1438, 1446 (11th Cir. 1987); *see also Rangel v. Boehner*, 785 F.3d 19, 23 (D.C. Cir. 2015).  Under the Speech or Debate Clause, these facts foreclose litigation of Kupperman's claims against the House Defendants, in order to "protect[] … the independence and integrity of the legislature," *United States v. Johnson*, 383 U.S. 169, 178 (1966), and to allow legislators to "discharge [their] public[] trust with firmness and success," *Powell v. McCormack*, 395 U.S. 486, 503 (1969) (quotation marks omitted).  *See also* House Defs.' Mot. at 9-10 (describing the purposes of the Speech or Debate Clause).

As the House Defendants previously explained, this Court's decision in *Porteous v. Baron*, 729 F. Supp. 2d 158 (D.D.C. 2010), is materially indistinguishable from this case and confirms that the absolute immunity afforded by the Speech or Debate Clause applies. *See* House Defs.' Mot. at 13-14. In *Porteous*, this Court had "little difficulty" concluding that Speech or Debate immunity precluded a federal judge's attempt to enjoin Congressional aides from using, at the judge's Senate impeachment trial, testimony given during the House impeachment proceedings. 729 F. Supp. 2d at 165. The Congressional defendants' conduct in that case—"a matter that the Constitution places within the *sole* jurisdiction of the Senate"—was "legislative in nature and thus entitled to absolute immunity under the Speech or Debate Clause." *Id.* The same is true here.

Kupperman claims that *United States v. American Telephone & Telegraph Co.* (*AT&T*), 567 F.2d 121 (D.C. Cir. 1977), recognized an exception to these bedrock principles of Speech or Debate Clause immunity for cases involving "competing constitutional claims of the Executive and Legislative Branches." Kupperman Opp'n at 51. According to Kupperman, *AT&T* held "that in cases in which both the Executive and the Legislative Branches assert constitutionally derived immunities, 'claims of either … branch that its determination of the propriety of its acts is conclusive' must be rejected." *Id.* at 49. Kupperman's reading of *AT&T* is wrong. The D.C. Circuit's holding turned on the specific procedural posture of that case—a posture that is altogether different from the present case.

*AT&T* arose from a subpoena issued by a House subcommittee for documents in AT&T's custody. The Department of Justice sued to block AT&T's compliance with the subpoena, and Congressman John Moss *intervened* on behalf of the subcommittee as the real party in interest. 567 F.2d at 122-23. In other words, the Congressional party in *AT&T* decided to voluntarily

participate in the litigation to assert the House's rights and to enforce the subcommittee's subpoena.

Congressman Moss's affirmative intervention was central to the D.C. Circuit's conclusion that Speech or Debate immunity did not bar judicial review of the subpoena in that instance. The D.C. Circuit explained that inquiry into the propriety of a Congressional subpoena may be appropriate in certain cases where Congress seeks to enforce its subpoena and some alleged impropriety "was raised *as a defense*." *Id.* at 129 (emphasis added). The Court "emphasize[d] that no member of the Subcommittee in the present dispute ha[d] been made a defendant in a judicial proceeding." *Id.* at 130. This was not a "merely procedural" distinction, but rather "shed[] light on the nature and purpose of the protection afforded by the Speech or Debate Clause" to insulate legislators from "executive and judicial harassment." *Id.* at 129; *see also Rangel*, 785 F.3d at 23 ("The prospect of civil liability lessens the ability of the Members of the Congress to represent the interests of their constituents, and litigation itself creates a distraction and forces Members to divert their time, energy, and attention from their legislative tasks." (quotation marks and citations omitted)).

Here, unlike in *AT&T*, the House Defendants are decidedly *not* voluntary participants in the litigation. Kupperman has haled the House Defendants into court against their will, and the House Defendants have sought dismissal from the very onset of the case. Kupperman asserts that the Legislative Branch should be interested in having "its own voice in th[is] litigation … to present the arguments in favor of the validity of its subpoena." Kupperman Opp'n at 50. But it is the House Defendants' prerogative to decide whether and when to assert their immunities in litigation. *See Ferrer*, 856 F.3d at 1086-87. Forcing the House Defendants to remain in this

case—to defend a subpoena that they have withdrawn and will not reissue—would needlessly impair their ability to carry out their legislative functions.

