**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---------------------------------------------------------------

**CHARLES M. KUPPERMAN,**              )
                                       )
      **Plaintiff,**                  )
                                       )
      **v.**                          )    **Civil Case No. 19-3224 (RJL)**
                                       )
**UNITED STATES HOUSE OF**             )
**REPRESENTATIVES,** *et al.*,         )
                                       )
      **Defendants.**                 )

---------------------------------------------------------------

<u>**MEMORANDUM OPINION**</u>

December **30th**, 2019 [Dkt. ##40, 41, 43]

Dr. Charles Kupperman ("Kupperman" or "Dr. Kupperman") brings this suit for a declaratory judgment against President Donald J. Trump ("the President") and the United States House of Representatives, Speaker of the House Nancy Pelosi, Chairman of the House Permanent Select Committee on Intelligence ("HPSCI") Adam Schiff, Chairman of the House Committee on Foreign Affairs Eliot Engel, and Chairwoman of the House Committee on Oversight and Reform Carolyn B. Maloney (collectively, "the House"). *See* Compl. [Dkt. #1]. Kupperman, who formerly served as the Deputy National Security Advisor and briefly as Acting National Security Advisor was subpoenaed by HPSCI on October 25, 2019 as part of its impeachment inquiry into the President. *See id.* ¶¶ 1, 14. The President directed Dr. Kupperman not to comply with the subpoena because, as a close presidential advisor, he was absolutely immune from compelled Congressional testimony. *See id.* ¶¶ 1, 18. On the same day Kupperman received the subpoena, he filed this suit

seeking the Court's guidance as to which of these two opposing commands he must follow. *See id.* ¶¶ 1–2, 14.

This case was assigned to this Court on October 28, 2019, and I set a scheduling hearing for three days later. *See* Minute Order of Oct. 28, 2019. At that hearing, both the President and the House stated that they would seek dismissal. *See* Tr. of Oct. 31, 2019 Hr'g [Dkt. #15] at 15:18–20 (the House); *id.* at 20:11–12 (the President).[1] Emphasizing that the case was a matter of great consequence to the country, I set an aggressive briefing schedule combining both justiciability and merits arguments, with a hearing to follow shortly thereafter on December 10, 2019. *See id.* at 24:22–25–10, 25:23–25; *see also* Minute Order of Nov. 4, 2019 [Dkt. #19] (clarifying schedule).

During the five weeks leading up to the oral arguments, several other events transpired. First, on November 5, 2019, HPSCI withdrew its subpoena to Kupperman, and the House noticed the case as moot and moved to vacate the expedited briefing schedule on November 6, 2019. *See* House Defs.' Notice of Mootness & Mot. to Vacate ("House Notice of Mootness") [Dkt. #22]. I held a brief telephonic hearing that same day and directed the parties to incorporate any mootness arguments into the already-scheduled briefing. *See* Tr. of Nov. 6, 2019 Hr'g [Dkt. #23] at 6:14–24. Second, late in the evening on Friday, November 8, 2019, Acting White House Chief of Staff John Michael Mulvaney

---

[1] Earlier that afternoon, counsel for the parties presented oral arguments before one of my colleagues on the House Judiciary Committee's suit to compel the testimony of former White House Counsel, Donald F. McGahn. *See Comm. on the Judiciary v. McGahn*, No. 19-cv-2379 (D.D.C. 2019). The Judiciary Committee had filed its motion for a preliminary injunction or, in the alternative, for expedited summary judgment on August 26, 2019. *See id.* [Dkt. #22].

("Mulvaney"), who had also been subpoenaed by HPSCI, moved to intervene. *See* Mot. to Intervene [Dkt. #26] at 3. I held another telephonic conference three days later on Monday, November 11, 2019, a federal holiday, to hear oral argument on the Mulvaney motion. *See* Minute Order of Nov. 9, 2019. At the end of that call, I indicated I would rule later that day but was not inclined to grant the motion. *See* Tr. of Nov. 11, 2019 Hr'g [Dkt. #38] at 23:23–25. Not surprisingly, Mulvaney withdrew his motion before I ruled. *See* Notice of Withdrawal [Dkt. #37]. Third, on November 25, 2019, my colleague released her opinion in *Committee on the Judiciary v. McGahn*, ordering the former White House Counsel Donald F. McGahn to testify pursuant to a House Judiciary Committee subpoena and rejecting the Executive branch's claim of immunity from compelled Congressional testimony. No. 19-cv-2379, Mem. Op. [Dkt. #46] at 6–7. Fourth, on December 3, 2019, HPSCI released a draft copy of its report concerning the impeachment inquiry. *See* The Trump-Ukraine Impeachment Inquiry Report ("Impeachment Rep."), H.R. Rep. No. 116-335 (2019).[2] Fifth, on December 10, 2019, hours before oral argument on the pending motions to dismiss, the House Judiciary Committee released draft articles of impeachment against the President. *See* H.R. Res. 755, 116th Cong. (2019).