### B.   Kupperman Cannot Circumvent the Speech or Debate Clause by Adding the Sergeant-at-Arms as a Defendant

Apparently recognizing the House Defendants' absolute immunity from this suit, Kupperman now seeks to add the House Sergeant-at-Arms as a defendant, on the theory that "the Speech or Debate Clause does not bar judicial review of a Congressional employee's non-legislative actions even if taken in furtherance of express Congressional orders."  Kupperman Opp'n at 44.  The Court should not permit this undisguised attempt to evade Speech or Debate immunity.

Kupperman relies heavily on a line of cases beginning with *Kilbourn v. Thompson*, 103 U.S. 168 (1880).  In *Kilbourn*, the Supreme Court held that House Members who had adopted a resolution authorizing the petitioner's arrest for contempt were immune from suit under the Speech or Debate Clause, but that the Clause did not prevent the suit from proceeding against the Sergeant-at-Arms, who had carried out the arrest.  *Id.* at 200-04.  Kupperman notes that several cases have relied on *Kilbourn* to permit—in certain circumstances—suit against other individuals acting with authorization from Congress, even though other Congressional defendants were immune from suit.  Kupperman Opp'n at 45-47 (citing *Powell*, 395 U.S. at 504-06; *Dombrowski v. Eastland*, 387 U.S. 82, 83 (1967) (per curiam); and *Doe v. McMillan*, 412 U.S. 306, 312, 314-16 (1973)).  But as the Supreme Court has subsequently made clear, *Kilbourn* and its progeny do not stand for the proposition that Congressional employees are categorically precluded from asserting Speech or Debate Clause immunity.  Instead, in these cases, "immunity was unavailable because [those individuals] engaged in illegal conduct that was not entitled to Speech or Debate protection."  *Gravel*, 408 U.S. at 620-21.

15

In *Gravel*, the Court specifically distinguished *Kilbourn*, *Dombrowski*, and *Powell* on this basis, and recognized that Speech or Debate immunity applied to Senate aides.  The Court noted that in each of those earlier cases, the claims arose from allegations that the Congressional employee had acted unlawfully: in *Kilbourn*, by carrying out an arrest without sufficient legal authority; in *Dombrowski*, by conspiring to carry out an illegal seizure of records for committee proceedings; and in *Powell*, by seeking to implement invalid resolutions to unlawfully exclude a representative-elect.  *Gravel*, 408 U.S. at 618-20; *see id.* at 618 ("Those cases do not hold that persons other than Members of Congress are beyond the protection of the Clause when they perform or aid in the performance of legislative acts.").  The same was true of *Doe v. McMillan*, where the plaintiffs alleged that individuals violated their rights to privacy by improperly publicizing a Congressional report that contained sensitive information.  412 U.S. at 309-10. Each of these cases was grounded on allegations that the defendant had *actually* engaged in unlawful conduct.

In contrast, Kupperman's complaint does not contain a single allegation mentioning the Sergeant-at-Arms, let alone identifying any supposedly unlawful action he has taken. Kupperman asserts in his opposition to the House Defendants' motion to dismiss that he "faces enforcement from the Sergeant at Arms under the House's inherent contempt power if he does not comply," Kupperman Opp'n at 48, but statements in a brief are no substitute for allegations in a complaint, *see, e.g.*, *Carter v. Carson*, 241 F. Supp. 3d 191, 197 (D.D.C. 2017) (Leon, J.). In any event, Kupperman himself acknowledges that the House Defendants have "not yet taken such action" that the Sergeant-at-Arms might enforce.  Kupperman Opp'n at 48.  And while Kupperman had argued that the House Defendants had "threatened" such action, *id.*, that claim is

no longer tenable in light of the House Defendants' commitment not to initiate inherent contempt proceedings against him.

Permitting this suit to proceed against the Sergeant-at-Arms on the basis of speculation that he may in the future carry out hypothetical acts at the direction of House Members would eviscerate the Speech or Debate Clause.  Speech or Debate immunity would become meaningless if a plaintiff could obtain review of the very legislative acts that the Clause insulates from suit, merely by positing some hypothetical action that a Congressional employee might be directed to take to carry out the protected legislative act.  No court has ever permitted a plaintiff to circumvent Speech or Debate immunity in this manner, and this Court should not be the first, particularly when the House Defendants have made clear that there will not be another subpoena to Kupperman, or an inherent contempt proceeding against him, for the Sergeant-at-Arms to hypothetically enforce.