All told, the parties submitted over 350 pages of briefing before the December 10 hearing. Based on this briefing, oral argument, and the entire record herein, I conclude for

---

[2] The final version of the report, cited above, was identical to the draft released on December 3 in all respects relevant to this case. *See* https://perma.cc/7APF-Y4EQ (draft report).

the reasons discussed below that this case is moot.  Therefore, I **GRANT** the defendants'
motions and **DISMISS** the case.[3]

## BACKGROUND

This case arises from the impeachment investigation into certain conduct by the
President.  In particular, the President spoke by phone with Ukrainian President Volodymyr
Zelensky on July 25, 2019 regarding, among other things, United States military support
to Ukraine and former Vice President Joseph R. Biden.  *See* Impeachment Rep. at 12, 14.
The following month, a whistleblower filed a complaint expressing concerns about the
content of this call and whether it showed the President attempting to influence a foreign
leader to investigate his political rival, former Vice President Biden, who was—and
currently is—running for President in the 2020 election.  *See id.* at 26; Whistleblower
Compl. at 1.[4]   Ultimately, on September 9, 2019, HPSCI, along with the House Foreign
Affairs and Oversight committees, launched an investigation into the content and context
of the call.  *See* Impeachment Rep. at 25.   On October 31, 2019, the House of
Representatives adopted a resolution authorizing these same committees "to continue their
ongoing investigations as part of the existing House of Representatives inquiry into
whether sufficient grounds exist for the House of Representatives to impeach President

---

[3] Plaintiff sought to cure a potential Speech or Debate Clause issue raised by the House by
adding the House Sergeant at Arms as a defendant.  *See* Pl.'s Mot. to Add the Honorable
Paul D. Irving as Co-Defendant [Dkt. #43].  Because I conclude that this case is moot, I
need not decide this motion and therefore deny it too as moot.

[4] A redacted version of that complaint is available at https://purl.fdlp.gov/GPO/
gpo126247.

Trump." H.R. Res. 660, 116th Cong. (2019). As part of its inquiry, HPSCI invited the testimony of a number of witnesses and subpoenaed others who declined to appear voluntarily. *See generally* Impeachment Rep. at 231–56 (cataloging witnesses).

One of the witnesses whose testimony HPSCI sought was Dr. Kupperman. Kupperman served as the Deputy National Security Advisor from January 9, 2019 to September 20, 2019, and as Acting National Security Advisor for eleven days at the end of his tenure in the Executive branch. Compl. ¶ 13; Def. President Donald J. Trump's Statement of Material Facts ("President's SOMF") [Dkt. #40-1] ¶¶ 1–2; House Defs.' Resp. to President's SOMF ("House SOMF") [Dkt. #47-1] ¶¶ 1–2. In his capacity as Deputy National Security Advisor, Kupperman also held the title Assistant to the President and served as the sole deputy to then-National Security Advisor John Bolton. President's SOMF ¶¶ 5, 6; House SOMF ¶¶ 5, 6. Kupperman advised the President regarding national security policy toward Ukraine and coordinated national security policy among the relevant Executive Branch agencies, including the Department of State, the Department of Defense, and the Office of Management and Budget. Compl. ¶ 13. According to HPSCI's Impeachment Report, Kupperman listened in on the President's July 25, 2019 telephone call with President Zelensky and was otherwise involved in issues relevant to the impeachment inquiry. Impeachment Rep. at 65, 72, 100.