## IV. Any Claim Against the Sergeant-at-Arms Must Be Dismissed

For the reasons stated in the House Defendants' opposition to Kupperman's motion seeking to add the Sergeant-at-Arms as a defendant under Federal Rule of Civil Procedure 21, the Court should deny that motion.  However, if the Court does add the Sergeant-at-Arms as a party, then any claims against him must be dismissed under both Rule 12(b)(1) and Rule 12(b)(6).

**1.** First, under Rule 12(b)(1), Kupperman lacks standing to sue the Sergeant-at-Arms. As Kupperman himself emphasizes, at the pleading stage, courts assess a plaintiff's standing on the basis of the facts as alleged in the complaint, *see* Kupperman Opp'n at 12-13, and yet Kupperman's complaint does not mention the Sergeant-at-Arms, let alone identify him or describe his role in any alleged violations.  Kupperman's complaint does not include *any* "factual allegations of injury resulting from [the Sergeant-at-Arms'] conduct," *Lujan v. Defenders of*

*Wildlife*, 504 U.S. 555, 561 (1992), much less allegations of an injury attributable to the Sergeant-at-Arms that is "actual or imminent, not conjectural or hypothetical," *id.* at 560 (quotation marks omitted).

Likewise, Kupperman's complaint alleges no "causal connection" between any injury he asserts and "conduct" by the Sergeant-at-Arms, *id.*, making it entirely unlikely "that the injury will be redressed by a favorable decision," *id.* at 561 (quotation marks omitted).  With no allegations of injury-in-fact, causation, or redressability as to the Sergeant-at-Arms, Kupperman's attempted claim against him must be dismissed.  *See id.* at 560-61.

Kupperman cannot rely on statements in his briefs to avoid dismissal.  Where a plaintiff has "'failed to include … allegations in her complaint,'" courts "cannot consider … new information" in the plaintiff's briefs because a "'plaintiff may not amend her complaint by the briefs in opposition to a motion to dismiss.'"  *Carter*, 241 F. Supp. 3d at 197 (quoting *Middlebrooks v. Godwin Corp.*, 722 F. Supp. 2d 82, 87 n.4 (D.D.C. 2010), *aff'd*, 424 F. App'x 10 (D.C. Cir. 2011)); *see Rutledge v. Town of Chatham*, No. 4:10-cv-35, 2010 WL 3835662, at *3 (W.D. Va. Sept. 30, 2010) (plaintiff could not "add a [d]efendant without amending his [c]omplaint" where the existing complaint did not "allege any claims or facts against" the new defendant).  If Kupperman wants to assert a claim against the Sergeant-at-Arms, he must amend his complaint to allege conduct by the Sergeant-at-Arms that both demonstrates standing and states a claim upon which relief could be granted.  To date, Kupperman has not attempted to do so—perhaps recognizing that amendment would be futile, given the obvious lack of a real dispute here.  If Kupperman nonetheless does amend his complaint, the House Defendants will respond at the appropriate time.

**2.**   Even if the Court could treat Kupperman's arguments in his briefs as allegations incorporated into his complaint, Kupperman's attempted claim against the Sergeant-at-Arms must still be dismissed under Rule 12(b)(1) for lack of standing and ripeness.  For Kupperman to have a claim against the Sergeant-at-Arms, the following series of events would need to occur: (1) HPSCI would have to reissue a subpoena to Kupperman; (2) Kupperman would have to defy that hypothetical subpoena; (3) HPSCI would have to find Kupperman in contempt and refer the matter to the full House; (4) the House would have to initiate inherent contempt proceedings (for the first time in nearly a century) or impose a monetary fine in lieu of arrest and incarceration (for the first time in history); and (5) the House would have to adopt a resolution requiring the Sergeant-at-Arms to execute the House's contempt order.[6]

None of these things is going to happen.  As already described, the House Defendants have committed to Kupperman and this Court both that they will not reissue the subpoena to Kupperman and that they will not initiate inherent contempt proceedings against Kupperman for failure to comply with the withdrawn subpoena.  Simply put, the Sergeant-at-Arms will not be called upon to take any action against Kupperman.  Kupperman lacks standing to sue the Sergeant-at-Arms because Kupperman's asserted future injury rests on a "speculative chain of possibilities." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013).  "Speculation is ordinarily fatal to standing," *Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 379 (D.C. Cir. 2017), and the possibility of Kupperman suffering future injury is beyond speculative here.