On October 16, 2019 HPSCI sent a letter to Kupperman seeking his appearance for a deposition on October 23, 2019. *See id.* at 237. He did not appear, and the Committee issued a subpoena on October 25, 2019 directing him to sit for a deposition three days later. Compl. ¶ 14; President's SOMF ¶ 17; House SOMF ¶ 17. The same day that HPSCI issued

5

its subpoena, the White House Counsel directed Kupperman not to appear for the scheduled deposition, asserting that Kupperman was absolutely immune from compelled Congressional testimony. Compl. ¶¶ 18, 19; President's SOMF ¶ 18; House SOMF ¶ 18. Kupperman did not appear at the October 28 deposition, President's SOMF ¶ 19; House SOMF ¶ 19, and instead filed this suit, *see generally* Compl.

Both the House and the President moved to dismiss Kupperman's complaint on November 14, 2019. They argued the case was non-justiciable for a number of reasons, including that it was moot and that Kupperman lacked standing. The parties completed briefing on those motions on December 4, 2019, and I heard argument six days later on December 10, 2019.

## ANALYSIS

It is a fundamental principle of our Constitutional system that the federal judicial power is not without limits. *See Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982). Rather, Article III of the Constitution grants federal courts the authority to adjudicate only "Cases" and "Controversies" between adverse litigants. *Raines v. Byrd*, 521 U.S. 811, 818 (1997); *Valley Forge*, 454 U.S. at 471. This requirement is not empty formalism: It "ensures that the Federal Judiciary confines itself to its constitutionally limited role of adjudicating actual and concrete disputes," *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013), rather than issuing advisory opinions on abstract legal issues, *Los Angeles Cty. v. Davis*, 440 U.S. 625, 633 (1979). Indeed, "[i]n our system of government, courts have no business deciding legal disputes or expounding on law in the absence of . . . a case or

6

controversy." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013) (internal quotation marks omitted).

"An actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (internal quotation marks omitted).  "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for Article III purposes—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Already, LLC*, 568 U.S. at 91 (some internal quotation marks omitted).  In other words, "[i]f an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation, the action can no longer proceed and must be dismissed as moot." *Genesis Healthcare*, 569 U.S. at 71–72 (internal quotation marks omitted).

HPSCI has withdrawn Kupperman's subpoena. *See* House Notice of Mootness, Ex. A ("The House Permanent Select Committee on Intelligence . . . hereby withdraws its subpoena . . . .").  As a result, Kupperman no longer faces the "irreconcilable commands" of two coordinate branches of government, *see* Compl. at 2, and he accordingly lacks any personal stake in the outcome of this dispute.  Thus, it would appear that this case is moot and should be dismissed.

Dr. Kupperman, not surprisingly, disagrees.  He argues the case is not moot for two reasons.  First, the subpoena could be reissued.  Second, he could be punished for failing to comply with the subpoena while it was in effect, namely if the House were to exercise its inherent contempt power against him.  For the reasons set forth below, both of these arguments are lacking in merit.

## I.    The Subpoena Will Not Reissue.

There is no reasonable possibility that the House will reissue the subpoena. The House has repeatedly and unequivocally stated in pleadings to this Court that it will not do so. *See* Mem. in Supp. of House Defs.' Mot. to Dismiss ("House Mot.") [Dkt. #41] at 1 ("The subpoena that gave rise to this lawsuit has been withdrawn, and it will not be reissued."); House Defs.' Reply in Supp. of Mot. to Dismiss ("House Reply") [Dkt. #54] at 1 ("[T]he House Defendants have unequivocally committed to this Court that they will neither reissue the subpoena to Kupperman nor take any action against him for having failed to comply with the subpoena while it was in force."); *see also* House Defs.' Opp'n to Mot. to Intervene [Dkt. #29] at 1 ("[T]he House Defendants have determined that they will not reissue a subpoena to Kupperman."). Indeed, in its final filing on its pending motion to dismiss, the House stated its position in stark terms: "To be perfectly clear yet again, the House Defendants will not reissue the subpoena to Kupperman, period. There are *no contingencies or caveats* to this representation. The subpoena will not reissue today, tomorrow, *or ever*." House Reply at 3 (emphasis added). The Court is hard-pressed to imagine a more unequivocal statement on this issue.

If those representations were not enough, counsel for the House, Todd Tatelman, reiterated at the December 10, 2019 hearing that Kupperman's subpoena would not be reissued. *See* Tr. of Dec. 10, 2019 Hr'g ("Dec. 10 Tr.") [Dkt. #59] at 6:20–22 ("I'm authorized here today to represent that the House . . . is not going to reissue a subpoena to Dr. Kupperman."). And, in response to follow-up questions from the Court regarding whether the House Judiciary Committee—which is not a defendant in this case—might

independently issue its own subpoena to Kupperman, counsel for the House consulted with the General Counsel to the House, Douglas Letter, and further represented that "*no other committee* . . . with an interest in Dr. Kupperman related to the impeachment inquiry would seek a subpoena or any attempt to enforce a subpoena." *Id.* at 8:2–14 (emphasis added).