---

[6] The Sergeant-at-Arms plays no role in statutory contempt proceedings.  *See* 2 U.S.C. §§ 192, 194.

Likewise, any claim Kupperman might attempt to bring against the Sergeant-at-Arms "is

not ripe for adjudication" because "it rests upon contingent future events that may not occur as

anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998)

(quotation marks omitted); *see Devia v. Nuclear Regulatory Comm'n*, 492 F.3d 421, 425 (D.C.

Cir. 2007) (regardless of whether a plaintiff's claim is "predominantly legal in character," if the

claim "depends on future events that may never come to pass, or that may not occur in the form

forecasted, then the claim is unripe" (quotation marks omitted)).  At a minimum, the possibility

that any of the five events listed above will occur is extraordinarily remote, and the possibility

that all of them will transpire is nonexistent.  If ever there were a case where it is "too

speculative whether the problem [the plaintiff] presents will ever need solving," *Texas*, 523 U.S.

at 302, it is this one.

**3.**  Finally, even if Kupperman could add the Sergeant-at-Arms as a defendant without

amending his complaint, and even there were somehow jurisdiction over Kupperman's attempted

claim against the Sergeant-at-Arms, it would still have to be dismissed under Rule 12(b)(6).  Any

allegation that the Sergeant-at-Arms will take action against Kupperman is not "plausible."

*Iqbal*, 556 U.S. at 678.  The subpoena has been withdrawn, the House Defendants will not

reissue it, and the House Defendants will take no action against Kupperman for defying it while

it was in force.

**V.    If the Court Were to Reach the Merits, It Should Conclude That Kupperman Is Not
        Absolutely Immune from Congressional Process**

Especially in a moot case, the Department of Justice (DOJ) has provided no basis for this

Court to recognize an immunity that has been rejected by every court to have considered it.  *See*

*Comm. on the Judiciary v. McGahn*, — F. Supp. 3d —, 2019 WL 6312011, at *34-45 (Nov. 25,

2019); *Comm. on the Judiciary v. Miers*, 558 F. Supp. 2d 53, 99-108 (D.D.C. 2008).  In

concluding that that the Executive Branch's absolute immunity theory has no basis in law, Judge

Brown Jackson in *McGahn* and Judge Bates in *Miers* faithfully applied precedent rejecting

similar claims.  The D.C. Circuit has held that the President is not absolutely immune from

responding to a Congressional subpoena, *see Senate Select Comm. on Presidential Campaign

Activities v. Nixon*, 498 F.2d 725, 729-31 (D.C. Cir. 1974) (en banc), and the Supreme Court and

the D.C. Circuit have rejected analogous absolute immunity claims.[7]  No court has held that

Presidential aides are absolutely immune from Congressional process, and the Supreme Court

has refused to extend the President's immunity from civil damages suits to Presidential aides.

*See Harlow v. Fitzgerald* (*Harlow*), 457 U.S. 800, 809-10 (1982).  It is not the House Defendants

that are asking this Court to break new ground; it is DOJ.[8]

DOJ is left to argue that *McGahn* and *Miers* were wrongly decided.  In attempting to

persuade Judge Brown Jackson, in *McGahn*, to "rule differently" from Judge Bates, in *Miers*,

DOJ "presented essentially the same" arguments that Judge Bates rejected.  *McGahn*, 2019 WL

6312011, at *37.  Here, DOJ has done the same once again.  By repeating its unavailing

arguments, DOJ has provided this Court "no reasonable basis to distinguish" this case from

*McGahn* or *Miers*, "nor any principled reason to interpret the law in a different fashion."  *Id.*

First, DOJ appeals to *Gravel*, 408 U.S. 606, and *Harlow*, 457 U.S. 800.  *See* DOJ Opp'n

at 6-13.  As to *Gravel*, DOJ continues to ignore that "legislative aides derive their absolute

immunity from the Constitution's provision of absolute testimonial immunity to

---

[7] *See, e.g.*, *United States v. Nixon* (*Nixon*), 418 U.S. 683 (1974); *Nixon v. Sirica* (*Sirica*), 487 F.2d 700 (D.C. Cir. 1973) (en banc); *United States v. Burr*, 25 F. Cas. 187 (C.C.D. Va. 1807) (Marshall, C.J.); *Dellums v. Powell*, 561 F.2d 242 (D.C. Cir. 1977); *see also Clinton v. Jones*, 520 U.S. 681 (1997); *Nixon v. Adm'r of Gen. Servs.* (*Nixon v. GSA*), 433 U.S. 425 (1977).