Despite these representations, Kupperman insists that the case is not moot under the voluntary cessation doctrine, a "long-recognized exception[] to mootness." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 190 (2000). Under that exception, "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice" because otherwise "the courts would be compelled to leave the defendant free to return to his old ways." *Id.* at 189 (internal quotation marks and alterations omitted). Rather, the party asserting mootness bears the "heavy burden of persuading the court" that it is "*absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (internal quotation marks and alterations omitted) (emphasis added). Kupperman claims the House has failed to carry that heavy burden. Unfortunately for Dr. Kupperman, that is not so.

Kupperman insists that the voluntary cessation exception to mootness applies for two reasons. First, he contends that the representations were not definitive[5] and have been contradicted by other House statements. *See* Pl.'s Opp'n to Mots. to Dismiss ("Pl.'s

_____

[5] For example, Kupperman notes House counsel's initial statement that the House "ha[d] no *current* intention to reissue the subpoena," House Notice of Mootness ¶ 2 (emphasis added), which he argues is nowhere near strong enough to carry the House's burden, *see* Pl.'s Opp'n to Mots. to Dismiss ("Pl.'s Opp'n") [Dkt. #45] at 5.

Opp'n") [Dkt. #45] at 4–8.  But whatever can be said about the clarity or uniformity of the House's earlier statements, the representations made in its latest filings and by its counsel at oral argument were unambiguous.  Indeed, counsel for the House consulted with the House's General Counsel at the December 10th hearing, and he made clear that the House's representations were authorized by the Speaker of the House personally and encompassed the entire impeachment inquiry.  *See* Dec. 10 Tr. at 6:18–23, 7:5–8:14, 13:6–8.  Simply put, I cannot on this record believe there is any reasonable possibility that Kupperman will be re-subpoenaed about impeachment by the House.

Second, Kupperman claims that the Court cannot find the case moot based on the "naked" promises not to engage in the challenged conduct (i.e., reissuing the subpoena) absent additional, compelling evidence to back up that promise.  This is especially true, he argues, when these promises are those of lawyers rather than the defendants themselves.  *See* Pl.'s Opp'n at 5–8; *see also* Dec. 10 Tr. at 31:19–32:2 ("[T]here is no case that supports the proposition that naked lawyers' assurances are themselves sufficient.").  Although these arguments may be well-taken for private litigants, Kupperman ignores the "presumption of regularity" that attaches to the official acts of public officers, which requires courts to presume, "in the absence of clear evidence to the contrary . . . that they have properly discharged their official duties." *People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 918 F.3d 151, 157–59 (D.C. Cir. 2019) (recognizing that an unambiguous representation by an agency official would be entitled to presumption of regularity and could satisfy burden for voluntary cessation purposes); *see also Wilson v. United States*, 369 F.2d 198, 200 (D.C. Cir. 1966) (applying presumption of regularity to actions of

Speaker of the House).  And our Circuit Court has relied on just these sorts of promises by Government lawyers in determining that a case is moot.  In *Gordon v. Lynch*, 817 F.3d 804 (D.C. Cir. 2016), for example, the Court concluded that a plaintiff's case seeking declaratory relief was moot based on a Government lawyer's statement at oral argument that the Government would not prosecute the plaintiff for the conduct the plaintiff sought to have declared legal, *see id.* at 805–07; *accord Clarke v. United States*, 915 F.2d 699, 700–02, 708 (D.C. Cir. 1990) (dismissing case as moot in reliance on concession by government lawyer at oral argument that government would not be able to prosecute plaintiffs).  *Gordon*, like the present case, involved a promise by a Government lawyer that the Government would not exercise a power unquestionably within its discretion (there, initiating a prosecution; here, issuing a subpoena), and our Circuit Court took counsel at his word.  Given the presumption of regularity and this Circuit's precedent, so too must I.