[8] *Cf.* Def. Pres. Donald J. Trump's Mem. in Response to the House Defs.' Mot. to Dismiss (DOJ Opp'n) at 1-5 (Nov. 27, 2019), ECF No. 48.

congresspersons." *McGahn*, 2019 WL 6312011, at *40; *see* U.S. Const., Art. I, § 6, cl. 1.  By

contrast, as the D.C. Circuit has observed, "[t]he Constitution makes no mention of special

presidential immunities," and "the Executive Branch generally is afforded none."  *Sirica*, 487

F.2d at 711 ("[t]his silence cannot be ascribed to oversight," given that "James Madison raised

the question of Executive privileges during the Constitutional Convention").  And with regard to

*Harlow*, "the Supreme Court [there] specifically addressed the argument that [absolute]

immunity applies to senior-level executive aides, then concluded that, in contrast to legislative

aides, senior-level executive aides are only entitled to *qualified* immunity." *McGahn*, 2019 WL

6312011, at *40 (citing *Harlow*, 457 U.S. at 809).  Whether a particular aide has national

security duties does not change the analysis.  *See id.* at *41 n.32, 42, 45 (rejecting DOJ's reliance

on former White House Counsel's national security duties); *see also* House Defs.' Mot. at 21-24.

DOJ offers no meaningful response.

Second, DOJ argues that its absolute immunity theory is required to protect Presidential

independence.  *See* DOJ Opp'n at 13-14; *see also id.* at 18-19 (relying primarily on separation of

powers principles in extending absolute immunity to former advisors).  But the House

Defendants have shown that Presidents and senior Presidential aides have testified before

Congress throughout history, without jeopardizing the Presidency.  *See* House Defs.' Mot. at 24;

House Defs.' Opp'n at 15-18.  DOJ therefore claims that what matters is that none of them

testified pursuant to a judicially enforced subpoena, but makes no attempt to explain the

significance of that distinction.  *See* DOJ Opp'n at 13.

The key fact remains that on numerous occasions, advisors and officials serving at the

President's side have testified before Congress, and no reasonable argument has ever been made

that this common practice has destroyed the President's ability to seek and receive advice from

his close aides.  Given this history, DOJ cannot convincingly argue that absolute immunity is essential for the proper functioning of the Presidency.  The actual practice of the Executive Branch proves that it is not.  *See N.Y. Trust Co. v. Eisner*, 256 U.S. 345, 349 (1921) (Holmes, J.) ("[A] page of history is worth a volume of logic.").

Third, in claiming that qualified immunity is inadequate, DOJ attempts to distinguish the unbroken line of Supreme Court and D.C. Circuit decisions rejecting absolute immunity claims.  *See* DOJ Opp'n at 14-16.  *McGahn* and *Miers* explain why DOJ's attempt fails, and why *Nixon*, *Harlow*, *Nixon v. GSA*, *Jones*, *Senate Select Committee*, and *Sirica* compel the conclusion that absolute immunity for Presidential advisors from Congressional process "simply does not exist." *McGahn*, 2019 WL 6312011, at *45; *see id.* at *35-36; *Miers*, 558 F. Supp. 2d at 102-05; *see also id.* at 106 n.38 (explaining that "[t]he Executive …. misreads" *Cheney v. United States District Court for the District of Columbia*, 542 U.S. 367 (2004), upon which DOJ relies here, *see* DOJ Opp'n at 16).

Fourth, DOJ recycles the policy arguments against the sufficiency of qualified immunity that *McGahn* and *Miers* correctly rejected.  *See* DOJ Opp'n at 15-18.  Appealing once again to the Executive Branch's needs for autonomy and confidentiality, "potential congressional harassment, coercion, and undue influence on Executive decision-making," and "perceived subordination of the President to the Legislature," *id.* at 15, DOJ once again disregards Judge Bates's conclusion—as true today as it was in 2008—that, "in an environment where there is *no* judicial support whatsoever for the Executive's claim of absolute immunity, the historical record also does not reflect the wholesale compulsion by Congress of testimony from senior presidential advisors that the Executive fears."  *Miers*, 558 F. Supp. 2d at 102; *see McGahn*, 2019 WL 6312011, at *37-39, 42-44 (rejecting DOJ's policy arguments).