And in any event, the House's recent conduct outside this litigation confirms it will not take any further action against Kupperman.  First, HPSCI released a report in early December summarizing the evidence gathered in its impeachment inquiry, which explicitly states that it "*will not reissue*" Kupperman's subpoena.  Impeachment Rep. at 281 n.255 (emphasis added); House Defs.' Notice at 1 [Dkt. #60].   Second, and even more significantly, the House has recently approved two Articles of Impeachment, neither of which mentions Kupperman.  H. Res. 755, 116th Cong. (2019).  Tellingly, one article contends the President obstructed Congress by "[d]irecting current and former Executive Branch officials not to cooperate with the Committees." *Id.* at 7.  Indeed, it lists nine officials, and Kupperman is *not* among them! *Id.*  This conduct is of course entirely

consistent with the repeated representations that counsel for the House has made to this Court. The House clearly has no intention of pursuing Kupperman, and his claims are thus moot.

## II.    Dr. Kupperman Will Not Be Punished For Failing To Comply.

Undaunted, Kupperman maintains that his case is not moot because he could still be held in contempt for his conduct while the subpoena was outstanding. Pl.'s Opp'n at 8–9. Unfortunately for the plaintiff, that argument is similarly without merit. How so?

First, with respect to criminal contempt, the Department of Justice, on behalf of the President, has unequivocally stated that Kupperman will *not* be prosecuted for his failure to appear before Congress as directed by the House. President's Mot. to Dismiss or, in the Alternative, for Summary Judgment [Dkt. #40] at 13. In fact, the President's view, as set forth in his pleadings, is that any prosecution of Dr. Kupperman would be Constitutionally *prohibited* under these circumstances. *Id.* at 13, 14. Counsel representing the President, James Burnham, reaffirmed this very position at our recent oral argument. In his view, "there is absolutely no circumstance in which the Executive Branch *could ever or would ever* prosecute a current or former Executive Branch official who follows the President's direction not to comply with [a] subpoena." Dec. 10 Tr. at 20:4–8 (emphasis added).

Second, Kupperman's argument fares no better with respect to his purported concern that the House will hold him in inherent contempt.[6]   Not only has the House

---

[6] Kupperman does not appear to argue that his claims remain live because the House defendants might bring a civil suit against him to enforce the now-withdrawn subpoena. *See* Pl.'s Opp'n at 13; *see also* Dec. 10 Tr. at 20. But even if he did, that argument fails for the same reason Kupperman's other mootness arguments fail: The House defendants

repeatedly stated it will not do so, *see* House Defs.' Reply at 6 ("The House Defendants will not initiate contempt proceedings against [Kupperman] or refer his case for prosecution. They will not exercise inherent authority to arrest him, impose monetary fines on him, or take any other action against him."); Dec. 10 Tr. at 10:22–25 ("I'm here today representing[] that no inherent contempt proceedings will follow . . . ."); *see also* House SOMF ¶ 20 ("Undisputed . . . that House Defendants will not initiate contempt proceedings . . . [and] will not exercise the House's power of inherent contempt against Kupperman."), but the practical reality of it doing so is—to say the least—extremely unlikely. After all, the House has *not* used its inherent contempt authority in nearly a century, *see* Pl.'s Opp'n at 27, nor has it *ever* sought to impose a monetary fine as part of that authority, President's Reply at 17. And the possibility of the House doing so *after* withdrawing its subpoena is even more remote. *See* Dec. 10 Tr. at 47:8–48:18 (noting such a practice was hard to conjure). As such, there is simply no reasonable possibility that the House will exercise its inherent contempt power against Dr. Kupperman.

Have no doubt though, should the winds of political fortune shift and the House were to reissue a subpoena to Dr. Kupperman, he will face the same conflicting directives that precipitated this suit. If so, he will undoubtedly be right back before this Court seeking a solution to a Constitutional dilemma that has long-standing political consequences: balancing Congress's well-established power to investigate with a President's need to have a small group of national security advisors who have some form of immunity from

---

have unequivocally represented that they will not reissue the subpoena, thereby foreclosing the possibility of any enforcement suit. *See* House Reply at 7; House SOMF ¶ 20.

compelled Congressional testimony. *See Comm. on Judiciary v. Miers*, 558 F. Supp. 2d 53, 101 (D.D.C. 2008). A dilemma, I might add, that I particularly appreciate having served on a number of occasions in both the Legislative and Executive branches. Fortunately, however, I need not strike that balance today! Dr. Kupperman's claims are **MOOT**, and his case must therefore be **DISMISSED**.

RICHARD J. LEON
United States District Judge