Fifth, DOJ claims that its absolute immunity theory does not interfere with Congress's constitutional powers and responsibilities. *See* DOJ Opp'n at 20-24. DOJ presses this argument even though the House Defendants sought Kupperman's testimony as part of their impeachment inquiry, wielding "investigative authority … with respect to presidential conduct" that "has an express constitutional source." *Senate Select Comm.*, 498 F.2d at 732 (citing U.S. Const., Art. I, § 2, cl. 5). Neither in its briefs in this case, nor in any passages of the "ten-plus … statements by OLC" that DOJ quotes here and elsewhere, *McGahn*, 2019 WL 6312011, at *38, does DOJ present any meaningful analysis of how the Executive Branch's absolute immunity theory is at all compatible with Congress's responsibilities under the Impeachment Clauses. It is not. *See* House Defs.' Mot. at 25-27; House Defs.' Opp'n at 18-21.

DOJ's arguments "'rest upon a discredited notion of executive power and privilege.'" *McGahn*, 2019 WL 6312011, at *3 (alteration omitted) (quoting *Miers*, 558 F. Supp. 2d at 103). "[W]hen DOJ insists that Presidents can lawfully prevent their senior-level aides from responding to compelled congressional process …, DOJ promotes a conception of separation-of-powers principles that gets these constitutional commands exactly backwards." *Id.*; *see id.* at *33-34; *Miers*, 558 F. Supp. 2d at 102-03. Permitting the President to prohibit his former advisors from informing Congress about his misconduct in an impeachment inquiry places the President above the law at the expense of Congress's constitutional authority.

Finally, apparently acknowledging the limitations of its absolute immunity claim, DOJ argues in the alternative that, if this Court were to weigh Congress's need for information against the President's need for confidentiality, the President would still prevail. *See* DOJ Opp'n at 20-22 & n.9. In doing so, DOJ erroneously claims that Congress has other measures at its disposal to secure the information it needs, invoking the dissent in *Sirica* for the proposition that

"Congressional control over appropriations and legislation" suffices. *Id.* at 22 (quoting 487 F.2d at 778 (Wilkey, J., dissenting)).  DOJ is wrong for the reasons that Judge Brown Jackson and Judge Bates have explained.  *See McGahn*, 2019 WL 6312011, at \*32; *Miers*, 558 F. Supp. 2d at 92-93.

DOJ also argues that, because of the fact that the House Defendants have withdrawn the subpoena to Kupperman and "have pledged to take no additional steps to secure his testimony," the House Defendants' needs are diminished.  DOJ Opp'n at 20.  DOJ's facts are correct but DOJ draws the wrong inference from them.  What those facts underscore is that this case is moot and that this Court must dismiss without reaching the merits, as all Defendants agree.  *See id.* at 3.  "For a declaratory judgment to issue, there must be a dispute which 'calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts.'"  *Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977) (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 242 (1937)).  Although House Defendants dispute DOJ's absolute immunity theory, any judgment addressing it here would exceed the bounds of Article III.

## CONCLUSION

The House Defendants respectfully request that this Court dismiss this action.

Respectfully submitted,

/s/ Douglas N. Letter
Douglas N. Letter (DC Bar No. 253492)
  *General Counsel*
Todd B. Tatelman (VA Bar No. 66008)
  *Deputy General Counsel*
Megan Barbero (MA Bar No. 668854)
  *Associate General Counsel*
Josephine Morse (DC Bar No. 1531317)
  *Associate General Counsel*
Adam A. Grogg (DC Bar No. 1552438)
  *Assistant General Counsel*
William E. Havemann (VA Bar No. 86961)
  *Assistant General Counsel*

OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Office Building
Washington, DC  20515
Telephone: (202) 225-9700
douglas.letter@mail.house.gov

Daniel F. Jacobson (DC Bar No. 1016621)
Elisabeth S. Theodore (DC Bar No. 1021029)
R. Stanton Jones (DC Bar No. 987088)
Sally L. Pei (DC Bar No. 1030194)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue NW
Washington, DC  20001-3743
(202) 954-5000
daniel.jacobson@arnoldporter.com

*Counsel for the House Defendants*

December 4, 2019